IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF WEST VIRGINIA

**DIANA MEY,**
**individually and on behalf of a class of all**
**persons and entities similarly situated,**

> ELECTRONICALLY
> FILED
> Dec 11 2017
> U.S. DISTRICT COURT
> Northern District of WV

Plaintiffs,

vs.

Case No.  5:17-CV-179 (Bailey)

**DIRECTV, LLC;**
**ADAM COX;**
**AC1 COMMUNICATIONS;**
**IQ MARKETING 2, CORP., d/b/a PACIFICOM;**
**and MICHAEL ASGHARI,**

Defendants.

## CLASS ACTION COMPLAINT

### Preliminary Statement

1.     Plaintiff Diana Mey brings this action under the Telephone Consumer Protection

Act ("TCPA"), 47 U.S.C. § 227, *et seq.*, a federal statute enacted in response to widespread

public outrage about the proliferation of intrusive, nuisance telemarketing practices.  *See Mims v.*

*Arrow Fin. Servs.*, *LLC,* 132 S. Ct. 740, 745 (2012).

2.     Ms. Mey alleges that Defendant AC1 Communications and its owner, Adam Cox,

sent her and other putative class members automated telemarketing calls without prior express

written consent, and even though her number has long been listed on the National Do Not Call

Registry.

3.     Ms. Mey also alleges that Defendants IQ Marketing 2 Corp., d/b/a Pacificom, and

its principal, Michael Asghari, sent her and other putative class members pre-recorded

telemarketing calls without prior express written consent, and even though her number has long

been listed on the National Do Not Call Registry.

4.      ACI, Cox, IQ, and Asghari (the "Authorized Dealer Defendants") acted pursuant to an agreement with Defendant DirecTV, LLC, who hired them to generate new business as members of the DirecTV Authorized Dealer program.

5.      Because the calls to the Plaintiff were transmitted using technology capable of generating thousands of similar calls per day, she sues on behalf of a proposed nationwide class of other persons who received similar illegal DirecTV telephone calls.

6.      A class action is the best means of obtaining redress for the Defendants' illegal telemarketing, and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

**Parties**

7.      Diana Mey resides in this District.

8.      DirecTV is a California limited liability company that transacts business throughout the United States, including in this District.

9.      AC1 is an Ohio corporation that transacts business throughout the United States, including in this District.

10.      Adam Cox is a principal of AC1 and a resident of Ohio.

11.      IQ is a California corporation that transacts business throughout the United States, including in this District.

12.      Michael Asghari is the owner of IQ and a resident of California.

**Jurisdiction & Venue**

13.      This Court has federal question jurisdiction under 28 U.S.C. § 1331 and 47 U.S.C. § 227 et seq.

2

14.     Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim—namely, the automated calls to the Plaintiff—occurred in this District.

## Statutory Background

15.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

16.     Perhaps the most well-known aspect of the TCPA was the creation of the National Do Not Call Registry. By adding a telephone number to the Registry, a consumer indicates her desire not to receive telephone solicitations.  *See* 47 C.F.R. § 64.1200(c)(2).

17.     Accordingly, the TCPA and its implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry.  47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

18.     The TCPA also makes it unlawful to (1) make calls to cellular telephone lines using an "automatic telephone dialing system," or (2) make calls to any cellular or residential line using an artificial or prerecorded voice, without the call recipient's prior express consent. *See* 47 U.S.C. § 227(b)(1)(A) & (B); *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 F.C.C. Rcd. 1830, 1844 (2012).

19.     The FCC has explained that such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and can be costly and inconvenient.

20.     Because allowing an entity "to avoid potential liability by outsourcing its

telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions," the FCC has consistently held that a corporation or other entity "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, 6574 (¶ 1) (2013) ("May 2013 FCC Ruling").

21.     Further, a corporate officer or employee who, acting on behalf of the corporation, directly participates in or authorizes a violation of the TCPA, may be held individually liable. *See Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 416 (D. Md. 2011).

## Factual Allegations

### *Call from AC1 and Cox*

22.     On August 12, 2017, AC1 made an automated telemarketing call to Ms. Mey's cellular telephone line, (304) 242-XXXX, a number that had been listed on the National Do Not Call Registry for more than 31 days prior to the calls at issue.

23.     When Ms. Mey answered the call, a sales representative began reading a scripted pitch for DirecTV goods and services.

24.     The caller eventually identified himself as a representative of AC1.

25.     When Ms. Mey asked why the call appeared to be from a West Virginia area code, the caller claimed that was the number programmed into "the dialer."

26.     Upon further inquiry from Ms. Mey, the caller admitted the call had been made using an "autodialer."

27.     Ms. Mey never gave AC1 or DirecTV consent to call her cellular phone using an autodialer.

28.     Mr. Cox directly participated in or authorized AC1's illegal calling.

29.     Prior to filing this lawsuit, Ms. Mey wrote to AC1 and Mr. Cox, informing them that she had received an illegal telemarketing call from AC1 in violation of the TCPA.  In response, AC1 admitted making the call but could not provide any evidence of consent.

30.     Ms. Mey and the other call recipients were harmed by these calls. Among other things, they were temporarily deprived of legitimate use of their phones and their privacy was invaded.

### *Calls from IQ and Asghari*

31.     On August 3, 2017, IQ and Asghari made a pre-recorded telemarketing call to Ms. Mey's cellular telephone line, (304) 242-XXXX, a number that had been listed on the National Do Not Call Registry for more than 31 days prior to the calls at issue.

32.     The call came from (800) 217-8203, and played the following pre-recorded message:

> Are you paying too much for your TV service? Hi! We're the premier television provider for this area. We have the lowest per channel cost in the industry with more than 140 channels including local channels for only $29.99 per month. You also get free installation, free DVR equipment and free HD equipment. Act now and receive 33 premium commercial free movie channels free for three months. To hear more about this special offer, press 1 now or press 2 to be taken off this special list.

33.     In an effort to identify the caller, Ms. Mey dialed (800) 217-8203.  She reached a recording for "Best TV Offers."

34.     On August 17, 2017, IQ and Asghari made a second pre-recorded telemarketing call to Ms. Mey's cellular telephone line, (304) 242-XXXX.

35.     The call also came from (800) 217-8203, and played the following pre-recorded message:

> Are you paying too much for your TV service? Hi! We're the premier television provider for this area. We have the lowest per channel cost in the industry with more than 140 channels including local channels for only $29.99 per month. You also get free installation, free DVR equipment and free HD equipment. Act now and receive 33 premium commercial free movie channels free for three months. To hear more about this special offer, press 1 now or press 2 to be taken off this special list.

36.     This time, Ms. Mey pressed 1 and was transferred to an individual who identified himself as "Sam Davis" with "Special Deals for DirecTV" in Las Vegas.

37.     "Special Deals" is a fictitious name intended to disguise the legal name of the entity who made the call to Ms. Mey on behalf of DirecTV.

38.     Ms. Mey terminated the call after Mr. Davis asked Ms. Mey for a credit card.

39.     Other individuals have also complained about receiving unsolicited DirecTV pre-recorded telemarketing from this the same number. *See* http://800notes.com/Phone.aspx/1-800-217-8203.

40.     Eventually, Ms. Mey was able to confirm that "Special Deals" was a d/b/a for IQ and Asghari, identified by DirecTV as Authorized Dealer # 1789851.

41.     Neither DirecTV, IQ, nor Asghari had Ms. Mey's prior express written consent to call her cell phone via an automatic telephone dialing system or by pre-recorded message.

42.     Mr. Asghari directly participated in or authorized IQ's illegal calling.

43.     Prior to this suit, Ms. Mey wrote to DirecTV complaining about these calls, but DirecTV did not respond.

44.     Ms. Mey and the other call recipients were harmed by these calls. Among other things, they were temporarily deprived of legitimate use of their phones and their privacy was invaded.

### *Vicarious Liability*

45.     DirecTV markets and distributes its goods and services through a network of authorized dealers.

46.     Those authorized dealers—including AC1, Cox, IQ, and Asghari—are authorized to market DirecTV's products and services using DirecTV's trademarks and trade name.

47.     Likewise, DirecTV allows its authorized dealers to hold themselves out to the public as DirecTV.

48.     DirecTV exerts substantial control over the manner and means of its dealers' telemarketing, including, among other things, providing calling lists, directing the content of the dealers' advertising, and writing and approving the scripts used to make telemarketing calls.

49.     DirecTV also allows its dealers to access proprietary internal computer systems for the purpose of selling DirecTV's products and services.

50.     Further, DirecTV was or should have been aware that its authorized dealers, including AC1, Cox, IQ, and Asghari, were violating the TCPA, but acquiesced to its agents' conduct by consenting or failing to object to those illegal acts.

51.     For example, the United States government has twice initiated enforcement actions against DirecTV for illegal telemarketing.

52.     On December 12, 2005, the United States of America filed a Complaint seeking civil penalties and injunctive relief against DirecTV.

53.    The day after the Complaint was filed, the United States and DirecTV announced a settlement (Exhibit 1) that required DirecTV to pay $5,335,000 and agree to:

   a.  Be permanently restrained and enjoined from engaging in violations of the Telemarketing Sales Rule, including, but not limited to, initiating any outbound telephone calls to a person when that person previously has stated to DirecTV that they did not wish to receive an outbound telephone call made by or on behalf of DirecTV.  Exhibit 2 ¶ I(A)(1);

   b.  Be permanently restrained and enjoined from failing to monitor outbound telemarketing campaigns conducted by its authorized dealers. *Id.* ¶ II(D)(1)-(2);

   c.  Be permanently restrained and enjoined from providing any monetary compensation for any telemarketing related sales or activities, including but not limited to hourly rates of pay or commissions, to any authorized dealer after DIRECTV knows or reasonably should have known failed to comply with the Telemarketing Sales Rule. *Id.* ¶ II(E)(ii);

   d.  Cease doing business with any authorized dealer that failed to comply with the Telemarketing Sales Rule. *Id.* ¶ II(F); and to

   e.  Develop a system for receiving and promptly investigating all consumer complaints related to violations by any authorized dealers that have failed to comply with the Telemarketing Sales Rule. *Id.*  ¶ IV(A)-(B).

54.    The 2005 settlement did not stop DirecTV and its authorized dealers from engaging in illegal telemarketing practices.

55.    As a result, on April 16, 2009, the United States filed a second complaint against DirecTV.

56.    The allegations made in the 2009 Complaint are substantially the same as the complaints made in the 2005 Complaint.

57.    Shortly thereafter, the United States and DirecTV again announced that they had reached an agreement. (Exhibit 2). This time, DirecTV agreed to pay $2,310,000 and to:

   a.  Be permanently restrained and enjoined from engaging in violations of the Telemarketing Sales Rule, including, but not limited to, initiating any outbound telephone calls to a person when that person previously has stated to DirecTV that they did not wish to receive an outbound telephone call made by or on behalf of

DirecTV.  *Id.* at ¶ I(A)(1);

  b.  Be permanently restrained and enjoined from initiating any outbound telephone call that delivers a prerecorded message, other than a prerecorded message permitted for compliance. ¶ I(C);

  c.  Be permanently restrained and enjoined from failing to monitor outbound telemarketing campaigns conducted by its authorized dealers. *Id.* at ¶ II(D)(1)-(2);|

  d.  Be permanently restrained and enjoined from providing any monetary compensation for any telemarketing related sales or activities, including but not limited to hourly rates of pay or commissions, to any authorized dealer after DIRECTV knows or reasonably should have known failed to comply with the Telemarketing Sales Rule. *Id.* at ¶ II(E)(ii);

  e.  Cease doing business with any authorized dealer that failed to comply with the Telemarketing Sales Rule. *Id.* at ¶ II(F); and to

  f.  Develop a system for receiving and promptly investigating all consumer complaints related to violations by any authorized dealers that have failed to comply with the Telemarketing Sales Rule. *Id.* at ¶ IV(A)-(B).

58.  Again, the enforcement action failed to curb DirecTV's illegal practices.

59.  DirecTV told the government that it could and would stop its authorized dealers' illegal telemarketing. But by failing to take effective action to do so, DirecTV impliedly authorized the Defendants' violations of the TCPA.

60.  Lastly, while the facts alleged herein are sufficient to sustain a claim of vicarious liability against DirecTV, the FCC has held that when vicarious liability is alleged, Plaintiffs may obtain "evidence of [agency] relationships . . . through discovery, if they are not independently privy to such information."  May 2013 FCC Ruling at ¶ 46.

**Class Action Allegations**

61.  As authorized by Rule 23 of the Federal Rules of Civil Procedure, Plaintiff sues on behalf of all other persons or entities similarly situated throughout the United States.

62.  The classes of persons Plaintiff proposes to represent include:

CLASS 1:

> All persons within the United States to whom, within the four years prior to the filing of this action, Defendants AC1 or IQ (a) placed a call on a cellular telephone line, (b) using equipment that has the capacity to dial numbers automatically without human intervention, (c) on behalf of DirecTV, and (d) where Defendants' records do not indicate prior express consent from the recipient.

CLASS 2:

> All persons within the United States to whom, within the four years prior to the filing of this action, Defendants AC1 or IQ (a) placed a call on a residential telephone line, (b) using an artificial or prerecorded voice, (c) on behalf of DirecTV, and (d) where Defendants' records do not indicate prior express consent from the recipient.

CLASS 3:

> All persons within the United States (a) whose telephone numbers were listed on the Do Not Call Registry, and (b) to whom, at any time within the four years prior to the filing of this action, more than one call within any twelve-month period was placed by Defendants AC1 or IQ, (c) to promote the sale of DirecTV products or services.

63.     Excluded from the class are the Defendants, any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any Judge to whom this action is assigned, and any member of the Judge's staff and immediate family.

64.     The proposed class members are identifiable through phone records and phone number databases that will be obtained through discovery.

65.     The potential class members number in the thousands, at least. Individual joinder of these persons is impracticable.

66.     Plaintiff is a member of the classes.

67.     There are questions of law and fact common to Plaintiff and the proposed class, including but not limited to:

> a.     Whether the Defendants used an automatic telephone dialing system to send telemarketing calls;

b.     Whether the Defendants used an artificial or prerecorded voice to deliver a
message;

c.     Whether the Defendants placed telemarketing calls without obtaining the
recipients' valid prior express written consent;

d.     Whether the Defendants placed more than one call within a 12-month period
to numbers on the Do Not Call Registry;

e.     Whether the Defendants' violations of the TCPA were negligent, willful, or
knowing; and

f.     Whether the Plaintiff and the class members are entitled to statutory
damages because of the Defendants' actions.

68.     Plaintiff's claims are based on the same facts and legal theories, and therefore are
typical of, the claims of class members.

69.     Plaintiff is an adequate representative of the classes because her interests do not
conflict with the interests of the classes, she will fairly and adequately protect the interests of the
classes, and she is represented by counsel skilled and experienced in class actions, including
TCPA class actions.

70.     The actions of the Defendants are applicable to the classes and to Plaintiff.

71.     Common questions of law and fact predominate over questions affecting only
individual class members, and a class action is the superior method for fair and efficient
adjudication of the controversy.  The only individual question concerns identification of class
members, which will be ascertainable from records maintained by Defendants and through
reliable databases.

72. The likelihood that individual class members will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case, and given the small recoveries available through individual actions.

73. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

### Legal Claims

### Count One:
### Violation of the TCPA's provisions prohibiting
### autodialed calls to cell phones

74. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

75. The Defendants violated the TCPA, either directly or through the actions of others, by initiating a telephone call to Plaintiff's cellular telephone line using an automatic telephone dialing system. *See* 47 U.S.C. § 227(b)(1)(A).

76. The Defendants' violations were willful and/or knowing.

### Count Two:
### Violation of the TCPA's provisions prohibiting
### prerecorded calls to residential phones

77. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

78. The Defendants violated the TCPA, either directly or through the actions of others, by initiating a telephone call to Plaintiff's residential telephone line using an artificial or prerecorded voice. *See* 47 U.S.C. § 227(b)(1)(B).

79. The Defendants' violations were willful and/or knowing.

**Count Three:**
**Violation of the TCPA's Do Not Call provision**

80.     Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

81.     The Defendants violated the TCPA, either directly or through the actions of others, by initiating more than one telephone call to the Plaintiff in a twelve-month period while her number was on the National Do Not Call Registry. *See* 47 U.S.C. § 227(c).

82.     The Defendants' violations were willful and/or knowing.

**Relief Sought**

Plaintiff requests the following relief:

A.     That the Court certify the proposed classes;

B.     That the Court appoint Plaintiff as class representative;

E.     That the Court appoint the undersigned counsel as counsel for the class;

F.     That the Court enter a judgment permanently enjoining the Defendants from engaging in or relying upon telemarketing, or, alternatively, from engaging in or relying upon telemarketing that violates the TCPA;

G.     That, should the Court permit Defendants to engage in or rely on telemarketing, it enter a judgment requiring them to adopt measures to ensure TCPA compliance, and that the Court retain jurisdiction for a period of six months to ensure that the Defendants comply with those measures;

H.     That the Court enter a judgment awarding any other injunctive relief necessary to ensure the Defendants' compliance with the TCPA;

I.     That the Court enter a judgment finding that Defendants are jointly and severally liable to Plaintiffs and all class members for all violations arising from the calls;

J.      That Defendants and their agents, or anyone acting on their behalves, be immediately restrained from altering, deleting or destroying any documents or records that could be used to identify class members;

K.      That the Court enter a judgment awarding Plaintiff and all class members statutory damages of $500 for each negligent violation of the TCPA and $1,500 for each knowing or willful violation;

L.      That the Court enter an order awarding the Plaintiff reasonable attorneys' fees and costs; and

M.      That the Plaintiff and all class members be granted other relief as is just and equitable under the circumstances.

**Plaintiffs requests a jury trial as to all claims of the complaint so triable.**

Plaintiff,
By Counsel,


_/s/John W. Barrett_
John W. Barrett (WV Bar No. 7289)
Jonathan R. Marshall (WV Bar No. 10580)
Ryan McCune Donovan (WV Bar No. 11660)
Sandra Henson Kinney (WV Bar No. 6329)
BAILEY & GLASSER LLP
209 Capitol Street
Charleston, WV  25301
(304) 345-6555
jbarrett@baileyglasser.com
jmarshall@baileyglasser.com
rdonovan@baileyglasser.com
skinney@baileyglasser.com