## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| DIANA MEY, individually<br>and on behalf of a class of all persons<br>and entities similarly situated, | )<br>)<br>) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Civil Action No.: 5:17-cv-179 |
| | ) | |
| DIRECTV, LLC; ADAM COX;<br>AC1 COMMUNICATIONS;<br>IQ MARKETING 2, CORP., d/b/a<br>PACIFICOM; and MICHAEL<br>ASGHARI, | )<br>)<br>)<br>)<br>) | |
| | ) | |
| *Defendants.* | ) | |

## DEFENDANT DIRECTV, LLC'S MOTION TO COMPEL ARBITRATION AND TO STAY LITIGATION AND SUPPORTING MEMORANDUM OF LAW

As this Court is aware, plaintiff Diana Mey frequently files lawsuits under the Telephone Consumer Protection Act ("TCPA"), which she touts on her website, www.dianamey.com. In this latest of her TCPA lawsuits—about 30 and counting in federal court, including at least 15 in this Court—Mey asserts that DIRECTV, LLC ("DIRECTV") and its purported agents called her AT&T cell phone number without her consent to market DIRECTV's satellite television services.

But the merits of Mey's claims against DIRECTV are for an arbitrator to decide. DIRECTV is a subsidiary of AT&T Inc., and Mey has been a wireless customer of AT&T Mobility LLC ("AT&T"), whose members are all subsidiaries of AT&T Inc., since 2006.[1] She

---

[1]     DIRECTV is an indirect, wholly owned subsidiary of AT&T Inc. *See* Decl. of Paula Phillips ¶¶ 10-13; *see also, e.g.*, FCC, *In re Applications Of AT&T, Inc. & DIRECTV*, No. FCC

has agreed on multiple occasions, including in March 2012 when she and her husband started AT&T service on the wireless number at issue in her complaint, that she would resolve all disputes between her and AT&T Mobility **and** its "affiliates" and "subsidiaries," including "claims relating to advertising," through arbitration on an individual basis.[2] The Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA"), requires Mey to honor that obligation.

Mey cannot reasonably challenge the enforceability of AT&T's arbitration agreement. On the contrary, both the U.S. Supreme Court and the West Virginia Supreme Court of Appeals—as well as numerous other courts across the country—have approved of AT&T's provision. *See, e.g.*, *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011); *Shorts v. AT&T Mobility*, 2013 WL 2995944, at *6 (W. Va. June 17, 2013). Moreover, as the U.S. Supreme Court has recognized, because of the pro-consumer features of AT&T's arbitration provision, customers are "*better off* under their arbitration agreement with AT&T than they would" be "as participants in a class action." *Concepcion*, 563 U.S. at 352 (quotation marks omitted).

Mey's TCPA claims in this case fall within her arbitration agreement, which broadly covers all disputes between her and AT&T's affiliates and subsidiaries, including disputes relating to advertising. Moreover, the merits of Mey's claims are inextricably intertwined with her contract with AT&T. She consented in the AT&T Wireless Service Agreement to be

---

15-94 (July 28, 2015), https://apps.fcc.gov/edocs_public/attachmatch/FCC-15-94A1.pdf. AT&T Mobility LLC's corporate owners are all subsidiaries of AT&T Inc. as well. *See* Phillips Decl. ¶¶ 14-15.

[2]    Although Mey alleges that the AT&T cellular telephone line referenced in the complaint is hers (Compl. ¶¶ 22, 31), according to AT&T's records, Mey receives AT&T service as an authorized user on the AT&T account of her husband, Mark Mey. Phillips Decl. ¶ 5 & Ex. 2. That has no bearing on her obligation to arbitrate her claims; the contract under which she receives service specifies that "all authorized and unauthorized users or beneficiaries of services or Devices" must arbitrate their disputes. *Id.* Ex. 6 § 2.2(1). Moreover, as discussed below, the signature manifesting assent to AT&T's Wireless Service Agreement for the line of service at issue belongs to Diana Mey.

2

contacted regarding "our services or other matters we believe may be of interest to you," and the arbitrator will have to determine whether (as its plain language suggests) that consent authorized the calls at issue here.

DIRECTV therefore respectfully requests that this Court (1) compel Mey to arbitrate her claims against DIRECTV pursuant to the parties' agreement and (2) stay all further proceedings in this case pending the arbitration's outcome.

## BACKGROUND

### A.      Mey Agrees to Arbitrate Her Disputes With DIRECTV.

AT&T's records show that Mey and her husband Mark have been customers of AT&T Mobility since 2006. Phillips Decl. ¶ 4. They have repeatedly agreed to AT&T's arbitration provision and the other terms of AT&T's Wireless Customer Agreement as a condition to receiving AT&T's services. Most relevant here, AT&T's records show that on March 16, 2012, at an AT&T retail store, Mey activated the 304-242-7346 number referenced in the complaint (at ¶¶ 22, 31) for AT&T cell phone service. During that transaction, Mey was presented with an electronic signature-capture device that displayed the entire AT&T Wireless Customer Agreement, enabling her to read through the entire document electronically or print it by pressing an on-screen "Print" button. Decl. of Don Ketmayura ¶¶ 3-5 & Exs. 1-2. After she pressed the on-screen "Accept" button, she signed her name under the following acknowledgment: "I have reviewed and agree to the rates, terms, and conditions for the wireless products and service described in the Wireless Customer Agreement (including limitation of liability and arbitration provisions) and the Customer Service Summary, both of which were made available to me prior to my signing." *Id.* Ex. 2; Phillips Decl. Ex. 5. AT&T's records

reflect that Diana Mey was the one who signed to accept the AT&T Wireless Service Agreement. Phillips Decl. Ex. 5.

At all relevant times, including in March 2012, the second paragraph of AT&T's Wireless Customer Agreement highlighted that it contains an arbitration provision. Specifically, that paragraph states that "**THIS AGREEMENT REQUIRES THE USE OF ARBITRATION ON AN INDIVIDUAL BASIS TO RESOLVE DISPUTES, RATHER THAN JURY TRIALS OR CLASS ACTIONS**." Phillips Decl. Ex. 6, at 8. The arbitration provision itself states that "AT&T and you agree to arbitrate **all disputes and claims** between us," and "includes, but is not limited to," "claims arising out of or relating to any aspect of the relationship between us, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory," as well as "claims that arose before this or any prior Agreement (including, but not limited to, claims relating to advertising)." *Id.* § 2.2(1). The provision also specifies that "[r]eferences to 'AT&T,' 'you,' and 'us' include our respective subsidiaries, affiliates, agents, employees, predecessors in interest, successors, and assigns, as well as all authorized or unauthorized users or beneficiaries of services of Devices under this or prior Agreements between us." *Id.* Finally, the provision reminds the customer, "**You agree that, by entering into this Agreement, you and AT&T are each waiving the right to a trial by jury or to participate in a class action.**" *Id.*

**B.     AT&T's Arbitration Provision Is Consumer Friendly and Cost Effective.**

AT&T's arbitration provision includes several features that ensure that customers have a simple and efficient means of resolving any disputes that may rise:

- **Cost-free arbitration:** For claims up to $75,000, "AT&T will pay all [American Arbitration Association ("AAA")] filing, administration, and arbitrator fees" unless the arbitrator determines the customer's claim "is frivolous or brought for an

4841-9130-3517.v1

improper purpose (as measured by the standards set forth in Federal Rule of Civil Procedure 11(b))."[3]

- **$10,000 minimum award:** If the arbitrator issues an award in favor of a customer that is greater than "AT&T's last written settlement offer made before an arbitrator was selected," then AT&T will pay the customer $10,000 rather than any smaller arbitral award.

- **Double attorneys' fees:** If the arbitrator awards the customer more than "AT&T's last written settlement offer made before an arbitrator was selected," then "AT&T will . . . pay [the customer's] attorney, if any, twice the amount of attorneys' fees, and reimburse any expenses (including expert witness fees and costs), that [the] attorney reasonably accrues for investigating, preparing, and pursuing [the] claim in arbitration."[4]

- **Small claims court option:** Either party may bring a claim in small claims court as an alternative to arbitration.

- **Flexible consumer procedures**: Arbitration will be conducted under the AAA's Consumer Arbitration Rules, which the AAA designed with consumers in mind;[5]

- **Choice of in-person, telephonic, or no hearing:** For claims of $10,000 or less, the customer has the exclusive right to choose whether the arbitrator will conduct an in-person hearing, a telephonic hearing, or a "desk" arbitration in which "the arbitration will be conducted solely on the basis of documents submitted to the arbitrator."

- **Conveniently located hearing:** Arbitration will take place "in the county (or parish)

---

[3]     Even if an arbitrator concludes that a customer's claim is frivolous, if the claim is for less than $10,000, the arbitration provision would cap the amount of costs the customer would have to pay at $200, the amount the consumer is responsible for under the AAA's consumer arbitration rules. *See* Decl. of John Lewis Ex. 1, at 33 (AAA Consumer Arbitration Rules fee schedule).

[4]     The provision for double attorneys' fees "supplements any right to attorneys' fees and expenses [the customer] may have under applicable law." Phillips Decl. Ex. 6 § 2.2(5). Thus, even if an arbitrator were to award a customer less than the company's last settlement offer, the customer would be entitled to an attorneys' fees award to the same extent as if his or her individual claim had been brought in court.

[5]     The arbitration provision references the AAA's Commercial Arbitration Rules and Supplementary Procedures for Consumer-Related Disputes. *E.g.*, Phillips Decl. Ex. 6 § 2.2(3). But in September 2014, the AAA replaced those rules for administering consumer disputes with its new Consumer Arbitration Rules. Lewis Decl. Ex. 2, at 1. The AAA applies the Consumer Arbitration Rules "whenever" an agreement has "provided for arbitration by the American Arbitration Association ('AAA'), and" the agreement has "specifie[d] that the Supplementary Procedures for Consumer-Related Disputes shall apply." Lewis Decl. Ex. 1, at 9.

4841-9130-3517.v1

of [the customer's] billing address."

- **AT&T disclaims right to seek attorneys' fees:** "Although under some laws AT&T may have a right to an award of attorneys' fees and expenses if it prevails in an arbitration, AT&T agrees that it will not seek such an award."

- **No confidentiality requirement:** Either party may publicly disclose the arbitration and its result.

- **Full individual remedies available:** The arbitrator can award any form of relief of an individualized basis (including statutory and punitive damages, attorneys' fees, and injunctions that would affect the claimant alone) that a court could award.

- **Right to a written decision:** "Regardless of the manner in which the arbitration is conducted, the arbitrator shall issue a reasoned written decision sufficient to explain the essential findings and conclusions on which the award is based."

Phillips Decl. Ex. 6 § 2.2 (3)-(6).

### C.    Mey Sues DIRECTV Notwithstanding Her Agreement to Arbitrate.

Notwithstanding her agreement to arbitrate her claims with DIRECTV on an individual basis, Mey filed this putative class action on December 11, 2017. Dkt. No. 1. She alleges that the other defendants, "act[ing] pursuant to an agreement with Defendant DIRECTV, LLC" (Compl. ¶ 4), "sent her and other putative class members . . . telemarketing calls without prior express written consent, and even though her number has long been listed on the National Do Not Call Registry." *Id.* ¶¶ 2-3. According to Mey, those calls gave "a scripted pitch for DIRECTV goods and services." *Id.* ¶ 23; *see also id.* ¶ 32.

Mey purports to represent three putative classes of persons who allegedly received calls on behalf of DIRECTV. Compl. ¶ 62. She asserts three counts under the TCPA, and she seeks statutory damages as well as injunctive relief. *Id.* ¶¶ 74-82.

**ARGUMENT**

**I.    THE FAA REQUIRES THE ENFORCEMENT OF MEY'S ARBITRATION AGREEMENT.**

The FAA requires enforcement of Mey's agreement to resolve her disputes with AT&T (including its affiliates and subsidiaries) by individual arbitration.

The FAA governs any arbitration agreement that is "written" and in a contract "evidencing a transaction involving commerce." 9 U.S.C. § 2. Both criteria are met: (i) AT&T's arbitration provision is in writing (*see* pages 3-4, *supra*), and (ii) contracts for telecommunications service involve interstate commerce, because "[i]t is well-established that telephones, even when used intrastate, are instrumentalities of interstate commerce." *United States v. Corum,* 362 F.3d 489, 493 (8th Cir. 2004); *see also United States v. Photogrammetric Data Servs., Inc.*, 259 F.3d 229, 251 (4th Cir. 2001) (agreeing that "a telephone is an instrumentality of interstate commerce" and collecting cases) (quotation marks omitted), *abrogated on other grounds by Crawford v. Washington*, 541 U.S. 36 (2004). Indeed, AT&T's arbitration provision itself specifies that the agreement "evidences a transaction in interstate commerce, and thus the Federal Arbitration Act governs the interpretation and enforcement of this provision." Phillips Decl. Ex. 6 § 2.2(1).

Under the FAA, Mey's arbitration agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. As the Supreme Court has explained, "[t]he overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *Concepcion*, 563 U.S. at 344. And this "'liberal federal policy favoring arbitration agreements'" applies "'notwithstanding any state substantive or procedural policies to the

4841-9130-3517.v1

contrary.'" *Id.* at 346 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).

Here, no grounds "exist at law or in equity for the revocation of" (9 U.S.C. § 2) Mey's arbitration agreement. She validly accepted that agreement, its terms are enforceable as a matter of federal law, and it covers the claims she asserts in this lawsuit.

### A.      Mey Agreed To Arbitrate Her Disputes With DIRECTV.

####          1.      *Mey assented to AT&T's Wireless Service Agreement, including its arbitration provision.*

To begin with, Mey entered into a binding agreement to arbitrate her disputes against AT&T and its affiliates and subsidiaries, including DIRECTV. In March 2012, for example, Mey signed a contract with AT&T Mobility, evincing her intent to be bound by AT&T's Wireless Service Agreement, including its provision requiring arbitration of "**all disputes and claims** between us." *See* pages 3-4, *supra*; Phillips Decl. Ex. 6 § 2.2(1). The Agreement defines "'AT&T,' 'you,' and 'us'" to "include our respective *subsidiaries*, *affiliates*, agents, employees, predecessors in interest, successors, and assigns, as well as all *authorized* or unauthorized *users or beneficiaries*." *Id.* (emphasis added).

It is axiomatic that signing a contract demonstrates assent to it. *See, e.g.*, *Little v. Cellco P'ship*, 2018 WL 491666, at *3 (S.D. W. Va. Jan. 19, 2018) (finding assent where plaintiff signed an "executed sales receipt"); *Briggs v. Nationstar Mortg., LLC*, 2015 WL 5923572, at *3 (N.D. W. Va. Oct. 9, 2015) ("Mutual assent may be demonstrated by unambiguous language of an agreement coupled with an acceptance of that agreement by means of signature."); *New v. GameStop, Inc.*, 753 S.E.2d 62, 71 (W. Va. 2013) ("unambiguous language" and signature showed "that the parties mutually assented to arbitrate"); *see also Galloway v. Santander Consumer USA, Inc.*, 819 F.3d 79, 85 (4th Cir. 2016) ("The purpose of a signature is to

4841-9130-3517.v1

demonstrate 'mutuality or assent."). Accordingly, Mey cannot reasonably dispute her assent to

AT&T's arbitration provision.[6]

> 2.     *DIRECTV is entitled to enforce Mey's arbitration agreement with AT&T Mobility.*

The plain language of Mey's arbitration agreement unambiguously extends to AT&T

Mobility's "*subsidiaries*" and "*affiliates*" (among other entities). Phillips Decl. Ex. 6 § 2.2(1)

(emphasis added). Here, DIRECTV is an "affiliat[e]" of AT&T Mobility (and a "subsidiar[y]" of

AT&T Inc.). Two entities are "affiliates" if they are under common control by a third party: here,

both AT&T Mobility and DIRECTV are under such control by AT&T Inc. *See, e.g.*, *Affiliate*,

BLACK'S LAW DICTIONARY (10th ed. 2014) ("A corporation that is related to another corporation

by shareholdings or other means of control; a subsidiary, parent or *sibling* corporation.")

(emphasis added); *Jermar, Inc. v. L.M. Commc'ns II*, 181 F.3d 88 (4th Cir. 1999) (table op.)

(observing that "'[a]ffiliate' is a well-established term in the business context"; and quoting a

South Carolina statute defining "affiliate" as a person or entity "'under common control with a

specified person'" or entity).[7]

---

[6]     Nor could Mey avoid her obligation to arbitrate by asserting that, despite her signature, the contract is between AT&T Mobility and her husband Mark. As noted above, the plain language of the arbitration agreement encompasses authorized users and beneficiaries of AT&T's services. And it is well-settled that a non-party to a contract can be compelled to arbitrate when she is suing as a beneficiary of the contract containing the arbitration clause. *See Chesapeake Appalachia, L.L.C. v. Hickman*, 781 S.E.2d 198, 222 (W. Va. 2015) ("It is accepted law that a nonsignatory may be estopped from avoiding arbitration where he knowingly accepted the benefits of an agreement with an arbitration clause.") (quotation marks and alterations omitted); *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 418 (4th Cir. 2000) ("A nonsignatory is estopped from refusing to comply with an arbitration clause when it receives a direct benefit from a contract containing an arbitration clause.") (quotation marks omitted).

[7]     West Virginia statutes use similar definitions. *See, e.g.*, W. Va. Code § 33-10-1(r) (defining "[a]ffiliate" in provision of insurance code to include a person "under common control

Accordingly, Mey agreed to arbitrate her disputes with DIRECTV, and DIRECTV is entitled to enforce that agreement. *See also Wince v. Easterbrooke Cellular Corp.*, 681 F. Supp. 2d 679, 681, 686-87 (N.D. W. Va. 2010) (Bailey, J.) (rejecting plaintiffs' argument that AT&T's arbitration provision is unconscionable because their "claims against defendants other than ATTM are also subject to arbitration," and compelling arbitration of claims against "several AT&T entities"). That conclusion accords with *Adams v. AT&T Mobility*, 524 F. App'x 322 (9th Cir. 2013), in which the Ninth Circuit affirmed the trial court's conclusion that AT&T Mobility could enforce a customer's arbitration agreement with the predecessor of one of its subsidiaries. *Id.* at 324. Because the arbitration clause at issue broadly defined "the subject pronoun 'we' to include various additional parties, such as assignees, parent companies, successors, subsidiaries, and affiliates," both the Ninth Circuit and the trial court had little difficulty in holding that the arbitration agreement could be enforced by related corporate entities. *Id.*; *cf. Andermann v. Sprint Spectrum LP*, 785 F.3d 1157, 1158 (7th Cir. 2015) (holding that both the assignee of the plaintiff's contract with U.S. Cellular and the assignee's corporate affiliate were entitled to enforce the arbitration agreement contained in that contract to compel arbitration of the plaintiff's TCPA claims).

For similar reasons, DIRECTV is also entitled to enforce the arbitration agreement under settled West Virginia contract principles regarding enforcement of arbitration agreements by nonsignatories. As the West Virginia Supreme Court of Appeals recently explained, "'[w]ell-established common law principles dictate that in an appropriate case a nonsignatory can enforce, or be bound by, an arbitration provision within a contract executed by other parties.'"

---

with the person specified"); *id.* §§ 11-13L-2(b)(1)(B), 11-13N-2(b)(1)(B), 13O-2(b)(1)(B), 11-13Y-2(b)(1)(B) (similar definitions in various provisions of state tax code).

10

*Bluestem Brands, Inc. v. Shade*, 805 S.E.2d 805, 813 (W. Va. 2017) (quoting *Int'l Paper Co.*, 206 F.3d at 416-17). In particular, "'parties [are] estopped from avoiding arbitration [where] they ha[ve] entered into written arbitration agreements, albeit with the ***affiliates*** of those parties asserting the arbitration and not the parties themselves.'" *Id.* (emphasis added) (quoting *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 779 (2d Cir. 1995)). Because DIRECTV is an affiliate of AT&T Mobility, it can enforce the arbitration agreement under this line of authority as well.

### B.    The Terms Of AT&T's Arbitration Provision Are Enforceable.

Under the FAA, AT&T's arbitration provision is fully enforceable as a matter of federal law. Indeed, the U.S. Supreme Court upheld a materially identical AT&T arbitration provision in *Concepcion*. 533 U.S. at 352. One federal judge in California has remarked that "[AT&T's] arbitration agreement contains perhaps the most fair and consumer-friendly provisions this Court has ever seen." *Makarowski v. AT&T Mobility LLC,* 2009 WL 1765661, at \*3 (C.D. Cal. June 18, 2009); *see also* pages 4-6, *supra*.

Any challenge by Mey to the fact that AT&T's arbitration provision prohibits class actions, for example, would be futile under binding U.S. Supreme Court, West Virginia Supreme Court of Appeals, and Fourth Circuit precedent. The Supreme Court held in *Concepcion* that any state-law rule "[r]equiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." 563 U.S. at 344. "States," the Supreme Court added, "cannot require a procedure that is inconsistent with the FAA, even if it is desirable for unrelated reasons," such as the goal of ensuring that "small-dollar claims" do not "slip through the legal system." *Id.* at 351. In light of *Concepcion*, the West Virginia Supreme Court of Appeals has confirmed that the FAA requires enforcement of

11

AT&T's arbitration provision. *See Shorts v. AT&T Mobility*, 2013 WL 2995944, at \*6 (W. Va. June 17, 2013). Indeed, even prior to *Concepcion*, this Court concluded that AT&T's arbitration provision is enforceable. *Wince*, 681 F. Supp. 2d at 685-86.

Similarly, the West Virginia Supreme Court of Appeals recently explained that "in considering arbitration agreements that contain class action waivers, we consistently have recognized that inclusion of such a waiver does not automatically render the arbitration agreement unconscionable or unenforceable." *Citizens Telecommc'ns Co. of W. Va. v. Sheridan*, 799 S.E.2d 144, 154 (W. Va. 2017). The Fourth Circuit has likewise held that *Concepcion* "sweeps . . . broadly," and dictates that "the generally applicable contract defense of unconscionability may not be applied in a manner that targets the existence of an agreement to arbitrate as the basis for invalidating that agreement." *Muriithi v. Shuttle Exp., Inc.*, 712 F.3d 173, 180 (4th Cir. 2013). Thus, Mey's arbitration agreement with AT&T is fully enforceable as a matter of federal law.

### C.      Mey's Claims Against DIRECTV Fall Within The Scope Of Her Arbitration Agreement.

Finally, AT&T's arbitration provision covers the claims that Mey is asserting in this lawsuit. That provision states that it "is intended to be broadly interpreted," and requires arbitration of "*all* disputes and claims between us," making clear that references to "AT&T" and "us" include AT&T's "*subsidiaries*, *affiliates*, agents, employees, predecessors in interest, successors, and assigns." Phillips Decl. Ex. 6 § 2.2(1) (emphasis added). It "includes, but is not limited to," "claims arising out of or relating to *any* aspect of the relationship between us," including claims "based in . . . *statute*[.]" *Id.* (emphasis added). And it expressly includes "claims relating to *advertising*." *Id.* (emphasis added).

4841-9130-3517.v1

"'Both the Supreme Court and the Fourth Circuit have characterized similar formulations' of the operative language here—'arising out of or relating to'—as 'broad arbitration clauses capable of an expansive reach.'" *U.S. ex rel. TBI Investments, Inc. v. BrooAlexa, LLC*, 119 F. Supp. 3d 512, 539 (S.D. W. Va. 2015) (quoting *Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 93 (4th Cir. 1996).[8]

AT&T's arbitration provision, which is equally broad, encompasses the claims here for multiple independent reasons. Mey alleges that the other defendants made "telemarketing calls" (Compl. ¶¶ 2-3) aimed at "generat[ing] new business" for DIRECTV (*id.* ¶ 4). This is precisely why Mey's individual claims must be arbitrated. The alleged calls went to an existing AT&T customer, encouraging her to procure new services from DIRECTV, an affiliate of AT&T Mobility. Such a TCPA claim against DIRECTV, which is based upon the cross-selling of services across the AT&T brand, fits within at least three of the examples enumerated in the broad arbitration provision: It is (i) a claim "relating to any aspect of the relationship between us"; (ii) a claim based in "statute"; and (iii) a claim "relating to advertising." Phillips Decl. Ex. 6 § 2.2(1). Any one of those categories suffices to cover Mey's claim.

Moreover, AT&T's Wireless Customer Agreement provides that Mey "consent[ed] to the use by us or our authorized agents of regular mail, predictive or autodialing equipment, email, text messaging, facsimile or other reasonable means to contact you to advise you about our Services or other matters we believe may be of interest to you." Phillips Decl. Ex. 6 § 1.10. That provision thus contemplates that AT&T's customers will receive advertising calls for other

---

[8]    *Accord Egas Valencia v. Logan Gen. Hosp., LLC*, 2016 WL 6518626, at *3 (S.D. W. Va. Nov. 1, 2016); *Weirton Med. Ctr., Inc. v. Cmty. Health Sys., Inc.*, 2016 WL 554841, at *3 (N.D. W. Va. Feb. 10, 2016); *Tominak v. Capoullez*, 2014 WL 123138, at *6 (N.D. W. Va. Jan. 13, 2014); *Wilson v. Dell Fin. Servs., L.L.C.*, 2009 WL 2160775, at *4 (S.D. W. Va. July 16, 2009).

4841-9130-3517.v1

services offered by AT&T and its affiliates and subsidiaries, like DIRECTV television service. And this contract term will bear directly on the arbitrator's resolution of the merits of Mey's TCPA claims, because the TCPA permits calls made with the "prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A); *see also* 47 C.F.R. §§ 64.1200(a)(2)-(3) (requiring "prior express written consent"). As the Second Circuit recently held, "the TCPA does not permit a party who agrees to be contacted as part of a bargained-for exchange to unilaterally revoke that consent." *Reyes v. Lincoln Auto. Fin. Servs.*, 861 F.3d 51, 56 (2d Cir. 2017); *cf.* Compl. ¶¶ 27, 41. The TCPA itself and *Reyes* thus make clear that Mey's TCPA claims (whatever their merits) unquestionably relate to her contracts with AT&T and to her "relationship" with AT&T.

For similar reasons, courts across the country have held that a plaintiff's TCPA claims are subject to arbitration. The Seventh Circuit held in *Andermann*, for example, that claims against the assignee of a customer agreement that made "unsolicited advertisements" via telephone were arbitrable under the terms of that agreement. *Id.* at 1158. Even though the calls were intended to advertise the assignee's services, the court held that they had an "intimate relation" to the original contract. *Id.* That conclusion is even clearer here, where the arbitration provision expressly specifies that it covers "claims relating to advertising" by AT&T and its affiliates and subsidiaries. Another court similarly held that a plaintiff's TCPA claims against DIRECTV were arbitrable when the plaintiff "unsuccessfully attempted to negotiate a new service plan with DIRECTV, terminated service with DIRECTV, and subsequently received solicitation calls from DIRECTV to inform [her] of new service plans and offers." *Wijesinha v. DIRECTV, LLC*, 2016 WL 10906449, at *4 (S.D. Fla. Sept. 29, 2016). The Court found that such

14

4841-9130-3517.v1

calls were "indeed related to Plaintiff's service and thus fall within the scope of the arbitration provision in the Customer Agreement." *Id.* at *3.[9]

Against this weight of authority, Mey might seek to rely on *Wexler v. AT&T Corp.*, 211 F. Supp. 3d 500 (E.D.N.Y. 2016), in which a district court held that a plaintiff could not be compelled to arbitrate her TCPA claims against AT&T. But *Wexler* is readily distinguishable. The alleged calls and text messages in that case were not intended for the plaintiff at all; rather, the plaintiff alleged that she had received wrong number contacts relating to somebody *else*'s account and services. *See id.* at 502. Given those circumstances, the court concluded that the plaintiff's claims were not "connected in some way to the service agreement" that she entered into with AT&T, and that the plaintiff had therefore not agreed to arbitrate them. *Id.* at 504.[10]

Finally, even if there were any uncertainty as to whether Mey's claims are arbitrable—and there is none—the Supreme Court has instructed that, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24-25; *see also, e.g.*, *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 476 (1989).

---

[9]     Other cases holding TCPA claims subject to arbitration include *Raynor v. Verizon Wireless, LLC*, 2016 WL 1626020, at *5 (D.N.J. Apr. 25, 2016); *Conway v. Done Rite Recovery Servs., Inc.*, 2015 WL 1989665, at *5 (N.D. Ill. Apr. 30, 2015); *Weingarten v. Colony Brands, Inc.*, 2013 WL 448236, at *2-5 (D. Conn. Aug. 21, 2013); *Owings v. T-Mobile USA, Inc.*, 978 F. Supp. 2d 1215, 1224-25 (M.D. Fla. 2013); *Cayanan v. Citi Holdings, Inc.*, 928 F. Supp. 2d 1182, 1207-08 (S.D. Cal. 2013).

[10]     DIRECTV also respectfully submits that *Wexler* is wrongly decided. By concluding that the parties in that case did not agree to arbitrate the TCPA claims at issue—despite the arbitration agreement's plain language covering "all disputes and claims between us" and the plaintiff's straightforward manifestation of assent—the court imposed a heightened standard for the formation of arbitration agreements that is not applicable to contracts in general. The Supreme Court has subsequently held that the FAA forecloses the adoption of such heightened standards: "A rule selectively finding arbitration contracts invalid because improperly formed fares no better under the [FAA] than a rule selectively refusing to enforce those agreements once properly made." *Kindred Nursing Ctrs. Ltd. P'Ship v. Clark*, 137 S. Ct. 1421, 1428 (2017).

In short, Mey's claims are covered by her arbitration agreement and therefore should be compelled to arbitration.

## II.   THIS ACTION SHOULD BE STAYED PENDING ARBITRATION OF MEY'S CLAIMS.

When, as here, the FAA governs an arbitration provision that covers a plaintiff's claims, Section 3 of the FAA directs the district court to compel arbitration and stay the lawsuit. *See* 9 U.S.C. § 3 (providing for a stay of court proceedings pending the resolution of arbitration); *see also*, *e.g.*, *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991).

## CONCLUSION

The Court should enter an order (i) compelling plaintiff Diana Mey to arbitrate her claims against DIRECTV in accordance with her arbitration agreement and (ii) staying this action pending the resolution of that arbitration.

Dated: February 16, 2018                              Respectfully submitted,


                                                      */s/Danielle M. Waltz*_____
                                                      Danielle M. Waltz (WVSB #10271)
                                                      Sarah A. Phipps (WVSB #13031)
                                                      JACKSON KELLY PLLC
                                                      500 Lee Street East, Suite 1600
                                                      Charleston, WV 25301
                                                      Tel.: (304) 340-1000
                                                      Fax: (304) 340-1050
                                                      dwaltz@jacksonkelly.com

                                                      Archis A. Parasharami (*pro hac vice*)
                                                      Daniel E. Jones (*pro hac vice*)
                                                      MAYER BROWN LLP
                                                      1999 K Street NW
                                                      Washington, DC 20006
                                                      Tel.: (202) 263-3328
                                                      Fax: (202) 263-5328
                                                      aparasharami@mayerbrown.com

                                                      *Counsel for Defendant DIRECTV, LLC*

4841-9130-3517.v1

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

| | | |
|---|---|---|
| DIANA MEY, individually | ) | |
| and on behalf of a class of all persons | ) | |
| and entities similarly situated, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 5:17-cv-179 |
| | ) | |
| DIRECTV, LLC; ADAM COX; | ) | |
| AC1 COMMUNICATIONS; | ) | |
| IQ MARKETING 2, CORP., d/b/a | ) | |
| PACIFICOM; and MICHAEL | ) | |
| ASGHARI, | ) | |
| | ) | |
| *Defendants.* | ) | |

**CERTIFICATE OF SERVICE**

   I, Danielle M. Waltz, counsel for Defendant DIRECTV, LLC, do hereby certify on this 16th day of February, 2018, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following party:

      John W. Barrett (WVSB #7289)
      BAILEY & GLASSER LLP
      209 Capitol Street
      Charleston, WV 25301
      jbarrett@baileyglasser.com
      jmarshall@baileyglasser.com
      rdonovan@baileyglasser.com
      skinney@baileyglasser.com

      *Counsel for Plaintiffs*

      */s/Danielle M. Waltz*_____
      Danielle M. Waltz (WVSB #10271)

4841-9130-3517.v1