IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| DIANA MEY, individually<br>and on behalf of a class of all persons<br>and entities similarly situated, | )<br>)<br>)<br>) | |
| *Plaintiff*, | )<br>) | |
| v. | )<br>) | Civil Action No.: 5:17-cv-179 |
| DIRECTV, LLC; ADAM COX;<br>AC1 COMMUNICATIONS;<br>IQ MARKETING 2, CORP., d/b/a<br>PACIFICOM; and MICHAEL<br>ASGHARI, | )<br>)<br>)<br>)<br>)<br>) | |
| *Defendants.* | ) | |

**DEFENDANT DIRECTV, LLC'S REPLY MEMORANDUM IN SUPPORT OF
MOTION TO COMPEL ARBITRATION AND TO STAY LITIGATION**

In its opening brief, defendant DIRECTV established that Mey is required to arbitrate her disputes against DIRECTV for these undisputed reasons:

- Mey personally signed to accept the terms of AT&T Mobility's Wireless Customer Agreement when she activated the relevant line of wireless service on her husband's account, under an acknowledgment that "I have reviewed and agree to the rates, terms, and conditions for the wireless products and service described in the Wireless Customer Agreement (including limitation of liability and *arbitration provisions*)."

- The Wireless Customer Agreement Mey accepted includes an arbitration provision encompassing claims by "all authorized or unauthorized users or beneficiaries of services or Devices under this or prior Agreements between us."

- Mey receives AT&T wireless service for the cell phone number identified in her complaint as an authorized user on her husband's AT&T account.

- The arbitration provision expressly applies to disputes against AT&T Mobility's "affiliates" and "subsidiaries."

- DIRECTV is an affiliate of AT&T Mobility (and both DIRECTV and AT&T Mobility are indirect, wholly-owned subsidiaries of AT&T Inc.).

- That corporate relationship has existed since 2015, over two years before Mey alleges receiving the calls advertising DIRECTV's services that are the subject of this lawsuit.

- The arbitration provision's broad scope includes statutory claims and claims "relating to advertising."

- The substance of AT&T's pro-consumer arbitration provision is fully enforceable under the Federal Arbitration Act, and the Supreme Court has recognized that customers are "*better off* under their arbitration agreement with AT&T than they would" be "as participants in a class action." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 352 (2011) (quotation marks omitted).

These undisputed facts demonstrate that Mey is required to arbitrate her claims against DIRECTV.

The arguments that Mey makes in her opposition are meritless. Mey cannot avoid arbitration on the basis that her husband is the account holder while she is "merely" an authorized user: multiple courts have held that, in light of its plain language, AT&T's arbitration provision is enforceable against authorized users on an account receiving AT&T service. (That is, of course, especially true in the case of an authorized user like Mey who personally signed an

4852-8277-1295.v1

acceptance of AT&T's terms, including an express acknowledgment of the arbitration provision.) Likewise, both the express language of AT&T's arbitration provision and contract principles endorsed by the Supreme Court of Appeals of West Virginia permit DIRECTV to enforce that arbitration provision as an "affiliate" of AT&T Mobility. Finally, Mey's efforts to narrow the scope of her arbitration agreement to claims relating in some way to AT&T's Wireless Customer Agreement are unavailing; and in all events, she does not respond to our showing that the resolution of her TCPA claims is intertwined with her consent in AT&T's Wireless Customer Agreement to be contacted "about our Services or other matters we believe may be of interest to you." Decl. of Paula Phillips Ex. 6 § 1.10. Accordingly, her claims are subject to arbitration even on her improperly narrow reading of AT&T's arbitration provision.

## ARGUMENT

### A. Mey Is Bound To Arbitrate Her Claims Against DIRECTV.

*1. Mey is bound by the arbitration provision in AT&T's Wireless Customer Agreement.*

Mey first resists her obligation to arbitrate by pointing out that the account under which she receives AT&T wireless service "is in her husband's name." Opp. 7-8. But as she concedes, *she* (not her husband) personally signed her name "to acknowledge the terms and conditions . . . of the underlying account agreement." *Id.* at 3; *see also* Mot. 3-4. As we explained in our opening brief (at 8-9), this signature plainly manifested Mey's assent to the terms of the Wireless Customer Agreement, including its provision requiring "all authorized or unauthorized users or beneficiaries" to arbitrate their disputes. Phillips Decl. Ex. 6 § 2.2(1).

Mey's attempt to argue that she "never signed the arbitration agreement" itself (Opp. 7) ignores that what she *did* sign—an express acknowledgment of that agreement at the AT&T retail store—manifested her assent to the terms. Mey's argument to the contrary misunderstands

3

both West Virginia law and the FAA. Under the FAA, arbitration agreements need only be "written," not signed. *See, e.g.*, *Galloway v. Santander Consumer USA, Inc.*, 819 F.3d 79, 89 (4th Cir. 2016) (collecting cases).[1] Indeed, in the past year the Supreme Court of Appeals of West Virginia has twice reiterated that parties can assent to an arbitration agreement by conduct *alone*, such as "'continued use'" of a service after receiving notice of the terms and conditions containing the arbitration provision. *Bluestem Brands, Inc. v. Shade*, 805 S.E.2d 805, 810 (W. Va. 2017) (quoting *Citizens Telecommc'ns Co. of W. Va. v. Sheridan*, 799 S.E.2d 144, 149 (W. Va. 2017)). It follows that Mey's *signed* acknowledgment that "I have reviewed and agree to the rates, terms, and conditions for the wireless products and service described in the Wireless Customer Agreement (including limitation of liability and arbitration provisions)" (Phillips Decl. Ex. 5) more than suffices to demonstrate her assent.

Undaunted, Mey insists that her signature "was simply done on behalf of her husband"—despite alleging in her complaint that the wireless number she activated for AT&T wireless service during that transaction is hers (Compl. ¶¶ 22, 31)[2]—and argues that as a mere "authorized user" on his account, she is not subject to the contract's arbitration provision. Both the contract itself and case law say otherwise. Mey offers no explanation of how she might fall outside the arbitration agreement's language requiring "all authorized and unauthorized users or

---

[1] *See also, e.g.*, *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 978 (6th Cir. 2007) ("[A]rbitration agreements under the FAA need to be written, but not necessarily *signed*."); *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005) ("[W]hile the FAA requires that the arbitration agreement be in writing, it does not require that it be signed by the parties."); *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 736 (7th Cir. 2002); *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 846 (2nd Cir. 1987).

[2] Specifically, the complaint describes the number at issue as "*Ms. Mey's* cellular telephone line." Compl. ¶¶ 22, 31 (emphasis added).

4

beneficiaries of services or Devices" to arbitrate their disputes—language to which she specifically agreed when she signed the acknowledgment.

Because this language is so plain, it is no surprise that courts interpreting both this very phrase and similar language in other contracts have rejected similar ploys to evade arbitration.

For instance, Judge Breyer of the Northern District of California compelled a non-account holder plaintiff to arbitrate on the basis of AT&T's terms, "which require 'all authorized or unauthorized users or beneficiaries of services' to 'arbitrate all disputes and claims between us.'" *Blau v. AT&T Mobility LLC*, 2012 WL 566565, at *1 (N.D. Cal. Feb. 21, 2012) (quoting the arbitration provision); *see also* Mot. to Compel Arbitration, *Blau v. AT&T Mobility LLC*, 2012 WL 1965809 (N.D. Cal. filed Jan. 12, 2012) (explaining that "Plaintiff [Anthony] Tran . . . appears to receive ATTM wireless service on the account of [non-party] Jackie Tran.").

The Eighth Circuit reached a similar conclusion in *Schultz v. Verizon Wireless Services, LLC*, 833 F.3d 975 (8th Cir. 2016), affirming the district court's order compelling arbitration of the TCPA claims brought by both the account holder and a second plaintiff, Craig Schultz, who was "added as an Account Manager on the account and likewise obtained service from Verizon." *Id.* at 977. The court explained that the district court "did not clearly err in finding that Craig Schultz, as an 'Account Manager' who used one of the phone lines to which the Customer Agreement applied, had activated phone service and thus accepted the Verizon contract, including an agreement to arbitrate." *Id.* at 980; *see also, e.g.*, *Heiges v. JP Morgan Chase Bank, N.A.*, 521 F. Supp. 2d 641, 644, 647-48 (N.D. Ohio 2007) (plaintiff bound to arbitrate as "authorized user" of credit card account opened in his employer's name).

Another federal court easily concluded that an authorized user of AT&T wireless service was bound to arbitrate his dispute. In *Solis v. AT&T Mobility LLC*, 2015 WL 6739141 (E.D. Mo.

5

Nov. 3, 2015), the court compelled plaintiff Raul Solis, "a user on the account of AT&T customer Nicole Solawetz," to arbitrate his claims. *Id.* at \*1-2. The court noted that AT&T's terms "provide that the parties, as well as 'all authorized or unauthorized users or beneficiaries of services,' agree to "arbitrate all disputes and claims between us." *Id.* at \*1. The court found that Solis was bound to those terms as "a third-party beneficiary," because "AT&T agreed to provide service to the wireless telephone number used by Solis." *Id.* at \*2. The court explained that "[t]he fact that Solis was not the customer of record on the account *is of no significance* because the service contracts obligated AT&T to provide wireless service to that line unless it was suspended or terminated, which clearly provided a benefit to Solis." *Id.* (emphasis added). This reasoning applies with equal force here. In fact, Mey's obligation to arbitrate here is even clearer: as she concedes (Opp. 3), she was the one who signed to accept the terms of AT&T's Wireless Service Agreement—unlike in *Solis*, where the account holder, not the plaintiff, was the one who signed to accept AT&T's terms. *See* 2015 WL 6739141, at \*1.

As we explained in our opening brief (at 9 n.6), even if Mey were somehow considered a "nonsignatory" despite signing an acknowledgment expressing her agreement to the terms of AT&T's Wireless Customer Agreement, nonsignatories may be compelled to arbitrate when suing as a beneficiary of the contract containing the arbitration clause. Mey misreads the Fourth Circuit's decision in *R.J. Griffin & Co. v. Beach Club II Homeowners Ass'n*, 384 F.3d 157 (4th Cir. 2004), as standing for the proposition that only claims for a breach of the contract containing the arbitration clause or otherwise attempting to "hold another party to the terms" of that contract may be arbitrated. Opp. 11-12 (quoting *R.J. Griffin*, 384 F.3d at 160-61). But *R.J. Griffin* did not deal with the situation presented here, where (i) the arbitration agreement itself specifies that it encompasses the claims of the purported nonparty; and (ii) the purported nonparty *receives* the

6

benefits of the contract. *See R.J. Griffin*, 384 F.3d at 161 (recognizing that "a nonsignatory is estopped from refusing to comply with an arbitration agreement when it is seeking *or receives* a direct benefit from a contract containing an arbitration clause," and that the issue before the court was whether the nonsignatory "is seeking a direct benefit") (quotation marks and alterations omitted; emphasis added). As the Fourth Circuit has subsequently made clear, courts recognize "that a nonsignatory to an arbitration clause may benefit from the contract containing the arbitration clause—and should therefore be estopped from arguing that it is not a party thereto—in ways other than the assertion of claims based on the contract." *Am. Bankers Ins. Grp. v. Long*, 453 F.3d 623, 628 n.5 (4th Cir. 2006) (citing *Am. Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349, 353 (2d Cir. 2009) (compelling arbitration where the nonsignatory "received substantial benefits from the contract containing the arbitration clause, including lowered insurance rates")). Indeed, and most significantly, the Supreme Court of Appeals of West Virginia has cited *Tencara* (cited by the Fourth Circuit in *Long*) with approval for the "formulation" of when a non-signatory may be bound to arbitrate. *Chesapeake Appalachia, LLC v. Hickman*, 781 S.E.2d 198, 217 (W. Va. 2015).[3]

For all of the above reasons, Mey is bound by the arbitration provision in the AT&T Wireless Customer Agreement that she signed to accept and that governs the cellular service she receives.

---

[3] The U.S. Supreme Court has held that whether "a contract [may] be enforced by or against nonparties" is governed by "'traditional principles' of state law"—so long as the state-law rule applies to "contracts generally" and therefore does not run afoul of Section 2 of the FAA. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009).

>   2. *DIRECTV is entitled to enforce AT&T Mobility's arbitration provision here.*

Mey next argues that even if she agreed to AT&T's arbitration agreement, DIRECTV may not enforce it. Opp. 8-12. She is wrong for four independent reasons.

>   a. DIRECTV is an affiliate of AT&T Mobility.

First, as we showed in our opening brief, the text of the agreement permits DIRECTV to enforce it as an "affiliate" of AT&T Mobility. Mot. 9-10.

Mey complains that DIRECTV and AT&T Mobility are "corporate cousins" (Opp. 3-4, 8), but (despite her creative flow chart) does not actually rebut our showing, based on the standard definition used in "statutes, cases, and dictionaries" alike (*id.* at 8), that they are affiliates because they are under common control by AT&T Inc. Instead, and without engaging in any interpretation of the contract to support her preferred meaning, Mey makes the conclusory assertion that the agreement is "ambiguous" as to whether it covers only those companies who were AT&T affiliates at the time the contract was formed in March 2012, to the exclusion of any future affiliates like DIRECTV. *Id.* at 8-9.

>   b. Mey's attempt to inject ambiguity into the arbitration provision fails.

Mey is wrong that the arbitration agreement is ambiguous, and even if she were correct, under the FAA, any ambiguity must be resolved in favor of arbitration. Mey's attempt to argue that the term "affiliate" is frozen in time as of the date of her signature is wholly implausible in light of the broad, forward-looking language of the arbitration provision. The arbitration agreement covers not just AT&T Mobility's "affiliates," but also its "successors and assigns" (Phillips Decl. Ex 6 § 2.2(1))—which by definition refers to parties whose identities cannot be known until the future. And the arbitration agreement is forward-looking in other respects as well, covering "claims that may arise after the termination of this Agreement" and specifying

8

that "[t]his arbitration provision shall survive termination of this Agreement." *Id.* Mey does not engage with this (or any other) language in the arbitration provision.

Nor does Mey so much as acknowledge the cases cited in our opening brief—including decisions by the Seventh and Ninth Circuit—holding that companies that were previously unrelated to the corporate party to the arbitration agreement at the time of contracting (but later became affiliated) could compel arbitration when a dispute with the affiliate arose. *See* Mot. 10 (citing *Adams v. AT&T Mobility, LLC*, 524 F. App'x 322, 324 (9th Cir. 2013) (holding that AT&T Mobility "had a contractual right" to invoke the arbitration clause in plaintiff's wireless service contract as the "parent company" of "the successor" to the counterparty (Unicel) to plaintiff's contract); *Andermann v. Sprint Spectrum LP*, 785 F.3d 1157, 1158 (7th Cir. 2015) (holding that both the assignee of the plaintiff's contract with U.S. Cellular *and* the assignee's corporate affiliate were entitled to enforce the arbitration agreement contained in that contract)). Likewise, six days after our opening brief was filed, another court concluded that a non-signatory could compel arbitration of the plaintiff's statutory claims under the "plain language" of the plaintiff's arbitration agreement. *Clarke v. Alltran Fin., LP*, 2018 WL 1036951, at *1, 3-6 (E.D.N.Y. Feb. 22, 2018). Specifically, Citibank hired the non-signatory defendant to act as its "agent" or "representative" *after* the plaintiff entered into her cardholder agreement, but the court had little difficulty concluding that those terms encompassed the defendant's subsequent relationship with Citibank. *Id.*

      c.  The Federal Arbitration Act requires any ambiguities to be resolved in *favor* of arbitration.

Even if the arbitration agreement's express coverage of disputes against "affiliates" were ambiguous, Mey's attempt to avoid arbitration would fail because, under the FAA, any ambiguity must be resolved in favor of arbitration.

9

4852-8277-1295.v1

Mey contends that the FAA's presumption in favor of arbitration does not apply to questions of contract formation. Opp. 2, 5-6. But that is a red herring: DIRECTV has never argued otherwise (*see* Mot. 15). Instead, the problem for Mey is that the meaning of the term "affiliates" in a Wireless Customer Agreement that she undeniably signed to accept in March 2012 is a question of contract interpretation rather than contract formation. *See, e.g.*, *Bond v. Cricket Commc'ns, LLC*, 2016 WL 153036, at *3 (D. Md. Jan. 12, 2016) (explaining that once an agreement "to arbitrate *some* matters" is established, the "appropriate inquiry" is to "interpret the scope of the Arbitration Clause") (quotation marks omitted). Once her argument is properly construed as one of contract interpretation, the analysis is governed by the Supreme Court's holding that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration," and that, "as a matter of *federal law*, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand ***is the construction of the contract language itself*** or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25 (emphasis added); *accord Adams*, 524 F. App'x at 324 (applying this holding in concluding that AT&T Mobility could enforce arbitration agreement); *Clarke*, 2018 WL 1036951, at *3.[4]

        d.    DIRECTV is also entitled to enforce the arbitration agreement under principles of estoppel.

Because DIRECTV is entitled to enforce the arbitration agreement under its "plain language," (*Clarke*, 2018 WL 1036951, at *1, 3-6; *see also Adams*, 524 F. App'x at 324), there is

---

[4] This federal law interpretive rule, mandated by the FAA, "trumps" Mey's resort to the state-law canon that ambiguities should be construed against the drafter. *Kristian v. Comcast Corp.*, 446 F.3d 25, 35 (1st Cir. 2006). Her citation to *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62 (1995) is misplaced; in that case, both the federal policy in favor of arbitration and the state-law canon pointed to the same result. Here, by contrast, the two would be "in tension" (if the arbitration agreement were actually ambiguous), and under those circumstances "the federal policy favoring arbitration" prevails. *Kristian*, 446 F.3d at 35.

no need to address the question of equitable estoppel. But if the Court reaches the issue, Mey's arguments on that score (Opp. 10-12) are wrong. Mey acknowledges that arbitration is appropriate "when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed." Opp. 11 (quoting *Thomson-CSF, C.S.A. v. Am. Arb. Ass'n*, 64 F.3d 773, 779 (2d Cir. 1995)). Her only response to that principle is to repeat her assertion that she is a non-signatory to AT&T's Wireless Customer Agreement, which is incorrect for all of the reasons explained above—most notably, that she actually signed to accept it.[5] And in any event, that standard is satisfied here: as we explained in our opening brief, the merits of Mey's claims are inextricably intertwined with her contract with AT&T, including her consent to be contacted regarding services offered by AT&T and its affiliates and subsidiaries. Mot. 2, 13-14.

### B. Mey's Claims Against DIRECTV Fall Within The Scope Of Her Arbitration Agreement.

Finally, the substance of Mey's TCPA claims fits comfortably within the broad scope of AT&T's arbitration provision. Remarkably, Mey does not even acknowledge our showing that her claim fits within the arbitration provision's express coverage of "claims relating to advertising" (Phillips Decl. Ex. 6 § 2.2(1)); nor does she acknowledge our showing that the terms of AT&T's Wireless Customer Agreement will bear directly on the arbitrator's resolution of her TCPA claims because of Mey's "consent to the use by us or our authorized agents of regular mail, predictive or autodialing equipment, email, text messaging, facsimile or other reasonable

---

[5] Mey also later assumes "for the sake of argument" that she is a signatory, but then immediately turns to Fourth Circuit cases, like *R.J. Griffin*, addressing the situation where the party resisting arbitration is a *non-signatory* to the contract. Opp. 11-12. Those cases are inapposite for the reasons discussed above (at 6-7), but they also have nothing to do with the question of whether DIRECTV can enforce AT&T's arbitration provision as an affiliate of AT&T Mobility.

means to contact you to advise you about our Services or other matters we believe may be of interest to you." Phillips Decl. Ex. 6 § 1.10. She also does not discuss *any* of the cases we cited (at Mot. 14-15 & n.9) holding that a plaintiff's TCPA claims are subject to arbitration.

Instead, as anticipated in our opening brief, she relies on *Wexler v. AT&T Corp.*, 211 F. Supp. 3d 500 (E.D.N.Y. 2016) and a handful of other cases that she says require this Court to limit the arbitration provision's scope to claims that "'touch matters' related to the" Wireless Customer Agreement. Mot. 13-15 (quoting *Parm v. Bluestem Brands, Inc.*, 2017 WL 1193993, at *9 (D. Minn. Mar. 30, 2017), *appeal pending*, No. 17-1932 (8th Cir.), in turn citing *Wexler*, 211 F. Supp. 3d at 503-04). While *Wexler* (and by extension *Parm*) are wrongly decided for the reasons we explained in our opening brief (at 15 & n.10), that dispute is academic here because Mey's claims are not "wholly unrelated" (*Parm*, 2017 WL 1193993, at *9) to AT&T's Wireless Customer Agreement.

On the contrary, Mey's consent to be contacted in the AT&T Wireless Customer Agreement "about our Services or other matters we believe may be of interest to you" shows that the contract contemplates that AT&T's customers will receive advertising calls for other services offered by AT&T and its affiliates and subsidiaries, like DIRECTV television service. *See* Mot. 13-14. Mey does not deny that "prior express consent" is a defense to a TCPA claim (47 U.S.C. § 227(b)(1)(A)) or that "the TCPA does not permit a party who agrees to be contacted as part of a bargained-for exchange to unilaterally revoke that consent." *Reyes v. Lincoln Auto. Fin. Servs.*, 861 F.3d 51, 56 (2d Cir. 2017). She also has no answer to the Seventh Circuit's holding that claims based on purportedly "unsolicited advertisements" by the assignee of a contract regarding the assignee's services can still have an "intimate relation" to the original contract. *Andermann*,

4852-8277-1295.v1

785 F.3d at 1158.[6] That conclusion is all the more apparent here, because the arbitration provision covers "claims relating to advertising" by AT&T Mobility *and* its "affiliates."

In short, Mey's TCPA claims are covered by her arbitration agreement and therefore should be compelled to arbitration.

## CONCLUSION

The Court should enter an order (i) compelling plaintiff Diana Mey to arbitrate her claims against DIRECTV in accordance with her arbitration agreement and (ii) staying this action pending the resolution of that arbitration.

---

[6] Judge Posner's opinion in *Andermann* also makes clear that Mey overreads Judge Posner's prior language in *Smith v. Steinkamp*, 318 F.3d 775 (7th Cir. 2003) (cited at Opp. 14-15). Like Mey here, the plaintiffs in *Andermann* argued that *Smith* stands for the proposition that it would be an "absurd result" to apply an arbitration provision to "statutory and tort claims" that do not seek to enforce the terms of the underlying contract. *Andermann*, 785 F.3d at 1159; *cf.* Opp. 14-15. The *Andermann* court criticized this interpretation as "untenable," explaining that:

> what we said, which differs totally from the Andermanns' characterization of what we said, is that "absurd results" would ensue if the arising-from and relating-to provisions contained in a payday loan agreement, defining what disputes would have to be arbitrated rather than litigated, were cut free from the loan and applied to a subsequent payday loan agreement that did not contain those provisions. That is not this case. The Andermanns' contract, containing the arising-out-of or relating-to provisions, is a single contract.

785 F.3d at 1159 (citation omitted).

4852-8277-1295.v1

Dated: March 16, 2018					Respectfully submitted,


							*/s/Danielle M. Waltz*_____
							Danielle M. Waltz (WVSB #10271)
							Sarah A. Phipps (WVSB #13031)
							JACKSON KELLY PLLC
							500 Lee Street East, Suite 1600
							Charleston, WV 25301
							Tel.: (304) 340-1000
							Fax: (304) 340-1050
							dwaltz@jacksonkelly.com

							Archis A. Parasharami (*pro hac vice*)
							Daniel E. Jones (*pro hac vice*)
							MAYER BROWN LLP
							1999 K Street NW
							Washington, DC 20006
							Tel.: (202) 263-3328
							Fax: (202) 263-5328
							aparasharami@mayerbrown.com

							*Counsel for Defendant DIRECTV, LLC*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| DIANA MEY, individually and on behalf of a class of all persons and entities similarly situated, | ) ) ) ) |
| *Plaintiff*, | ) ) |
| v. | ) )   Civil Action No.: 5:17-cv-179 |
| DIRECTV, LLC; ADAM COX; AC1 COMMUNICATIONS; IQ MARKETING 2, CORP., d/b/a PACIFICOM; and MICHAEL ASGHARI, | ) ) ) ) ) ) |
| *Defendants.* | ) |

## CERTIFICATE OF SERVICE

I, Danielle M. Waltz, counsel for Defendant DIRECTV, LLC, do hereby certify on this 16th day of March, 2018, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following party:

John W. Barrett
BAILEY & GLASSER LLP
209 Capitol Street
Charleston, WV 25301
jbarrett@baileyglasser.com
jmarshall@baileyglasser.com
rdonovan@baileyglasser.com
skinney@baileyglasser.com
*Counsel for Plaintiffs*

Bryan N. Price
Flaherty Sensabaugh Bonasso PLLC
P.O. Box 3843
Charleston, WV 25338-3843
bprice@flahertylegal.com
*Counsel for Adam Cox and AC1 Communications*

/s/Danielle M. Waltz_____
Danielle M. Waltz (WVSB #10271)

4852-8277-1295.v1