# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# Wheeling

**DIANA MEY**, individually and on
behalf of a class of persons
similarly situated,

        Plaintiff,

        v.                             **Civil Action No. 5:17-CV-179**
                                                 Judge Bailey

**DIRECTV, LLC**; **ADAM COX**; **AC1
MARKETING 2, CORP.**, dba
Pacificom; and **MICHAEL ASGHARI**,

        Defendants.

## ORDER DENYING MOTION TO COMPEL
## ARBITRATION AND TO STAY LITIGATION

Pending before this Court is Defendant DirecTV, LLC's Motion to Compel Arbitration and to Stay Litigation [Doc. 15]. The Motion has been fully briefed and is ripe for decision.

In support of its arbitration demand, defendant Directv states the following:

1.    AT&T's records show that on March 16, 2012, at an AT&T retail store, plaintiff Diana Mey ("Mey") activated the 304-242-7346 number referenced in the complaint for AT&T cell phone service.

2.    During that transaction, Mey was presented with an electronic signature-capture device that displayed the entire AT&T Wireless Customer Agreement, enabling her to read through the entire document electronically or print it by pressing an on-screen "Print" button.

1

3. After she pressed the on-screen "Accept" button, she signed her name under the following acknowledgment: "I have reviewed and agree to the rates, terms, and conditions for the wireless products and service described in the Wireless Customer Agreement (including limitation of liability and arbitration provisions) and the Customer Service Summary, both of which were made available to me prior to my signing."

4. In March 2012, the second paragraph of AT&T's Wireless Customer Agreement highlighted that it contains an arbitration provision. Specifically, that paragraph states that "THIS AGREEMENT REQUIRES THE USE OF ARBITRATION ON AN INDIVIDUAL BASIS TO RESOLVE DISPUTES, RATHER THAN JURY TRIALS OR CLASS ACTIONS." [Doc. 15-2]

5. The arbitration provision provides as follows:

AT&T and you agree to arbitrate all disputes and claims between us. This agreement to arbitrate is intended to be broadly interpreted. It includes, but is not limited to:

- claims arising out of or relating to any aspect of the relationship between us, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory;

- claims that arose before this or any prior Agreement (including, but not limited to, claims relating to advertising);

- claims that are currently the subject of purported class action litigation in which you are not a member of a certified class; and

- claims that may arise after the termination of this Agreement. [Doc. 15-2].

The arbitration agreement further provides that "References to "AT&T," "you," and

"us" include our respective subsidiaries, affiliates, agents, employees, predecessors in interest, successors, and assigns, as well as all authorized or unauthorized users or beneficiaries of services or Devices under this or prior Agreements between us." [Id.].

The plaintiff alleges that the arbitration agreement is not enforceable in this case because (1) neither the plaintiff nor DirecTV were signatories to the cell phone agreement; (2) at the time the agreement was "signed," DirecTV was not an affiliated with AT&T; and (3) that the issues presented in this case are not within the ambit of the arbitration agreement.

DirecTV relies upon the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, et seq., in support of its motion to compel arbitration. Specifically, section 2 of the FAA provides that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

A party can compel arbitration by establishing: (1) the existence of a dispute between the parties; (2) a written agreement that includes an arbitration provision which purports to cover the dispute; (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce; and (4) the failure, neglect, or refusal of the party to arbitrate the dispute. See **American General Life & Accident Ins. Co. v. Wood**, 429 F.3d 83, 87 (4th Cir. 2005) (citing **Adkins v. Labor Ready, Inc.**, 303 F.3d 496, 500–01 (4th Cir. 2002)).

Generally, "[t]he FAA reflects 'a liberal federal policy favoring arbitration agreements.'" **Adkins**, 303 F.3d at 500 (quoting **Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.**, 460 U.S. 1 (1983)). Indeed, the FAA serves as "a response to hostility of

American courts to the enforcement of arbitration agreements, a judicial disposition inherited from then-longstanding English practice." ***Circuit City Stores, Inc. v. Adams***, 532 U.S. 105 (2001). Moreover, a court is required to "resolve 'any doubts concerning the scope of arbitrable issues ... in favor of arbitration.'" ***Hill v. PeopleSoft USA, Inc.***, 412 F.3d 540, 543 (4th Cir. 2005) (quoting ***Moses H. Cone Mem'l Hosp.***, 460 U.S. at 24–25).

Finally, there is one important caveat to the reach of the FAA. "Although federal law governs the arbitrability of disputes, ordinary state-law principles resolve issues regarding the formation of contracts." ***Hill***, 412 F.3d at 543 (citing ***First Options of Chicago, Inc. v. Kaplan***, 514 U.S. 938, 944 (1995); ***Moses H. Cone Mem'l Hosp.***, 460 U.S. at 24). For example, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2" of the FAA. *See* ***Doctor's Assocs., Inc. v. Casarotto***, 517 U.S. 681, 687 (1996) (citations omitted)." ***Wijesinha v. DirectTV, LLC***, 2016 WL 10906449, *3 (S.D. Fla. Sept. 29, 2016).

"With respect to the scope of the arbitration agreement, '[a] dispute is arbitrable if the parties have agreed to arbitrate it. ***Int'l Underwriters AG v. Triple I: Int'l Investments, Inc***., 533 F. 3d 1342, 1344 (11th Cir. 2008). The Court of Appeals for the Eleventh Circuit stated:

> Absent some violation of public policy, a federal court must refer to arbitration any controversies covered by the provisions of an arbitration clause. ***Chastain v. Robinson-Humphrey Co.***, 957 F.2d 851, 854 (11th Cir. 1992). Whether a party has agreed to arbitrate an issue is a matter of contract

interpretation: "[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). *Telecom Italia, Spa v. Wholesale Telecom Corp.*, 248 F.3d 1109, 1114 (11th Cir. 2001)." *Id.*

"'Federal courts interpret arbitration clauses broadly where possible,' and 'any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration.' *Solymar Investments, Ltd. v. Banco Santander S.A.*, 672 F.3d 981, 988-89 (11th Cir. 2012) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 945 (1995)). However, the presumption in favor of post-expiration arbitration of matters is 'limited by the vital qualification that arbitration [is] of matters and disputes arising out of the relation governed by contract.' *Litton*, 501 U.S. at 204. To determine whether a dispute arises out of a contract, the Court of Appeals for the Eleventh Circuit has focused on 'whether the tort or breach in question was an immediate, foreseeable result of the performance of contractual duties.' *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1218 (11th Cir. 2011) (internal citations omitted). 'Relating to' sets 'a boundary by indicating some direct relationship; otherwise, the term would stretch to the horizon and beyond.' *Id*.

The arbitration provision in the Customer Agreement is broad. In order to be arbitrable, the claim must relate to the agreement, any addendum, or the customer's service." *Wijesinha v. DirectTV, LLC*, 2016 WL 10906449, *3 (S.D. Fla. Sept. 29, 2016).

In *Doe v. Princess Cruise Lines, LTD.*, 657 F.3d 1204 (2011), Judge Carnes, writing for the Eleventh Circuit, stated:

5

> "The [Federal] Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration...." **Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.**, 460 U.S. 1, 24–25 (1983). "Because the FAA is at bottom a policy guaranteeing the enforcement of private contractual arrangements, we look first to whether the parties agreed to arbitrate a dispute, not to general policy goals, to determine the scope of the agreement." **E.E.O.C. v. Waffle House, Inc.**, 534 U.S. 279, 294 (2002) (citation and quotation marks omitted). Even though there is that presumption in favor of arbitration, "[t]he courts are not to twist the language of the contract to achieve a result which is favored by federal policy but contrary to the intent of the parties." **Goldberg v. Bear, Stearns & Co.**, 912 F.2d 1418, 1419–20 (11th Cir. 1990). That means "the parties will not be required to arbitrate when they have not agreed to do so." **Id**. at 1419; see also **Waffle House**, 534 U.S. at 294 ("Arbitration under the FAA is a matter of consent, not coercion." (quotation marks and alteration omitted)); **Telecom Italia**, 248 F.3d at 1114 (" '[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" (quoting **United Steelworkers of Am. v. Warrior & Gulf Navigation Co.**, 363 U.S. 574, 582(1960))).

657 F.3d at 1214.

In **Princess**, the Eleventh Circuit discussed the Fifth Circuit's decision in **Jones v. Halliburton**, 583 F.3d 228 (5th Cir. 2009). The Fifth Circuit summarized the factual

allegations as follows:

> (1) Jones was sexually assaulted by several Halliburton/KBR employees in her bedroom, after-hours, (2) while she was off-duty, (3) following a social gathering outside of her barracks, (4) which was some distance from where she worked, (5) at which social gathering several co-workers had been drinking (which, notably, at the time was only allowed in "non-work" spaces).

583 F.3d at 240.

The Fifth Circuit held that "the outer limits of the "related to" language of the arbitration provision have been tested, and breached. Halliburton/KBR essentially asks this court to read the arbitration provision so broadly as to encompass any claim related to Jones' employer, or any incident that happened during her employment, but that is not the language of the contract." ***Id.***

Following that discussion, the Eleventh Circuit stated that:

Contrary to Princess Cruise Lines' position, the terms used in the limiting language are not unlimited in scope. The term "arising out of" is broad, but it is not all encompassing. In construing that same term to determine whether a dispute arises out of a contract, we have explained that the focus is on "whether the tort or breach in question was an immediate, foreseeable result of the performance of contractual duties." ***Telecom Italia***, 248 F.3d at 1116; see also ***Hemispherx*** [***Biopharma, Inc. v. Johannesburg Consolidated Investments***], 553 F.3d at 1367 [(11th Cir. 2008)] ("We have previously focused on foreseeability as [the] proper standard for resolving the

7

scope of an arbitration clause that covers disputes 'arising out of or pursuant to' the contract between the parties."). "Arising out of" requires the existence of some direct relationship between the dispute and the performance of duties specified by the contract. *See* **Telecom Italia**, 248 F.3d at 1116 ("Disputes that are not related—with at least some directness—to performance of duties specified by the contract do not count as disputes 'arising out of' the contract, and are not covered by the standard arbitration clause.").

Similarly, "related to" marks a boundary by indicating some direct relationship; otherwise, the term would stretch to the horizon and beyond. As the Supreme Court has explained in the ERISA pre-emption context, "related to" is limiting language and "[i]f 'relate to' were taken to extend to the furthest stretch of its indeterminacy," it would have no limiting purpose because "really, universally, relations stop nowhere." **N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.**, 514 U.S. 645, 655 (1995) (quotation marks omitted). The same rationale applies here."

657 F.3d at 1218-19.

In **Princess**, the plaintiff was employed by the cruise line, and her employment agreement included an arbitration agreement. Her allegations included claims that after the plaintiff was drugged and raped by fellow crewmembers, her emplyer kept her on the ship against her will, prevented her from receiving medical attention, destroyed the rape kit that was taken, and violated her confidentiality as a rape victim. The Court found that

the arbitration agreement did not apply to those allegations, stating that "[n]othing about those allegations relate to, arise out of, or are connected with Doe's crew agreement or her duties for Princess Cruise Lines as a bar server. The cruise line could have engaged in that tortious conduct even in the absence of any contractual or employment relationship with Doe. As a result, those . . . claims are not 'an immediate, foreseeable result of the performance, of the parties' contractual duties or Doe's services as a Princess Cruise Lines employee, and they are not within the scope of the arbitration clause. **Hemispherx**, 553 F.3d at 1367." 657 F.3d at 1219.

In **Smith v. Steinkamp**, 318 F.3d 775 (7th Cir. 2003), Judge Posner, writing for the Court, found that if the language of an arbitration agreement were separated from the requirement that the dispute arise or relate directly to the agreement, absurd results would ensue. Judge Posner noted that "for example . . . if Instant Cash murdered Smith in order to discourage defaults and her survivors brought a wrongful death suit against Instant Cash . . . Instant Cash could insist that the wrongful death claim be submitted to arbitration. For that matter, if an employee of Instant Cash picked Smith's pocket when she came in to pay back the loan, and Smith sued the employee for conversion, he would be entitled to arbitration of her claim. It would make no difference that the conversion had occurred in Smith's home 20 years after her last transaction with Instant Cash." 318 F.3d at 777.

The decision of whether the dispute in this case falls within the arbitration clause is up to this Court. Earlier this month, the Fourth Circuit held:

"Where ordinary contracts are at issue, it is up to the parties to determine whether a particular matter is primarily for arbitrators or for courts to decide."

9

> ***BG Grp. PLC v. Republic of Arg.***, ––– U.S. –––, 134 S.Ct. 1198, 1206 (2014). Unless the contract states otherwise, a court will presume that it, rather than an arbitrator, will decide any disputes regarding arbitrability, such as "whether the parties are bound by a given arbitration clause, or whether an arbitration clause in a concededly binding contract applies to a particular type of controversy." ***Id***. (internal quotation marks omitted). However, parties may overcome such a presumption by including a delegation provision in the agreement to have an arbitrator decide issues of arbitrability. ***Rent-A-Ctr., W., Inc. v. Jackson***, 561 U.S. 63, 68-69 (2010). Even so, "courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." ***Id***. at 69 n.1 (brackets and internal quotation marks omitted); *accord* ***First Options of Chi., Inc. v. Kaplan***, 514 U.S. 938, 944 (1995). This "standard is exacting." ***Peabody Holding Co., LLC v. United Mine Workers of Am.***, 665 F.3d 96, 102 (4th Cir. 2012). Moreover, this requirement "pertains to the parties' manifestation of intent, not the agreement's validity." ***Rent-A-Ctr.***, 561 U.S. at 69.[1]

***Kabba v. Rent-A-Center, Inc.***, 2018 WL 1778550, *1 (4th Cir. April 13, 2018).

The Fourth Circuit later added "a court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate that dispute." ***Id.*** at *2, quoting ***Granite Rock Co. v. Int'l Bhd. of Teamsters***, 561 U.S. 287, 297 (2010).

---

[1] The Arbitration Agreement does not manifest an intent to have an arbitrator determine the issue of arbitrability. In fact, the Agreement provides "that issues relating to the scope and enforceability of the arbitration provision are for the court to decide."

This Court, having carefully reviewed the agreement, the facts of this case, and the law cited above finds that the dispute in this case - alleged telephone calls placed by DirecTV in violation of the Telephone Consumer Protection Act - does not fall within the ambit of the arbitration agreement.

The agreement was made with AT&T Mobility LLC, not with DirecTV. The relationship is shown in a diagram contained on page 4 of plaintiff's response [Doc. 20], but plaintiff's description of DirecTV and AT&T Mobility as "corporate cousins at least seven times removed" is justified.

Even though the parties are affiliated, it is important to note that at the time the arbitration clause was accepted, the companies were not affiliated, and the receipt of a telephone call from DirecTV was not an immediate, foreseeable result of the performance, of the parties' contractual duties or AT&T Mobility's services. While the arbitration agreement is broad, it is not broad enough. The dispute in this case does not even "touch matters" covered by the contract. *See* **Homestake Lead Co. of Mo. v. Doe Run Res. Corp.**, 282 F.Supp.2d 1131, 1138 (N.D. Cal. 2003) (quoting **Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.**, 473 U.S. 614, 624 n.13).

This Court also is persuaded by the logic of Judge Block in **Wexler v. AT&T Corp.**, 211 F.Supp.3d 500 (E.D. N.Y. 2016). **Wexler** also involved a TCPA claim against AT&T Corp. emanating from unsolicited telephone calls and text messages on her cell phone relating to television and internet service. The arbitration clause in **Wexler** is identical to the one in this case.

In considering a motion to compel arbitration, Judge Block noted:

11

> [A] court can order a dispute to arbitration only if, under the principles of contract law, "the court is satisfied that the parties agreed to arbitrate that dispute." *Granite Rock Co. v. International Bhd. of Teamsters*, 561 U.S. 287, 297 (2010) (citing *First Options, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)). Absent a clear agreement to the contrary—and there is none here—issues concerning the validity and scope of an arbitration agreement are for a court, and not an arbitrator, to decide. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002).

211 F.Supp.3d at 502.

> Judge Block added that:
>
> Mobility's arbitration clause is strikingly broad in two respects. Wexler focuses on the fact that the clause purports to require arbitration of claims against third parties affiliated with Mobility. But it is also unusually broad as to the subject matter it purports to cover. Even agreements traditionally classified as "broad" because they cover all disputes "arising out of" or "relating to" the underlying agreement evidences only the parties' intent "to have arbitration serve as the primary recourse **for disputes connected to the agreement containing the clause.**" *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 225 (2d Cir. 2001) (emphasis added). Mobility's clause, by contrast, is not limited to disputes concerning its service agreement.
>
> There is, in fact, almost no case law addressing such broad arbitration

clauses.  In **AT&T Mobility LLC v. Concepcion**, 563 U.S. 333 (2011), the Supreme Court dealt with the same clause at issue in this case, but the breadth of the clause was not discussed. Rather, the Court held that a rule of California contract law deeming class-action waivers unconscionable in certain circumstances was preempted by the FAA. See *id.* at 344 ("Requiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA.").

In **In re Jiffy Lube International, Inc., Text Spam Litigation**, 847 F.Supp.2d 1253 (S.D. Cal. 2012), the district court acknowledged **Concepcion**, but nevertheless concluded that an arbitration clause covering "any and all disputes" "would clearly be unconscionable." *Id*. at 1263.  It cited **Smith v. Steinkamp**, 318 F.3d 775 (7th Cir. 2003), in which Judge Posner noted the "absurd results" that would follow from an arbitration clause not tethered to an underlying agreement

. . ..

He opined that such results "might be thought unconscionable," *id*. at 778, but did not have to address that issue because the agreement was susceptible of a construction limiting "the duty to arbitrate to disputes arising under 'this Agreement.'"  *Id*. at 777.

As far as the parties' and the Court's own research has revealed, **Jiffy Lube** is the only case squarely addressing an arbitration clause as broad as Mobility's.  The Court agrees with its colleague in the Southern District of

California that such clauses are cause for concern. And the same absurd results that Judge Posner posited would apply here. If Wexler were hit by a Mobility delivery van, or if she tripped over a dangerous condition in a Mobility store, her tort claim would have to go to arbitration. If she bought shares of stock in Mobility and later claimed a decrease in share price was the result of corporate malfeasance, her securities-fraud claim would have to go to arbitration. And since the arbitration clause purports to survive termination of the underlying service agreement, this obligation to arbitrate any claim whatsoever against Mobility would last forever. In fact, the absurd results are even more absurd than those posited in *Jiffy Lube* because the clause would not just cover disputes with Mobility, but would also include any dispute with any of Mobility's affiliates.

211 F.Supp.3d at 502-03.

While this Court does believe that the arbitration clause in this case is susceptible of a construction limiting the duty to arbitrate to disputes arising under or relating to the provision of cellular telephone service, this Court concurs that a construction which does not so limit the scope of the arbitration clause would be unconscionably overbroad.

For the reasons stated above, Defendant DirecTV, LLC's Motion to Compel Arbitration and to Stay Litigation **[Doc. 15]** is **DENIED**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED**: April 25, 2018.

                                        JOHN PRESTON BAILEY
                                        UNITED STATES DISTRICT JUDGE