IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF WEST VIRGINIA

**Wheeling Division**

DIANA MEY,
CRAIG CUNNINGHAM,
STEWART ABRAMSON,
JAMES SHELTON,
DAVID and ROXY VANCE,
RUSSELL LOCKE, and
THOMAS STARK, individually
and on behalf of a class of all
persons and entities similarly situated,

     **Plaintiffs,**

vs.                                                          Case No. 5:17-cv-00179-JPB

DIRECTV, LLC,

     **Defendant.**

<u>**PLAINTIFFS' RESPONSE IN OPPOSITION TO DIRECTV, LLC'S
PARTIAL MOTION TO DISMISS PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 12(B)(2) AND 12(B)(6)**</u>

# TABLE OF CONTENTS

**Page**

Argument Summary ........................................................................................................... 1

Factual Allegations........................................................................................................... 1

Standard............................................................................................................................ 2

I.    The arbitration provision DirecTV seeks to enforce is unconscionable. ................................. 3

II.   The Court possesses personal jurisdiction over DirecTV for each plaintiff's claims................. 3

    A.    Personal jurisdiction over DirecTV exists because five West Virginia residents received DirecTV's illegal telemarketing calls in this State............................................................. 3

    B.    The Court possesses pendent personal jurisdiction over DirecTV for claims by the out-of-state Plaintiffs Cunningham, Abramson, and Shelton.................................................. 4

III.  Plaintiffs adequately allege use of an ATDS. ........................................................................... 9

IV.   Because an adverse ruling on the ATDS issue in Facebook will not dispose of Plaintiffs' claims, there is no justification for a stay.................................................................................. 12

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Action Embroidery Corp. v. Atl. Embroidery, Inc.*,
  368 F.3d 1174 (9th Cir. 2004)............................................................................4, 5

*Allan v. Pennsylvania Higher Education Assistance Agency*,
  968 F.3d 567 (6th Cir. 2020).................................................................................11

*Blue Cross & Blue Shield of Alabama v. Unity Outpatient Surgery Ctr., Inc.*,
  490 F.3d 718 (9th Cir. 2007).................................................................................14

*Breda v. Cellco Partnership*,
  934 F.3d 1 (1st Cir. 2019) .....................................................................................11

*Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*,
  137 S. Ct. 1773 (2017) .....................................................................................6, 7, 8

*In re Celotex Corp.*,
  124 F.3d 619 (4th Cir. 1997)...................................................................................2

*Christian Sci. Bd. of Directors of First Church of Christ, Scientist v. Nolan*,
  259 F.3d 209 (4th Cir. 2001)...................................................................................3

*Clinton v. Jones*,
  520 U.S..................................................................................................................12

*Duran v. La Boom Disco, Inc.*,
  955 F.3d 279 (2d Cir. 2020)..................................................................................11

*Erickson v. Pardus*,
  551 U.S. 89 (2007) ..................................................................................................2

*ESAB Grp., Inc. v. Centricut, Inc.*,
  126 F.3d 617 (4th Cir. 1997)...............................................................................4, 5

*Gadelhak v. AT&T Servs., Inc.*,
  950 F.3d 458 (7th Cir. 2020).................................................................................11

*Glasser v. Hilton Grand Vacations Co.*,
  948 F.3d 1301 (11th Cir. 2020).............................................................................11

*Hernandez v. Equifax Info. Servs. LLC*,
  2020 WL 4584249 (W.D.N.C. Aug. 10, 2020)...................................................7, 8

*Dominguez ex rel. Himself v. Yahoo, Inc.*,
   894 F.3d 116 (3d Cir. 2018) ................................................................................11

*IUE AFL–CIO Pension Fund v. Herrmann*,
   9 F.3d 1049 (2d Cir. 1993) .....................................................................................5

*Izor v. Abacus Data Sys.*,
   2019 WL 3555110 (N.D. Cal. Aug. 5, 2019) .........................................................14

*Johnson v. Moss Bros. Auto Grp., Inc.*,
   No. ED CV 19-2456, 2020 U.S. Dist. LEXIS 86971 (C.D. Cal. May 18, 2020) ........14

*Komaiko v. Baker Techs., Inc.*,
   No. 19-CV-03795, 2020 WL 1915884 (N.D. Cal. Apr. 20, 2020) ............................5

*Koppelman v. Galt Ocean Manor Condo. Ass'n, Inc.*,
   No. 16-CV-62175, 2016 WL 6777896 (S.D. Fla. Nov. 16, 2016) ............................13

*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936) ..............................................................................................12

*Lathrop v. Uber Techs., Inc.*,
   2016 WL 97511 (N.D. Cal. Jan. 8, 2016) ..............................................................13

*Lincoln, et al., v. Ford Motor Co.*,
   2020 WL 5820985 (D. Md. Sept. 29, 2020) .........................................................7, 8

*Marks v. Crunch San Diego, LLC*,
   904 F.3d 1041 (9th Cir. 2018) ..............................................................................11

*Mey v. Venture Data*,
   245 F. Supp. 3d 771 (N.D. W. Va. 2017) ..........................................................10, 12

*In re Midland Credit Mgmt., Inc., Tel. Consumer Prot. Act Litig.*,
   No. 11-MD-2286, 2020 WL 1287732 (S.D. Cal. Mar. 18, 2020) ...........................14

*Mussat v. IQVIA, Inc.*,
   953 F.3d 441 (7th Cir. 2020) ..................................................................................8

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*,
   335 F. Supp. 2d 126 (D. Me. 2004) .........................................................................4

*Oetiker v. Werke*,
   556 F.2d 1 (D.C. Cir. 1977) ....................................................................................5

*Pascal v. Concentra, Inc.*,
   2019 U.S. Dist. LEXIS 185193 (N.D. Cal. Oct. 24, 2019) .....................................14

*Payton v. Kale Realty, LLC*,
    No. 13 C 8002, 2014 WL 4214917 (N.D. Ill. Aug. 26, 2014) .......................................3

*Pederson v. Donald J. Trump for Pres., Inc.*,
    No. CV 19-2735, 2020 WL 3047779 (D. Minn. June 8, 2020) ("The Court will
    decline to issue a stay based pending the outcome in that case because the Court
    finds that it is unlikely that the Supreme Court will void the TCPA in its
    entirety.")......................................................................................................................14

*Pieterson v. Wells Fargo Bank, N.A.*,
    No. 17-CV-02306, 2018 WL 3241069 (N.D. Cal. July 2, 2018)................................13

*Republican Party of N.C. v. Martin*,
    980 F.2d 943 (4th Cir. 1992)........................................................................................2

*Robinson Eng'g Co., Ltd. Pension Plan Trust v. George*,
    223 F.3d 445 (7th Cir. 2000) ........................................................................................5

*Robinson v. Penn Cent. Co.*,
    484 F.2d 553 (3d Cir. 1973) ..........................................................................................5

*Rosenberg v. LoanDepot.com LLC*,
    435 F. Supp. 3d 308 (D. Mass. 2020) .........................................................................13

*Slade v. Hampton Rds. Reg'l Jail*,
    407 F.3d 243 (4th Cir. 2005).........................................................................................2

*Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co.*,
    682 F.3d 292 (4th Cir. 2012).....................................................................................4, 9

*United States v. Botefuhr*,
    309 F.3d 1263 (10th Cir. 2002).....................................................................................5

*Universal Leather, LLC v. Koro AR, S.A.*,
    773 F.3d 553 (4th Cir. 2014).........................................................................................3

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980) .......................................................................................................9

*Young v. Peraza*,
    No. 1560968-CIV, 2015 WL 4639736 (S.D. Fla. Aug. 4, 2015)................................13

**Statutes**

28 U.S.C.A. § 1367 .................................................................................................4, 5, 8

28 U.S.C. § 1331 ...........................................................................................................8

47 U.S.C. .......................................................................................................................1

47 U.S.C. § 227(b)(1)(A)(iii) .................................................................................1, 9, 10

47 U.S.C. § 227(c) .........................................................................................................1

47 U.S.C. § (b)(1)(B) ....................................................................................................9

**Other Authorities**

Federal Rule of Civil Procedure Rule 8(a)(2) ..............................................................2

Federal Rule of Civil Procedure Rule 8 .......................................................................2

Rule 12(b)(2) .................................................................................................................2

Rule 12(b)(6) .............................................................................................................2, 9

West Virginia. *Sloan* .................................................................................................8, 9

## Argument Summary

DirecTV does not contest that Plaintiffs have properly pled their claims that DirecTV's agents sent them illegal prerecorded messages in violation of the Telephone Consumer Protection Act. Apart from its meritless jurisdictional challenge, DirecTV seeks only dismissal of Plaintiffs' allegation that it also violated the TCPA's prohibition against calls to cell phones using an automatic telephone dialing system, or ATDS — but this Court, specifically, and the majority of the federal circuits, have rejected the arguments DirecTV advances with respect to Plaintiffs' ATDS claims.

The Court should deny DirecTV's motion in its entirety.

## Factual Allegations

Without prior express written consent, DirecTV and its authorized dealers knowingly and willfully used an ATDS to make numerous automated and pre-recorded calls to the Plaintiffs' cellular telephones to sell DirecTV subscription services, a violation of 47 U.S.C. § 227(b)(1)(A)(iii). *See* Third Am. Compl. ¶¶ 30, 287–89, Doc. 179, attached as Exhibit A ("TAC"). DirecTV and its authorized dealers also knowingly and willfully violated the 47 U.S.C. § 227(b)(1)(B) of the TCPA by initiating telemarketing calls to Plaintiffs' residential telephone lines using an artificial or prerecorded voice. TAC ¶¶ 30, 290–92.  Finally, DirecTV knowingly and willfully initiated numerous calls in a twelve-month period to consumers whose numbers had been registered on the National Do Not Call Registry, a violation of 47 U.S.C. § 227(c). TAC ¶¶ 30, 293–95.  Because such telemarketing campaigns generally place calls to thousands or even millions of potential consumers *en masse* across the country, Plaintiffs bring this action on behalf of three proposed nationwide classes of others who also received illegal telemarketing calls from DirecTV or its agents in violation of the TCPA.

## Standard

When ruling on a motion to dismiss, a court must accept as true all the factual allegations contained in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). In *Bell Atlantic Corp. v. Twombly*, the Court reaffirmed the notice pleading standard codified in Rule 8 of the Federal Rules of Civil Procedure, explaining that a complaint must offer more than a formulaic recitation of the elements of a cause of action. 550 U.S. 544, 545 (2007). Shortly after *Twombly*, the Supreme Court put its decision in context with its ruling in *Erickson*; quoting *Twombly*, the Court held that Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that a pleader is entitled to relief." *Erickson*, 551 U.S. at 93. Specific facts are not necessary; the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41 (1957)).

A Rule 12(b)(6) motion "tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). A motion to dismiss for failure to state claim may only be granted if "after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitled him to relief." *Slade v. Hampton Rds. Reg'l Jail*, 407 F.3d 243, 248 (4th Cir. 2005) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)).

When a defendant challenges the Court's personal jurisdiction under Rule 12(b)(2), the plaintiff has the burden of proving that jurisdiction exists by a preponderance of the evidence. *In re Celotex Corp.*, 124 F.3d 619, 628 (4th Cir. 1997).

2

**Argument**

I.    **The arbitration provision DirecTV seeks to enforce is unconscionable.**

For the reasons stated in Plaintiffs' Brief Concerning Unconscionability (Doc. 185), the arbitration provision DirecTV seeks to enforce is unconscionable. Ms. Mey has no obligation to arbitrate her claims against DirecTV.

II.    **The Court possesses personal jurisdiction over DirecTV for each plaintiff's claims.**

A.    **Personal jurisdiction over DirecTV exists because five West Virginia residents received DirecTV's illegal telemarketing calls in this State.**

In assessing whether a defendant's minimum contacts establish personal jurisdiction, courts apply a well-established three-prong test and examine (1) the extent to which the defendant has purposely availed itself of the privilege of conducting business in the forum state; (2) whether the plaintiffs' claims arise out of the defendant's activity in the that state; and (3) whether exercising personal jurisdiction would be "constitutionally reasonable." *Christian Sci. Bd. of Directors of First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 216 (4th Cir. 2001).

Here, DirecTV does not contest this Court's personal jurisdiction over claims brought by West Virginia residents. Nor could it—all three specific jurisdiction elements are satisfied. First, when DirecTV's agents placed telemarketing calls into West Virginia to sell DirecTV subscriptions, DirecTV "purposely availed itself of the privilege of conducting activities" in this State. *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 560 (4th Cir. 2014). Second, the claims arise directly from DirecTV's conduct or the conduct of its agents in making or authorizing telemarketing calls to the residents of West Virginia. *See Payton v. Kale Realty, LLC*, No. 13 C 8002, 2014 WL 4214917, at *3 (N.D. Ill. Aug. 26, 2014) ("[C]ourts have repeatedly held that sending a message into the forum state in violation of the TCPA is sufficient to confer specific personal jurisdiction over the defendant."). And third, exercising personal jurisdiction over DirecTV in the very state where five plaintiffs received its illegal telemarketing calls is constitutionally reasonable — especially given

3

DirecTV's substantial resources — because the litigation is not "so gravely difficult and inconvenient as to place [DirecTV] at a severe disadvantage in comparison to [its] opponent." *Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 301 (4th Cir. 2012) (internal quotation marks and citations omitted).[1] Therefore, the court has specific personal jurisdiction over DirecTV for TCPA claims brought by residents of this State. DirecTV does not contend otherwise.

### B. The Court possesses pendent personal jurisdiction over DirecTV for claims by the out-of-state Plaintiffs Cunningham, Abramson, and Shelton.

Five of the eight named plaintiffs live in West Virginia, where they received the illegal telemarketing calls that gave rise to this action. Exercising pendent personal jurisdiction over DirecTV for the additional claims brought by the three other plaintiffs makes good sense, is supported by the law, and is well within this Court's discretion.

The Court "may assert pendent personal jurisdiction over a defendant with respect to a claim for which there is no independent basis of personal jurisdiction so long as it arises out of a common nucleus of operative facts with a claim in the same suit over which the court does have personal jurisdiction." *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004); *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 628 (4th Cir. 1997) (recognizing that discretionary power to assert pendent personal jurisdiction should receive the same "considerations" of "judicial economy, convenience and fairness to the litigants" as supplemental jurisdiction under 28 U.S.C.A. § 1367); *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 335 F. Supp. 2d 126, 128 (D. Me. 2004) (finding that pendent personal jurisdiction exists over defendant for claims even when "there is no independent basis for jurisdiction and the federal claim for which there is

---

[1] In a stroke of irony, DirecTV appears to want to fight the same national class action on three fronts rather than litigate the Texas and Pennsylvania Plaintiffs' claims here, despite that the claims arise from the same nucleus of operative facts.

4

personal jurisdiction . . . arises out of a common nucleus of operative facts") (internal quotation marks and citations omitted).

The Fourth Circuit, along with at least six other circuits, has long recognized the doctrine of pendent personal jurisdiction. *See ESAB*, 126 F.3d at 628–29 (affirming district court's exercise of personal jurisdiction over defendant for state claims without independent personal jurisdiction, and employing pendent personal jurisdiction because "judicial economy and convenience of the parties is best facilitated by a consideration of all legal theories arising from a single set of operative facts"). Once a defendant is "properly before" the Court, the Court may assert personal jurisdiction over other claims if "consistent with due process." *Id.* at 629. Pendent personal jurisdiction employs the same logic codified in 28 U.S.C. § 1367, which provides for supplemental subject matter jurisdiction in similar circumstances. *United States v. Botefuhr*, 309 F.3d 1263, 1272–75 (10th Cir. 2002); *see also Robinson Eng'g Co., Ltd. Pension Plan Trust v. George*, 223 F.3d 445, 449–50 (7th Cir. 2000). And it is readily used in circumstances like this in circuits across the country. *See, e.g.*, *Action Embroidery*, 368 F.3d 1174, 1181 (9th Cir. 2004); *IUE AFL–CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1056–57 (2d Cir. 1993); *Oetiker v. Werke*, 556 F.2d 1, 5 (D.C. Cir. 1977) (exercising pendent personal jurisdiction over federal claims); *Robinson v. Penn Cent. Co.*, 484 F.2d 553, 555–56 (3d Cir. 1973).

Although federal courts often invoke pendent personal jurisdiction over state-law claims arising out of the same operative facts as a federal claim, exercising pendent jurisdiction over identical federal claims brought under the same statutory scheme — as here — is even less onerous. Indeed, pendent personal jurisdiction has been employed in TCPA class actions. *See Komaiko v. Baker Techs., Inc.*, No. 19-CV-03795, 2020 WL 1915884, at *8 (N.D. Cal. Apr. 20, 2020) ("[E]ven if [the non-resident's] claims would not provide an independent basis for personal jurisdiction, the

5

court has jurisdiction over those claims because they arise from a common nucleus of operative facts with claims over which the court has personal jurisdiction.").

In *Sloan v. General Motors LLC*, consumers brought a putative nationwide class action in the Northern District of California for violations of various federal and state laws related to product defects. 287 F. Supp. 3d 840, 850–51, 859 (N.D. Cal. 2018), *order clarified*, No. 16-CV-07244-EMC, 2018 WL 1156607 (N.D. Cal. Mar. 5, 2018), and *on reconsideration*, 438 F. Supp. 3d 1017 (N.D. Cal. 2020). Some consumers were California residents, others were not. *Id.* at 852. GM moved to dismiss the non-California class representatives for lack of personal jurisdiction. *Id.* at 850. But the court denied the motion, explaining that where a federal court presides over litigation involving a federal question, it may exercise pendent personal jurisdiction over the state-law claims. *Id.* at 861, 864 (citing *Action Embroidery*, 368 F.3d at 1181 ("When a defendant must appear in a forum to defend against one claim, it is often reasonable to compel that defendant to answer other claims in the same suit arising out of a common nucleus of operative facts.")). Finding a significant factual nexus between the claims by the resident and non-resident plaintiffs, the court asserted personal jurisdiction over all the plaintiffs' claims — resident and non-resident alike. *Id.* at 861-62.

The *Sloan* court rejected the argument advanced by some courts that *Bristol-Myers Squibb* applies to federal courts when they possess federal question jurisdiction. *Id.* at 857 (citing *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1781 (2017) ("*BMS*")). In *BMS*, the Supreme Court held that California state courts lacked jurisdiction to hear the mass tort claims of non-resident plaintiffs who alleged they were harmed in other states by conduct occurring outside of California. *BMS*, 137 S. Ct. at 1781. The Court expressly left open the question of whether this rule also applies to federal courts. *Id.* at 1783–84. Concerned with "the Due Process Clause, acting as an instrument of interstate federalism," the Court found that "at times, this federalism interest may be decisive . . . even if the forum State is the most convenient location for

6

litigation." *Id.* at 1780–81 (citations omitted). *BMS* was thus "animated by unique interstate federalism concerns" that are not present in federal court. *Sloan*, 287 F. Supp. 3d at 858. "[B]ecause all federal courts, regardless of where they sit, represent the same federal sovereign," federalism concerns fall away, and the analysis then turns on the "burden on the defendant." *Id.* at 859 (citing *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) ("[T]raditional notions of fair play and substantial justice.").) The *Sloan* court recognized that the burden on the defendant was — as it is here — *de minimis. Id.* at 861.

Here, there is no dispute that the Court has personal jurisdiction over DirecTV on the claims brought by the five West Virginia Plaintiffs.  Because the claims arise from the same nucleus of operative facts, the Court should exercise its discretion to assert jurisdiction over the nearly identical claims brought by the three other Plaintiffs. DirecTV faces no burden or inconvenience in defending the out-of-state Plaintiffs' claims in this Court because it will already be here defending identical claims brought by the five West Virginia Plaintiffs. Keeping these claims together in this Court will serve the undergirding policy purposes for pendent and supplemental jurisdiction. Forcing Cunningham, Abramson, and Shelton to file identical national class actions — that would seek to certify two identical nationwide classes — would waste judicial resources, result in piecemeal litigation, impose a greater burden on all parties, and potentially result in inconsistent rulings by district courts on claims arising from the same nucleus of operative fact.  Exercising jurisdiction here would preserve judicial resources, result in common and consistent relief for the plaintiffs, and be convenient to all parties, including DirecTV.

In opposition, DirecTV latches onto two unpublished district court decisions that are factually distinguishable and that rely on shaky legal reasoning. Def.'s Br. at 7; *see Hernandez v. Equifax Info. Servs. LLC*, 2020 WL 4584249, at *4 (W.D.N.C. Aug. 10, 2020); *Lincoln, et al., v. Ford Motor Co.*, 2020 WL 5820985, at *5 (D. Md. Sept. 29, 2020). Neither *Hernandez* nor *Lincoln*

offer the straightforward exercise of pendent personal jurisdiction that is present here. In *Hernandez*, with only three plaintiffs and no putative class claims, the possibility of judicial waste, piecemeal litigation, undue burden on the parties, and inconsistent rulings was practically non-existent. Moreover, the plaintiffs did not raise, nor did the court address, the doctrine of pendent personal jurisdiction. *Lincoln* involved complicated products liability issues and multiple products liability and contract claims under Maryland, Delaware, and federal law — a far cry from the legally and factually unified TCPA claims here.

Further, both cases misapply *BMS* and a Seventh Circuit case, *Mussat v. IQVIA, Inc.*, 953 F.3d 441, 445 (7th Cir. 2020). For example, the court in *Lincoln* claimed that "the Seventh Circuit applied *Bristol-Myers Squibb*'s rule to a class action suit in *federal* court." *Lincoln*, 2020 WL 5820985, at *4; *see also Hernandez*, 2020 WL 4584249, at *4 (similar). But this greatly exaggerates *Mussat*'s reliance on *BMS*; nowhere does the *Mussat* court expressly apply the *BMS* state court jurisdiction rule to federal courts. *See Mussat*, 953 F.3d at 445, 448–49. Instead, the *Mussat* court relied on existing procedural rules governing diversity jurisdiction and venue to personal jurisdiction — that only named plaintiffs must meet these threshold requirements. *Id.* at 447. Just like supplemental jurisdiction under 28 U.S.C. § 1367, the concerns with pendent jurisdiction in cases sitting in diversity are entirely different than cases invoking federal question jurisdiction under 28 U.S.C. § 1331. *Lincoln* and *Hernandez* both misread *BMS* and *Mussat*, and thus offer little help here. In any case, not one of these cases is binding on the Court.

Instead, *Sloan* is the more analogous case. Like *Sloan*, the non-resident plaintiffs are part of a "putative nationwide class action," rather than individual claims arising from conduct committed exclusively in West Virginia. *Sloan*, 287 F. Supp. 3d at 860. Like *Sloan*, separating these plaintiffs' claims would result in "piecemeal litigation," subjecting DirecTV to "several different courts on . . .

8

identical issues." *Id.* at 862. And like the defendant in *Sloan*, DirecTV cites no prejudice it would suffer if required to litigate the non-West Virginia resident plaintiffs' claims. *Id.*

Ultimately, neither purpose for which minimum contacts is required would be served by dismissing the nonresident plaintiffs here: (1) preventing the "burden of litigating in a distant or inconvenient forum[,]" and (2) "ensur[ing] that *States* through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a *federal system*." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980) (emphasis added). Therefore, with "[f]airness [as] the touchstone of the jurisdiction inquiry," the court here has broad discretion and good reason to exercise pendent personal jurisdiction over DirecTV for claims brought by Cunningham, Abramson, and Shelton. *Tire Eng'g & Distribution*, 682 F.3d at 301.

### III.    Plaintiffs adequately allege use of an ATDS.[2]

Count I of the TAC alleges that calls from DirecTV's agents violated two separate provisions of the TCPA — the prohibition on calls placed using an ATDS to cell phones without consent (in violation of 47 U.S.C. § 227(b)(1)(A)(iii)), and the prohibition on sending prerecorded message calls to residential phones (in violation of 47 U.S.C. § (b)(1)(B)). *See also* TAC ¶¶ 28–258 (detailing the Plaintiffs' receipt of illegal telemarketing calls made using an ATDS or prerecorded message). DirecTV seeks Rule 12(b)(6) dismissal of claims relating only to the former calls, and not the latter.

According to DirecTV, a telephone dialing system that places calls from a stored list (for example, a list of potential telemarketing targets) is not an ATDS under the statutory definition.

---

[2] In an apparent typographical error, DirecTV asserts that "Plaintiffs have not plausibly alleged that they received texts from an ATDS," and that "only texts from an ATDS violate the TCPA." Def.'s Br. at 11. Plaintiffs do not allege that they received any text messages, nor is that the law. Plaintiffs allege that they received telephone calls. TAC ¶¶ 287-295.

Def.'s Br. at 12.  To violate the TCPA, according to DirecTV, automatic dialing systems meet the ATDS definition only if the numbers are generated and dialed randomly.

The following is not overstatement: If DirecTV's interpretation were correct, virtually all robocalls would be legal. Robocallers do not place calls randomly. Why would they? They place calls to telemarketing targets, people who fit criteria that make them likely to purchase whatever it is the robocallers are selling (and here, that is DirecTV subscriptions to people who own homes). So, under DirecTV's interpretation, robocallers would be free to bombard consumers' cell phones with robot calls so long as the robocallers placed the calls using a stored list of telephone numbers.  And only robocalls to randomly generated telephone numbers would violate the law.

This interpretation would eviscerate the anti-robocalling provisions of the TCPA and has been rejected by both this Court and the majority of the federal courts of appeals. In *Mey v. Venture Data,* 245 F. Supp. 3d 771 (N.D. W. Va. 2017), the Court laid out the issue: the TCPA prohibits a party from making any non-emergency call to a cellular telephone using an ATDS without prior express consent. *Id.* at 775 (construing 47 U.S.C. § 227(b)(1)(A)(iii)). An ATDS is "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." *Id.* at 189 (citing 47 U.S.C. § 227 (a)(1)).

As the Court further noted, "the prohibition against ATDS also includes 'predictive dialers,' which do not generate numbers to be dialed randomly but instead use computer software to automatically dial numbers from a stored list." *Id.* at 189 (citing *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961 (2015)). A system qualifies as an ATDS if it has the "capacity" to automatically dial numbers from a "***stored list***," "even if it is not presently used for that purpose." *Id.* at 789.

10

The First, Second, Third, Sixth, and Ninth Circuits — whose decisions focus on whether the equipment has the ability randomly or sequentially dial such numbers and the extent of human intervention that is required to dial calls or send text messages *en masse* — all join in this Court's interpretation. *Allan v. Pennsylvania Higher Education Assistance Agency*, 968 F.3d 567 (6th Cir. 2020); *Breda v. Cellco Partnership*, 934 F.3d 1, 13 n.3 (1st Cir. 2019) (noting that the definition of ATDS is subject to ongoing debate and, while not a contested issue on appeal, "it suffices for present purposes to think of an automatic dialing system as a piece of equipment exhibiting 'the capacity to dial numbers *without human intervention*'") (emphasis added); *Duran v. La Boom Disco, Inc.,* 955 F.3d 279, 289–90 (2d Cir. 2020) (if merely clicking "send" on its own amounted to dialing, then it is hard to imagine how any dialing system could qualify as automatic); *Dominguez ex rel. Himself v. Yahoo, Inc.*, 894 F.3d 116, 121 (3d Cir. 2018) (affirming summary judgment granted in favor of defendant because the record showed that plaintiff could not establish that an "Email SMS Service had the present capacity to function as an autodialer by generating random or sequential telephone numbers and dialing those numbers" and instead "sent messages only to numbers that had been individually and manually inputted into its system by a user."); *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1051 (9th Cir. 2018) (recognizing that a dialing system is properly identified as an ATDS "even though humans, rather than machines, are needed to add phone numbers to the [dialing] platform" because that level of perfunctory human intervention is not enough). *But see Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458 (7th Cir. 2020) (holding AT&T's system that exclusively dialed numbers stored in a customer database, did not store or produce numbers using a random or sequential number generator, and therefore was not an ATDS under the statute); *Glasser v. Hilton Grand Vacations Co.*, 948 F.3d 1301, 1306–07 (11th Cir. 2020) (interpreting the clause "using a random sequential number generator" to modify both "store" and "produce" to narrowly define "ATDS").

Consistent with these decisions, the TAC alleges as to the first subclass (Count One) that Plaintiffs and the class consist of all persons who were contacted by DirecTV's sales representatives on their cell phones via equipment that had the "capacity to dial numbers automatically without human intervention." *See* TAC ¶ 275. The TAC also alleges that DirecTV's sales representative admitted that it was contacting consumers using a "dialer" or an "auto-dialer." *Id.* ¶¶ 34–35, 247–248, 253, 257. As the plaintiffs allege, they received calls via a "dialer," calls from an "auto-dialer," and that such calls were dialed "automatically" and without "human intervention." These allegations adequately plead the use of an ATDS, and the Court should deny the motion to dismiss on that basis.

**IV.    Because an adverse ruling on the ATDS issue in Facebook will not dispose of Plaintiffs' claims, there is no justification for a stay.**

"The proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997) (internal citations omitted). Furthermore, the proponent "must make out a clear case of hardship or inequity in being required to go forward." *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936). Here, DirecTV has made no showing of an undue burden, hardship, or efficiency that would necessitate a stay, and the stay request should be denied.[3]

First, as stated previously, regardless of the exact definition of an ATDS, this matter will proceed as the plaintiffs are entitled to pursue discovery to explore whether an ATDS was used, regardless as to how that term is ultimately defined by the Supreme Court. As this Court has recognized, a TCPA plaintiff is entitled to pursue discovery to ascertain whether the dialing system at issue had the "capacity" to automatically dial numbers from a stored list, even if it is not presently used for that purpose. *Venture Data*, 245 F. Supp. 3d at 791 (recognizing a dispute of fact as to whether the

---

[3] Paradoxically, DirecTV suggests that a stay would "best serve judicial economy," while spurning the importance of judicial economy pages earlier by suggesting that the Court dismiss Plaintiffs Cunningham, Shelton, and Abramson for lack of jurisdiction, sending them to another venue to file identical lawsuits that seek to certify two of the same nationwide classes. Def.'s Br. 19.

dialing system at issue had the capacity to generate numbers sequentially or randomly). Staying this case would create no efficiencies as the Plaintiff is entitled to pursue discovery that could demonstrate the use of an ATDS under any interpretation of the appropriate definition of an ATDS.

Second, the Third Amended Complaint includes claims for telemarketing via pre-recorded message (Count II), and telemarketing to consumers on the National Do Not Call Registry (Count III). These claims have nothing to do with an ATDS or how that term is ultimately defined by the Supreme Court. A stay, therefore, would needlessly delay resolution of the case, and would not promote efficiency. *See Pieterson v. Wells Fargo Bank, N.A.,* No. 17-CV-02306, 2018 WL 3241069, at *4 (N.D. Cal. July 2, 2018) (noting in a similar circumstance that "[s]taying the case when an alternative theory of liability can move forward would unduly postpone adjudication of Plaintiffs' claims"); *Rosenberg v. LoanDepot.com LLC*, 435 F. Supp. 3d 308, 317 (D. Mass. 2020) (same).

Third, Plaintiffs filed this case almost three years ago, and it has already been significantly delayed by DirecTV's appeal. There is no reason to further delay the case, especially considering the *Facebook* case will at most be dispositive of some, but not all, of the Plaintiffs' claims. Further delay would prejudice the Plaintiffs and the class, another factor that counsels against entering a stay. *See Young v. Peraza*, No. 1560968-CIV, 2015 WL 4639736, at *2 (S.D. Fla. Aug. 4, 2015) ("Were the Court to grant the Motion [to stay], Plaintiff would stand to suffer prejudice as the memories of eyewitnesses faded with the passage of time."); *Koppelman v. Galt Ocean Manor Condo. Ass'n, Inc.*, No. 16-CV-62175, 2016 WL 6777896, at *1 (S.D. Fla. Nov. 16, 2016) ("when discovery is delayed or prolonged it can create case management problems which impede the [c]ourt's responsibility to expedite discovery and cause unnecessary litigation expenses and problems"). Further delay also would needlessly increase the risk that necessary evidence will be destroyed, lost, corrupted, or forgotten. *Lathrop v. Uber Techs., Inc.*, 2016 WL 97511, at *4 (N.D. Cal. Jan. 8, 2016) (plaintiffs in putative class action may "suffer prejudice from a stay because the

13

case would extend for an indeterminate length of time, increase the difficulty of reaching class members, and increase the risk that evidence will dissipate"); *accord Izor v. Abacus Data Sys.*, 2019 WL 3555110, at *2–4 (N.D. Cal. Aug. 5, 2019); *see Blue Cross & Blue Shield of Alabama v. Unity Outpatient Surgery Ctr., Inc.*, 490 F.3d 718, 724 (9th Cir. 2007).

Fourth, DirecTV does not even attempt to explain in its brief how it would be prejudiced if the Court rejects its stay request. Courts have consistently refused to grant stays — as the Court should here — based on speculation that a future ruling from the Supreme Court may possibly impact the part of the case or where the ruling itself would not be dispositive of the plaintiffs' claims. *See, e.g., Pederson v. Donald J. Trump for Pres., Inc.*, No. CV 19-2735, 2020 WL 3047779, at *6 n.1 (D. Minn. June 8, 2020) ("The Court will decline to issue a stay based pending the outcome in that case because the Court finds that it is unlikely that the Supreme Court will void the TCPA in its entirety."); *Johnson v. Moss Bros. Auto Grp., Inc.*, No. ED CV 19-2456, 2020 U.S. Dist. LEXIS 86971, at *2–4 (C.D. Cal. May 18, 2020) ("Defendant has not met its burden to show that a stay of this case is appropriate. First, the impact of the Supreme Court's decision . . . is speculative at this point[.] Any hardship resulting from the resources the parties will expend in two months of litigation does not justify staying this case on the basis of a Supreme Court case that *may* affect the outcome of this case."); *In re Midland Credit Mgmt., Inc., Tel. Consumer Prot. Act Litig.*, No. 11-MD-2286, 2020 WL 1287732 (S.D. Cal. Mar. 18, 2020) ("Thus, based on the focus of the case before the Supreme Court, the Court finds the unlikelihood of the entire automated-call restriction being stricken suggests that a stay is inappropriate.").

Given this substantial possibility of harm to Plaintiffs, DirecTV must make a "clear showing" of the hardship it will suffer if the case proceeds. *Pascal v. Concentra, Inc.*, 2019 U.S. Dist. LEXIS 185193, at *8 (N.D. Cal. Oct. 24, 2019). Here, there is none.

The Court should deny DirecTV's request for a stay.

Date:   November 16, 2020                    */s/ John W. Barrett*

John W. Barrett
Jonathan R. Marshall
Sharon F. Iskra
Benjamin Hogan
BAILEY & GLASSER LLP
209 Capitol Street
Charleston, WV  25301
Telephone: (304) 345-6555
jbarrett@baileyglasser.com
jmarshall@baileyglasser.com
siskra@baileyglasser.com
bhogan@baileyglasser.com

Anthony Paronich
PARONICH LAW, P.C.
350 Lincoln St., Suite 2400
Hingham, MA 02043
Telephone: (617) 485-0018
anthony@paronichlaw.com

Edward A. (Ted) Broderick
BRODERICK LAW, P.C.
Boston, MA 02111
Telephone: (617) 738-7080
Ted@Broderick-law.com

Matthew P. McCue
THE LAW OFFICE OF MATTHEW P.
MCCUE
1 South Avenue, Suite 3
Natick, MA  01760
Telephone: (508) 655-1415
mmccue@massattorneys.net

*Counsel for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF WEST VIRGINIA**

**Wheeling Division**

**DIANA MEY,
CRAIG CUNNINGHAM,
STEWART ABRAMSON,
JAMES SHELTON,
DAVID and ROXY VANCE,
RUSSELL LOCKE, and
THOMAS STARK, individually
and on behalf of a class of all
persons and entities similarly situated,**

     **Plaintiffs,**

**vs.**                                                 **Case No. 5:17-cv-00179-JPB**

**DIRECTV, LLC,**

     **Defendant.**

## CERTIFICATE OF SERVICE

     I hereby certify that on the 16th of November 2020, a copy of the foregoing *Plaintiffs'
Response in Opposition to DirecTV, LLC's Partial Motion to Dismiss Pursuant to Federal Rule of
Civil Procedure 12(B)(2) and 12(B)(6)* was filed using the Court's electronic notification system,
which provided notice to all counsel of record.

                                      */s/ John W. Barrett*
                                      John W. Barrett