**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**Wheeling Division**

| | | |
|---|---|---|
| DIANA MEY, individually | ) | |
| and on behalf of a class of all persons | ) | |
| and entities similarly situated, | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| v. | ) | Civil Action No.: 5:17-cv-00179-JPB |
| | ) | |
| DIRECTV, LLC; ADAM COX; | ) | |
| AC1 COMMUNICATIONS; | ) | |
| IQ MARKETING 2, CORP., d/b/a | ) | |
| PACIFICOM; and MICHAEL | ) | |
| ASGHARI, | ) | |
| | ) | |
| *Defendants.* | ) | |

**DEFENDANT DIRECTV, LLC'S MEMORANDUM IN RESPONSE TO PLAINTIFF'S BRIEF CONCERNING UNCONSCIONABILITY**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................................... ii

INTRODUCTION .........................................................................................................................1

ARGUMENT.................................................................................................................................3

I.      Mey Has Waived Her Unconscionability Arguments. .......................................................3

II.     Mey's Arbitration Agreement Is Not Unconscionable. ......................................................8

        A.      Mey Has Not Shown Procedural Unconscionability. ..............................................9

        B.      Mey Has Not Shown Substantive Unconscionability. ...........................................13

                1.      Mey Has Provided No Basis For Finding That Her Arbitration
                        Agreement Unfairly Favors DIRECTV. ....................................................14

                2.      Mey's Substantive-Unconscionability Theories Have Already
                        Been Rejected By The Fourth Circuit And Are Contrary To The
                        FAA.............................................................................................................19

                        a.      Mey has failed to demonstrate that there is anything
                                substantively unconscionable about her agreement to
                                arbitrate claims relating to communications contemplated
                                by her Wireless Customer Agreement. ............................................20

                        b.      Mey's arguments about the breadth of her arbitration
                                agreement reflect precisely the kind of hostility to
                                arbitration that the FAA forbids.....................................................21

                        c.      Mey's remaining out-of-state authorities offer her no
                                assistance.........................................................................................23

CONCLUSION.............................................................................................................................25

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*14 Penn Plaza LLC v. Pyett*,
   556 U.S. 247 (2009) .................................................................................................................. 17

*Ahmed v. Citibank, N.A.*,
   2020 WL 2988666 (E.D.N.Y. June 2, 2020) ............................................................................ 23

*Andermann v. Sprint Spectrum L.P.*,
   785 F.3d 1157 (7th Cir. 2015) ............................................................................................ 22, 23

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011) ........................................................................................................... *passim*

*Bailey v. Moreno*,
   547 F. App'x 196 (4th Cir. 2013) .............................................................................................. 3

*Baker v. Green Tree Servicing LLC*,
   2010 WL 1404088 (S.D. W. Va. Mar. 31, 2010) ..................................................................... 18

*Bresler v. Wilmington Tr. Co.*,
   855 F.3d 178 (4th Cir. 2017) ...................................................................................................... 6

*Brown ex rel. Brown v. Genesis Healthcare Corp.*,
   724 S.E.2d 250 (W. Va. 2011), *judgment vacated sub nom. Marmet Health*
   *Care Ctr., Inc. v. Brown*, 565 U.S. 530 (2012) .................................................................... 9, 12

*Brown v. Firstsource Advantage, LLC*,
   2019 WL 568935 (E.D. Pa. Feb. 12, 2019) .............................................................................. 23

*Bruni v. Didion*,
   160 Cal. App. 4th 1272 (2008) .................................................................................................. 25

*Carbajal v. H&R Block Tax Servs., Inc.*,
   372 F.3d 903 (7th Cir. 2004) ..................................................................................................... 17

*Cayanan v. Citi Holdings, Inc.*,
   928 F. Supp. 2d 1182 (S.D. Cal. 2013) ..................................................................................... 20

*Conway v. Done Rite Recovery Servs., Inc.*,
   2015 WL 1989665 (N.D. Ill. Apr. 30, 2015) ............................................................................ 20

*Coppock v. Citigroup, Inc.*,
   2013 WL 1192632 (W.D. Wash. Mar. 22, 2013) ..................................................................... 23

# TABLE OF AUTHORITIES
## (cont'd)

**Page(s)**

*Craddock v. Beats Music, LLC,*
   2015 WL 4960041 (N.D. Ill. Aug. 19, 2015) .....................................................................20, 22

*Credit Acceptance Corp. v. Front,*
   745 S.E.2d 556 (W. Va. 2013)..................................................................................................9

*Dan Ryan Builders, Inc. v. Nelson,*
   2014 WL 496775 (N.D. W. Va. Feb. 6, 2014) .......................................................................18

*Dan Ryan Builders, Inc. v. Nelson,*
   737 S.E.2d 550 (W. Va. 2012).........................................................................................13, 18

*Fiberlink Commc'ns Corp. v. Magarity,*
   72 F. App'x 22 (4th Cir. 2003) .................................................................................................4

*Fogel v. Chestnutt,*
   668 F.2d 100 (2d Cir. 1981)......................................................................................................7

*Gilmer v. Interstate/Johnson Lane Corp.,*
   500 U.S. 20 (1991)..................................................................................................................17

*Goodwin v. Branch Banking & Trust Co.,*
   2017 WL 960028 (S.D. W. Va. Mar. 10, 2017) .....................................................................16

*Gutierrez v. Autowest, Inc.,*
   114 Cal. App. 4th 77 (2003) ...................................................................................................16

*Herrington v. Waterstone Mortgage Corp.,*
   2019 WL 1866314 (W.D. Wis. Apr. 25, 2019) ....................................................................3, 4

*Hollingsworth v. Jackson Hewitt Inc.,*
   2016 WL 6778380 (N.D. Ill. Nov. 16, 2016) .........................................................................22

*In re Checking Account Overdraft Litig.,*
   754 F.3d 1290 (11th Cir. 2014) .......................................................................................4, 5, 8

*In re Jiffy Lube Int'l, Inc., Text Spam Litig.,*
   847 F. Supp. 2d 1253 (S.D. Cal. 2012)................................................................5, 21, 23, 25

*In re Jones,*
   397 B.R. 775 (S.D. W. Va. 2008), *aff'd*, 591 F.3d 308 (4th Cir. 2010) ...................................6

*Kindred Nursing Ctrs. Ltd. P'ship v. Clark,*
   137 S. Ct. 1421 (2017)............................................................................................................24

iii

# TABLE OF AUTHORITIES
## (cont'd)

**Page(s)**

*Kucharek v. Dan Ryan Builders, Inc.*,
  2013 WL 3365249 (N.D. W. Va. July 3, 2013) ....................................................................... 18

*Laber v. Harvey*,
  438 F.3d 404 (4th Cir. 2006) ........................................................................................................ 6

*Labor Relations Div. of Constr. Indus. of Mass., Inc. v. Teamsters Local 379*,
  156 F.3d 13 (1st Cir. 1998) ........................................................................................................... 3

*Macurdy v. Sikov & Love, P.A.*,
  894 F.2d 818 (6th Cir. 1990) ........................................................................................................ 7

*McFarland v. Wells Fargo Bank, N.A.*,
  810 F.3d 273 (4th Cir. 2016) ................................................................................................. 12, 13

*Mey v. DIRECTV, LLC*,
  971 F.3d 284 (4th Cir. 2020) ............................................................................................. *passim*

*Morewitz v. W. of England Ship Owners Mut. Prot. & Indem. Ass'n*
  *(Luxembourg)*,
  62 F.3d 1356 (11th Cir. 1995) ...................................................................................................... 8

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983) .......................................................................................................................... 5

*Muriithi v. Shuttle Express, Inc.*,
  712 F.3d 173 (4th Cir. 2013) ...................................................................................................... 23

*Nationstar Mortg., LLC v. West*,
  785 S.E.2d 634 (W. Va. 2016) ..................................................................................... 5, 9, 11, 12

*Nealon v. Stone*,
  958 F.2d 584 (4th Cir. 1992). ....................................................................................................... 8

*Nw. Ind. Tel. Co., Inc. v. F.C.C.*,
  872 F.2d 465 (1989) ............................................................................................................. 3, 5, 7

*Omni Outdoor Advert., Inc. v. Columbia Outdoor Advert., Inc.*,
  974 F.2d 502 (4th Cir. 1992) .............................................................................................. *passim*

*Ostreicher v. TransUnion, LLC*,
  2020 WL 3414633 (S.D.N.Y. June 22, 2020) ........................................................................... 23

*Owings v. T-Mobile USA, Inc.*,
  978 F. Supp. 2d 1215 (M.D. Fla. 2013) ..................................................................................... 20

Client Work\4834-4320-8403.v1-12/4/20

# TABLE OF AUTHORITIES
## (cont'd)

**Page(s)**

*Parada v. Superior Court*,
  176 Cal. App. 4th 1554 (2009) .............................................................................................16

*Parm v. Bluestem Brands, Inc.*,
  898 F.3d 869 (8th Cir. 2018) ...............................................................................................19

*Preston v. Ferrer*,
  552 U.S. 346 (2008)................................................................................................................5

*Raynor v. Verizon Wireless, LLC*,
  2016 WL 1626020 (D.N.J. Apr. 25, 2016) ............................................................................20

*Reading Aviation Serv., Inc. v. Bertolet*,
  311 A.2d 628 (Pa. 1973)........................................................................................................17

*Revitch v. DIRECTV, LLC*,
  977 F.3d 713 (9th Cir. 2020) ................................................................................................24

*Rodriguez de Quijas v. Shearson/American Express, Inc.*,
  490 U.S. 477 (1989)................................................................................................................17

*S. Wallace Edwards & Sons, Inc. v. Cincinnati Ins. Co.*,
  353 F.3d 367 (4th Cir. 2003) .............................................................................................6, 7

*Shorts v. AT&T Mobility*,
  2013 WL 2995944 (W. Va. June 17, 2013).......................................................................2, 13

*Sisk v. Abbott Labs.*,
  298 F.R.D. 314 (W.D.N.C. 2014)............................................................................................7

*Smith v. Steinkamp*,
  318 F.3d 775 (7th Cir. 2003) ...........................................................................................22, 23

*State ex rel. AT & T Mobility, LLC v. Wilson*,
  703 S.E.2d 543 (W. Va. 2010)...............................................................................................14

*State ex rel. Dunlap v. Berger*,
  567 S.E.2d 265 (W. Va. 2002)...............................................................................................12

*State ex rel. Ocwen Loan Servicing, LLC v. Webster*,
  752 S.E.2d 372 (W. Va. 2013).....................................................................................9, 10, 18

*State ex rel. Richmond Am. Homes of W. Virginia, Inc. v. Sanders*,
  717 S.E.2d 909 (W. Va. 2011)...............................................................................................10

# TABLE OF AUTHORITIES
## (cont'd)

**Page(s)**

*United States v. Green*,
1995 WL 120684, *1 (4th Cir. 1995) ........................................................................................3

*U.S. Home Corp. v. Settlers Crossing, LLC*,
2015 WL 302816 (D. Md. Jan. 22, 2015)..................................................................................7

*Valued Servs. of Kentucky, LLC v. Watkins*,
309 S.W.3d 256 (Ky. Ct. App. 2009) .....................................................................................25

*W. Sur. Co. v. Rock Branch Mech., Inc.*,
2017 WL 5075253 (S.D. W. Va. Nov. 3, 2017) ........................................................................5

*Weingarten v. Colony Brands, Inc.*,
2013 WL 4482836 (D. Conn. Aug. 21, 2013) .........................................................................20

*Wexler v. AT&T Corp.*,
211 F. Supp. 3d 500 (E.D.N.Y. 2016) .....................................................................................24

**Statutes**

9 U.S.C. § 1–16.............................................................................................................................1

**Other Authorities**

*AT&T U-verse Timeline*, https://www.att.com///files/pdf/U-verse%20Timeline
41907.pdf ...............................................................................................................................21

Fed. R. Civ. P. 11(b) ...................................................................................................................14

Client Work\4834-4320-8403.v1-12/4/20

## INTRODUCTION

As the Fourth Circuit has already confirmed, Diana Mey agreed to arbitrate her dispute with DIRECTV.  Mey now seeks for a second time to avoid enforcement of that agreement—this time by asserting unconscionability—but her brief amounts to little more than pouring old wine into new bottles.  Mey's unconscionability arguments repeat the same faulty theories that the Fourth Circuit already rejected *in this case*.  *Mey v. DIRECTV, LLC*, 971 F.3d 284, 294–95 (4th Cir. 2020).  And the unprecedented interpretation of West Virginia unconscionability law that she urges is wrong as a matter of state law and, if adopted, would be preempted by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1–16, as Supreme Court precedent makes clear.  Mey's unconscionability arguments should be rejected for at least three independent reasons.

*First*, they are untimely.  Mey has waived her unconscionability challenge by failing to raise it in opposition to DIRECTV's original motion to compel arbitration, or on appeal.  Mey offers no reason why she could not have litigated this issue in the prior proceedings.  In comparable circumstances, courts have routinely found arguments that could have been raised—but were not—to be waived on remand.  In particular, courts have recognized that piecemeal litigation over threshold arbitrability issues is inherently prejudicial to the other party, because it undermines the efficient and expeditious resolution of disputes, which is a primary purpose of arbitration.  The same logic applies here.

*Second*, Mey cannot demonstrate that her agreement is procedurally unconscionable, which is an indispensable prerequisite for declining to enforce an agreement on unconscionability grounds under West Virginia law.  The fact that Mey's agreement was a non-negotiable form contract does not render it procedurally unconscionable.  As the West Virginia Supreme Court has recognized, form contracts are common-place in the modern economy.  Nor does anything else about the contracting process render the agreement procedurally unconscionable.  As Mey

1

acknowledges, she received multiple opportunities to read her full Wireless Customer Agreement, as well as specific notice of the agreement's arbitration clause.  That Mey failed to avail herself of those opportunities does not demonstrate any procedural unconscionability in the contracting process.

*Third*, Mey cannot demonstrate that her arbitration agreement is substantively unconscionable, which is also indispensable to a determination that a contractual term is unenforceable on unconscionability grounds.   The very agreement that Mey contends is unconscionable has been upheld by the West Virginia Supreme Court of Appeals.  *Shorts v. AT&T Mobility*, 2013 WL 2995944, at *6 (W. Va. June 17, 2013) (mem.).  Furthermore, the U.S. Supreme Court pointed to the same consumer-friendly terms that are in Mey's arbitration agreement in recognizing that consumers like Mey are "*better off* under their arbitration agreement with AT&T than they would have been as participants in a class action."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 352 (2011).  The decisions in *Concepcion* and *Shorts* fatally undermine Mey's theory that her arbitration agreement is unconscionably overbroad or one-sided—both of which boil down to an argument that having to arbitrate a broad range of disputes against companies under the AT&T umbrella is somehow unfair.  That premise—that there is something inherently inferior about arbitration as a forum for resolving disputes—has been rejected time and time again as incompatible with the FAA, including in the context of the arbitration provision at issue here.

Nor is there anything unfair about Mey's agreement to arbitrate the particular claims at issue in this case.  As the Fourth Circuit already held, the DIRECTV communications on which this case is based relate directly to Mey's AT&T Wireless Customer Agreement.  Specifically, the Fourth Circuit explained that Mey's agreement explicitly contemplated that she might receive

2

offers for services from AT&T affiliates (like DIRECTV television service)—precisely the kind of communication Mey claims to have received here.  *See Mey*, 971 F.3d at 294.

Any one of these three reasons is an independently sufficient ground for rejecting Mey's unconscionability challenge.  Accordingly, DIRECTV's motion to compel arbitration should be granted.

## ARGUMENT

## I.     Mey Has Waived Her Unconscionability Arguments.

As a threshold matter, Mey waived any unconscionability challenge to her arbitration agreement by failing to advance that objection in 2018 in response to DIRECTV's original Motion to Compel Arbitration, or during DIRECTV's appeal from the ruling on that motion.  It is hornbook law that a party "who lost on appeal" may not "advance different, previously available theories" on remand.  *Omni Outdoor Advert., Inc. v. Columbia Outdoor Advert., Inc.*, 974 F.2d 502, 505 (4th Cir. 1992).  As the First Circuit has put it, "[w]hen a party could have raised an argument in his initial appeal, and failed to do so, he has generally waived his right to raise that argument on remand or on appeal from remand."  *Labor Relations Div. of Constr. Indus. of Mass., Inc. v. Teamsters Local 379*, 156 F.3d 13, 17 (1st Cir. 1998) (collecting cases); *Bailey v. Moreno*, 547 F. App'x 196, 197 (4th Cir. 2013) (holding same).

Applying this rule, the D.C. Circuit (in a second appeal) affirmed the Federal Communications Commission's refusal to consider on remand various new "challenges not raised in the initial proceedings before the Commission [or the] court" because "nothing prevented [plaintiffs] from advancing these arguments in the initial proceedings."  *Nw. Ind. Tel. Co., Inc. v. F.C.C.*, 872 F.2d 465, 470–71 (1989) (cited favorably by *United States v. Green*, 1995 WL 120684, *1 (4th Cir. 1995) (unpublished table decision)).  Likewise in *Herrington v. Waterstone Mortgage Corp.*, 2019 WL 1866314 (W.D. Wis. Apr. 25, 2019), the court rejected the plaintiff's attempt to

3

raise for the first time on remand new arbitrability questions that were "directly relevant to the question decided by the court of appeals and … flagged as potentially relevant issues" in the first appeal. *Id.* at *5. The court reasoned that the plaintiff's belated argument did not relate to "new or discrete issues that arose in this case only after the court of appeals decided [other questions of arbitrability]." *Id.* at *4. Having had a "fair opportunity to raise these issues" in the prior proceeding, and having failed to do so, the plaintiff waived those arguments on remand. *Id.*; *accord Fiberlink Commc'ns Corp. v. Magarity*, 72 F. App'x 22, 24 (4th Cir. 2003) (affirming district court's determination that plaintiff "was precluded from raising his new argument that no statute of limitations applied" for the first time on remand, because he had not shown that the argument was "unavailable to him on his initial appeal").

The requirement that "litigants present all available arguments" regarding an issue in the original proceedings serves both "rudimentary procedural efficiency" and "fairness" interests. *Omni*, 974 F.2d at 505. Unnecessarily piecemeal litigation delays "final resolution" of a case and "swell[s]" "already crowded court dockets." *Id.* It is also "not fair for an adversary to have to defend the same lawsuit on appeal over and over." *Id.*

Courts have recognized that these efficiency and fairness interests are powerful in the context of piecemeal appeals over arbitrability issues. For example, following a first appeal in which the Eleventh Circuit reversed an order refusing to compel arbitration on unconscionability grounds, the defendant argued for the first time that arbitrability questions should be delegated to the arbitrator. *In re Checking Account Overdraft Litig.*, 754 F.3d 1290, 1292 (11th Cir. 2014). The district court agreed and granted the motion to compel arbitration. *Id.* In a second appeal, the Eleventh Circuit vacated the order compelling arbitration. *Id.* at 1298. The court held that "[a]t the outset" of the case the defendant "had every chance" to raise the delegation issue. *Id.* at 1296.

4

By failing to do so, the defendant waived that "threshold question of arbitrability." *Id.* at 1298. Invoking fairness and efficiency interests similar to those identified in *Omni*, the Eleventh Circuit reasoned that the very "objective of an agreement to arbitrate is to achieve 'streamlined proceedings and expeditious results.'" *Id.* at 1295 (quoting *Preston v. Ferrer*, 552 U.S. 346, 357 (2008)). Forcing a litigant to take "two trips around the pretrial-motion-and-appeal carousel" necessarily conflicts with that objective "[b]y slowing the process and magnifying [the opposing party's] litigation costs," which in turn "undermine[s] the purpose of the Federal Arbitration Act[]." *Id.* at 1296 (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).

The same logic applies here. West Virginia law is clear that, as the party opposing arbitration, Mey bore the burden of proving that her agreement to arbitrate was unconscionable. *W. Sur. Co. v. Rock Branch Mech., Inc.*, 2017 WL 5075253, at *5 (S.D. W. Va. Nov. 3, 2017) (citing *Nationstar Mortg., LLC v. West*, 785 S.E.2d 634, 638 (W. Va. 2016)). Yet she concedes that she did not make an unconscionability argument in opposing DIRECTV's original motion to compel arbitration. Mey Br. 15–17. Nor has she shown that such an argument was unavailable to her in the initial proceedings. On the contrary, Mey acknowledges that the authority for her argument existed at the time of the original proceedings and even asserts that the argument should have been "obvious" to the parties at that time. Mey Br. 17 (citing *In re Jiffy Lube Int'l, Inc., Text Spam Litig.*, 847 F. Supp. 2d 1253 (S.D. Cal. 2012)). That admission is fatal. When a party has offered no "explanation (beyond inadvertence) for the failure to properly present [an] issue[] in the initial [proceedings and] appeal" (*Nw. Ind. Tel. Co.*, 872 F.2d at 470), courts have consistently rejected "belated[]" attempts to raise previously available arguments on remand (*Omni*, 974 F.2d at 506); *see* discussion *supra*, pp. 3–4.

Moreover, DIRECTV would suffer obvious prejudice if Mey were permitted to raise a new challenge to the enforceability of her arbitration agreement for the first time on remand only after losing on appeal, more than two years after DIRECTV moved to compel arbitration in this case. *See* Dkt. No. 15.[1]

Indeed, Mey's waiver was effective by the time briefing of the motion to compel arbitration in this Court was completed. It is hornbook law that, "in the absence of exceptional circumstances, … nonjurisdictional arguments not made to the district court are waived on appeal." *Laber v. Harvey*, 438 F.3d 404, 429 (4th Cir. 2006); *Bresler v. Wilmington Tr. Co*., 855 F.3d 178, 201 n.23 (4th Cir. 2017) (explaining that an argument "raise[d] … for the first time on appeal … is therefore waived"); *In re Jones*, 397 B.R. 775, 790–91 (S.D. W. Va. 2008) (new argument advanced by plaintiff-appellees "for the first time on appeal" was "waived"), *aff'd*, 591 F.3d 308 (4th Cir. 2010). Mey did not attempt to show any "exceptional circumstances" in the Fourth Circuit proceedings that could excuse her failure to raise the unconscionability issue in the district court—even after this Court raised the issue *sua sponte* in its order (Dkt. No. 28, at 13) and DIRECTV devoted four pages to the issue in its opening brief on appeal (DIRECTV Op. Br. 31–35, *Mey v. DIRECTV, LLC*, No. 18-1534 (4th Cir. 2018), ECF 17). In fact, Mey did not "so much as mention" the unconscionability issue in her briefing. Reply Br. 3 n.1, *Mey v. DIRECTV, LLC*, No. 18-1534 (4th Cir. 2018), ECF 28.

As the Fourth Circuit recognized in *Omni*, it would be "absurd" to hold that, by waiting even *longer* to advance her unconscionability challenge, Mey should be permitted to escape the

---

[1]     Mey's own authorities likewise recognize that belatedly asserted defenses are waived when they would cause prejudice or unfair surprise to the opposing party. *See, e.g.*, *S. Wallace Edwards & Sons, Inc. v. Cincinnati Ins. Co.*, 353 F.3d 367, 373 (4th Cir. 2003) (upholding waiver finding on these grounds) (cited at Mey Br. 15–16).

consequences of her failure to raise the issue sooner.  974 F.2d at 505 ("It would be absurd that a party who has chosen not to argue a point on a first appeal should stand better as regards the law of the case than one who had argued and lost.") (quoting *Fogel v. Chestnutt*, 668 F.2d 100, 109 (2d Cir. 1981); *see also Nw. Ind. Tel. Co.*, 872 F.2d at 470 (The "widely-accepted" rule against assertion of new arguments on remand "prevents the 'bizarre result' that 'a party who has chosen not to argue a point on a first appeal should stand better as regards the law of the case than one who had argued and lost.'").

In urging to the contrary, Mey does not cite a single case involving challenges to the enforcement of an arbitration agreement, or arguments raised for the first time on remand that could have been litigated in prior proceedings.  Instead, she relies on a series of cases involving belated assertions of *affirmative defenses* in the initial trial court proceedings—most of which in fact *found prejudice* to the party against whom the defense was asserted and concluded that the defense was waived.  Mey Br. 15–18.  If anything, these cases support DIRECTV's position.[2] Fundamentally, though, all of Mey's cited cases are inapposite because a merits defense, unlike the threshold question of whether claims belong in arbitration, need not be decided at the outset of the case.  The belated assertion of a new defense will *not* always delay the proceedings or impose duplicative litigation expenses on the opposing party.  In sharp contrast, because the "prime objective" of arbitration is expediency, a party forced to litigate seriatim objections to the

---

[2]      *See, e.g.*, *S. Wallace Edwards & Sons, Inc.*, 353 F.3d at 373 (citing unfair surprise and prejudice in upholding waiver of an affirmative defense based on a contract); *Macurdy v. Sikov & Love, P.A.*, 894 F.2d 818, 824 (6th Cir. 1990) (citing prejudice in holding that affirmative defense was waived when presented for the first time on summary judgment rather than in the defendant's answer); *U.S. Home Corp. v. Settlers Crossing, LLC*, 2015 WL 302816, at *9 (D. Md. Jan. 22, 2015) (reasoning that defendant had ample opportunity to raise the defense but failed to do so); *Sisk v. Abbott Labs.*, 298 F.R.D. 314, 317 (W.D.N.C. 2014) (citing prejudice in finding waiver under the same circumstance as in *Macurdy*).

7

enforcement of an arbitration agreement necessarily suffers prejudice by "undergo[ing] the [very] type[] of litigation expenses that arbitration was designed to alleviate." *In re Checking Account Overdraft Litig.*, 754 F.3d at 1294–95 (quoting *Morewitz v. W. of England Ship Owners Mut. Prot. & Indem. Ass'n (Luxembourg)*, 62 F.3d 1356, 1366 (11th Cir. 1995)).

Equally baseless is Mey's contention that DIRECTV was on notice of an unconscionability argument that Mey herself failed to assert—simply because the argument was discussed in one case she cited for a different proposition. Mey Br. 17. These facts fundamentally distinguish the present case from *Nealon v. Stone* (cited at Mey Br. 17), in which a party raised an argument, but merely did so "inartfully." 958 F.2d 584, 589 n.3 (4th Cir. 1992).

Finally, contrary to Mey's implication (Mey Br. 1), nothing in the Fourth Circuit's decision in this case precludes this Court from holding that Mey waived her unconscionability objection. Rather, the Fourth Circuit noted DIRECTV's argument "that Mey waived any unconscionability challenge to the arbitration agreement by failing to raise it in the district court," as well as DIRECTV's contention "that the agreement is neither procedurally nor substantively unconscionable." *Mey*, 971 F.3d at 295. And the Fourth Circuit left *both* issues—"waiver" and "unconscionability under West Virginia law"—for "the parties and the district court to address on remand." *Id.*; *see also* Mey Br. 4 (recognizing that the Fourth Circuit returned the waiver issue for this Court's consideration).

In sum, Mey's choice not to raise unconscionability the first time around should have consequences. Her current unconscionability objection is waived, and DIRECTV's motion to compel should be granted.

## II.    Mey's Arbitration Agreement Is Not Unconscionable.

Even if the Court reaches Mey's unconscionability objections, those objections fail on the merits. Under West Virginia law, a contract term must be "both procedurally and substantively

8

unconscionable" before a court may refuse to enforce it. *Credit Acceptance Corp. v. Front*, 745 S.E.2d 556, 564 (W. Va. 2013). West Virginia "[c]ourts … apply a 'sliding scale' in making this determination: the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the clause is unenforceable, and vice versa." *State ex rel. Ocwen Loan Servicing, LLC v. Webster*, 752 S.E.2d 372, 376 (W. Va. 2013). Neither form of unconscionability is present here at all, much less in a degree sufficient to render the agreement unenforceable.

## A.   Mey Has Not Shown Procedural Unconscionability.

Procedural unconscionability "is concerned with inequities, improprieties, or unfairness in the bargaining process and formation of the contract." *Credit Acceptance Corp.*, 745 S.E.2d at 564 (emphasis and quotation omitted). In assessing procedural unconscionability, courts look to "the manner and setting in which the contract was formed, including whether each party had a reasonable opportunity to understand the terms of the contract." *Ocwen Loan Servicing*, 752 S.E.2d at 388–89. Although Mey contends that her contracting process was procedurally unconscionable for several reasons, none are valid under established West Virginia law.

1.   Mey first suggests that her arbitration agreement is procedurally unconscionable because it is a "contract of adhesion." Mey Br. 7. But the Supreme Court of Appeals of West Virginia has emphasized that "[t]here is nothing inherently wrong with a contract of adhesion." *Nationstar Mortg., LLC v. West*, 785 S.E.2d 634, 639 n.12 (W. Va. 2016) (quoting *Brown ex rel. Brown v. Genesis Healthcare Corp.*, 724 S.E.2d 250, 286 (W. Va. 2011)). Indeed, "[m]ost of the transactions of daily life involve such contracts that are drafted by one party and presented on a take it or leave it basis"; these contracts play the essential role of "simplify[ing] standard transactions." *Id*. As a result, the mere fact that a form contract is "prepared by a party with more power" does *not* make it procedurally unconscionable under West Virginia law. *Id.* at 640; *see*

9

*also Ocwen Loan Servicing*, 752 S.E.2d at 389 (holding that a form mortgage contract was not procedurally unconscionable).[3]

2.   Mey next asserts that her arbitration agreement was procedurally unconscionable because it was presented to her on an electronic pinpad device that she admits she could have read—but declined to do so—before affirmatively signing her name to agree to those terms.  Mey Br. 7–8.  But Mey's own accounting of the contracting process undermines, rather than supports, her procedural unconscionability argument.  In particular, Mey concedes that:

- She had the opportunity to review AT&T's *full* Wireless Customer Agreement— including the arbitration clause—on the pinpad device before executing her agreement (*id.* at 7, 9).

- The "first page" of the pinpad device offered Mey the opportunity to "print" her full customer agreement and read the terms on paper before agreeing to them (*id.* at 9).

- The "acknowledgment page" on the pinpad device *specifically* "referred to arbitration," thus providing Mey with specific notice of her agreement to arbitrate (*id.* at 9).

- After receiving such full opportunity to review her contract terms and notice of her arbitration agreement, Mey affirmatively "sign[ed] her name under an acknowledgment indicating that she had 'reviewed and agree[d]' to the Wireless

---

[3]   Mey's cited cases do not hold to the contrary.  The *Sanders* case, for example, involved a unique circumstance in which the defendant had "hired the lawyer who advised the plaintiffs when they signed the Agreement" and "apparently said it would charge an additional $7,500.00 per house if the plaintiffs used a lawyer of their own choosing."  *State ex rel. Richmond Am. Homes of W. Virginia, Inc. v. Sanders*, 717 S.E.2d 909, 922 (W. Va. 2011).  *Sanders* does not hold, as Mey suggests, that procedural unconscionability exists every time one contracting party has more bargaining power.

Customer Agreement terms and conditions, 'including limitation of liability and arbitration provisions'" (*id.* at 8).[4]

The West Virginia Supreme Court's decision in *Nationstar Mortgage, LLC v. West*, 785 S.E.2d 634 (W. Va. 2016), is instructive.  Like Mey, the plaintiffs in *Nationstar* argued that "[t]he closing of [their] loan was conducted in a hurried manner" and that they signed their mortgage documents without first reading and fully appreciating their agreement to arbitrate.  *Id.* at 641. Deeming that argument insufficient to demonstrate a procedurally unconscionable contracting process, the court emphasized that the plaintiffs "do not complain that they were denied the right to read the agreement[,] that they lacked the capacity to understand the arbitration clause[,]" or that "they were coerced into signing the document."  *Id.* at 641.  It concluded that the fact that the plaintiffs chose not to "take further time to read and review the loan documents or to have a third party review them on their behalf … does not excuse them from the binding effect of the agreements contained in the executed document."  *Id.*

The same is true here.  Mey does not argue that she "requested, and w[as] denied, the opportunity to take further time to read" her AT&T Wireless Customer Agreement.  On the contrary, she concedes that she had multiple opportunities to read her agreement.  She instead protests that she found it inconvenient to take those opportunities "while standing in front of a representative at the point of sale."  Mey Br. 9.  But as the West Virginia Supreme Court of Appeals has recognized, entering into form contracts as part of sales transactions is commonplace in today's

---

[4]      In full, the acknowledgment page read:  "I have reviewed and agree to the rates, terms, and conditions for the wireless products and services described in the Wireless Customer Agreement (including limitation of liability *and arbitration provisions*) and the Customer Service Summary, both of which were made available to me prior to my signing."  Dkt. No. 15-3 ¶ 5 & Ex. 2 (emphasis added).

11

economy.  *See Nationstar*, 785 S.E.2d at 639.  It is therefore insufficient to demonstrate procedural unconscionability.

3.   Mey argues that her arbitration agreement was procedurally unconscionable because she supposedly did not understand the full breadth of that clause when she executed it.   That argument is hard to credit, given Mey's admission that she never read her agreement despite multiple opportunities to do so.   In any event, West Virginia law recognizes that a customer's failure to read and appreciate the significance of contract terms generally does *not* make a form contract procedurally unconscionable, because customers "*understand that they are assenting to the terms not read or not understood, subject to such limitations as the law may impose.*" *Nationstar*, 785 S.E.2d at 639 (emphasis in original) (quoting *State ex rel. Dunlap v. Berger*, 567 S.E.2d 265, 274 (W. Va. 2002)).

*Brown I* does not support Mey's procedural-unconscionability argument; it stated merely that form contracts should be "closely scrutinized."   *Brown ex rel. Brown v. Genesis Healthcare Corp.*, 724 S.E.2d 250, 287 (W. Va. 2011), *judgment vacated sub nom. Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530 (2012).   But for the reasons explained above, such scrutiny does not reveal any procedural unconscionability.   Mey's resort to out-of-state cases applying California and Michigan law is also misplaced; West Virginia's law on unconscionability (to the extent it is generally applicable, as the FAA requires) applies here.

For all of these reasons, Mey has not established even a modicum of procedural unconscionability.   Because "both substantive and procedural unconscionability" are required "to make out [a] traditional unconscionability claim" (*McFarland v. Wells Fargo Bank, N.A.*, 810 F.3d 273, 283 (4th Cir. 2016)), Mey's unconscionability objection fails at this first step.

12

### B.      Mey Has Not Shown Substantive Unconscionability.

Mey's substantive unconscionability arguments are meritless as well. "[T]he West Virginia courts have made very clear the standard for substantive unconscionability under state law: A contract term is substantively unconscionable only if it is both 'one-sided' and 'overly harsh' as to the disadvantaged party." *McFarland*, 810 F.3d at 279 (quoting *Dan Ryan Builders, Inc. v. Nelson*, 737 S.E.2d 550, 558 (W. Va. 2012)); *see also id.* at 281 ("[S]ubstantive unconscionability is an equitable doctrine reserved for those cases in which a contract is so one-sided that it has an overly harsh effect on the disadvantaged party.") (quotation marks omitted).

Mey cannot demonstrate either. Indeed, the arbitration agreement in this case has been widely recognized as fair—and thus not substantively unconscionable—including by the West Virginia Supreme Court of Appeals (*Shorts*, 2013 WL 2995944, at *6). The Court in *Shorts* cited fourteen cases from across the country that "have likewise upheld" AT&T's arbitration clause. *Id.* at *6 n.6. And the Court found "no error" in the trial court's finding that the terms of AT&T's arbitration clause "do not prevent Ms. Shorts from addressing her claims in arbitration and enforcing her rights ... in connection with her claims." *Id.* at *6.

Mey's unconscionability arguments ignore the numerous pro-consumer terms of her arbitration agreement as well as the overwhelming body of precedent contrary to her position. Not only does she seek to repackage under the guise of unconscionability the same theories that the Fourth Circuit already rejected, but her assertion of substantive unconscionability boils down to no more than a general hostility to arbitration that cannot be squared with the FAA or binding precedent.

13

### 1. Mey Has Provided No Basis For Finding That Her Arbitration Agreement Unfairly Favors DIRECTV.

To start, Mey has failed to show that her arbitration agreement was one-sided in a manner that favored AT&T and its affiliates, including DIRECTV. Again, the mere fact that an agreement is a form contract does not make it substantively unconscionable under West Virginia law: There must be something unfair or one-sided in "the terms" of the agreement. *State ex rel. AT & T Mobility, LLC v. Wilson*, 703 S.E.2d 543, 549 (W. Va. 2010). Mey has not made—and cannot make—that showing, because the terms of her agreement contain numerous *pro-consumer* features. Indeed, the features of Mey's arbitration agreement are virtually identical to those of the prior version of AT&T's arbitration provision that the Supreme Court recognized make customers like Mey "*better off* under their arbitration agreement with AT&T than they would have been as participants in a class action." *Concepcion*, 563 U.S. at 352. These features include:

- **Cost-free arbitration**: For claims up to $75,000, "AT&T will pay all [American Arbitration Association ("AAA")] filing, administration, and arbitrator fees" unless the arbitrator determines the customer's claim "is frivolous or brought for an improper purpose (as measured by the standards set forth in Federal Rule of Civil Procedure 11(b))."

- **$10,000 minimum award**: If the arbitrator issues an award in favor of a customer that is greater than "AT&T's last written settlement offer made before an arbitrator was selected," then AT&T will pay the customer $10,000 rather than any smaller arbitral award.

- **Double attorneys' fees**: If the arbitrator awards the customer more than "AT&T's last written settlement offer made before an arbitrator was selected," then "AT&T will ... pay [the customer's] attorney, if any, twice the amount of attorneys' fees,

14

and reimburse any expenses (including expert witness fees and costs), that [the] attorney reasonably accrues for investigating, preparing, and pursuing [the] claim in arbitration."

- **Small claims court option**: Either party may bring a claim in small claims court as an alternative to arbitration.

- **Flexible consumer procedures**: Arbitration will be conducted under the AAA's Consumer Arbitration Rules, which the AAA designed with consumers in mind;

- **Choice of in-person, telephonic, or no hearing**: For claims of $10,000 or less, the customer has the exclusive right to choose whether the arbitrator will conduct an in-person hearing, a telephonic hearing, or a "desk" arbitration in which "the arbitration will be conducted solely on the basis of documents submitted to the arbitrator."

- **Conveniently located hearing**: Arbitration will take place "in the county (or parish) of [the customer's] billing address."

- **AT&T disclaims right to seek attorneys' fees**: "Although under some laws AT&T may have a right to an award of attorneys' fees and expenses if it prevails in an arbitration, AT&T agrees that it will not seek such an award."

- **No confidentiality requirement**: Either party may publicly disclose the arbitration and its result.

- **Full individual remedies available**: The arbitrator can award any form of relief of an individualized basis (including statutory and punitive damages, attorneys' fees, and injunctions that would affect the claimant alone) that a court could award.

15

- **Right to a written decision**: "Regardless of the manner in which the arbitration is conducted, the arbitrator shall issue a reasoned written decision sufficient to explain the essential findings and conclusions on which the award is based."

Dkt. No. 15-2 (Phillips Declaration, Ex. 6 §§ 2.1, 2.2(1), (3)–(6)).

These pro-consumer features fundamentally distinguish the cases Mey cites. For instance, the courts in *Gutierrez* and *Parada* found substantive unconscionability based on the inclusion of cost-prohibitive arbitration terms. *See Gutierrez v. Autowest, Inc.*, 114 Cal. App. 4th 77, 90 (2003) (arbitration agreement was unconscionable because it imposed such onerous "administrative fees" that, as a practical matter, consumers were precluded from "initiat[ing] the arbitration process in the first place"); *Parada v. Superior Court*, 176 Cal. App. 4th 1554, 1573 (2009) (arbitration agreement was substantively unconscionable because it required plaintiffs to bear half the cost of arbitration, which "would be in excess of $12,000 per day"). In contrast, DIRECTV will pay the full costs of arbitration under Mey's agreement.

Nor does Mey's agreement give AT&T and its affiliates, including DIRECTV, more favorable remedies or limit the consumer's rights under substantive law, as was the case in *Goodwin v. Branch Banking & Trust Co.*, 2017 WL 960028, at *4 (S.D. W. Va. Mar. 10, 2017) (finding substantive unconscionability because arbitration agreement "heavily favor[ed]" the defendant-bank, including by giving the bank a more favorable statute-of-limitations period and more remedies than the consumer). Quite the opposite—Mey's arbitration agreement provides *the consumer* more favorable arbitration remedies than are available to DIRECTV, or that would be available to the consumer in court—including a $10,000 minimum award and the potential for double attorneys' fees.

16

Ignoring all of the pro-consumer features discussed above, Mey urges that her arbitration agreement is "one-sided" because it covers not only AT&T, but also its "agents, employees, affiliates, and other related entities." Mey Br. 14. That argument is nonsensical: The obligation to arbitrate between Mey and the covered entities in the AT&T family is entirely bilateral. Because both sides have the same rights to invoke arbitration, there is no "one-sided-ness" merely because the agreement applies to a broader set of entities than Mey would prefer.

Because Mey has identified nothing unfair or one-sided about the arbitration terms themselves, her "one-sidedness" objection boils down to precisely the kind of "hostility towards arbitration" that the FAA forbids. *See, e.g.*, *Concepcion*, 563 U.S. at 342. In other words, Mey's "cry of 'unconscionable!' just repackages the tired assertion that arbitration should be disparaged as second-class adjudication." *Carbajal v. H&R Block Tax Servs., Inc.*, 372 F.3d 903, 906 (7th Cir. 2004). Indeed, Mey's premise—that arbitration is an inherently inferior forum for the resolution of any disputes that she may have—has been roundly rejected by the Supreme Court as "far out of step" with its precedents. *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 481 (1989); *accord, e.g.*, *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 266 (2009); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 30 (1991).[5]

Because Mey does not demonstrate *any* degree of one-sidedness, it is unnecessary to address her contention that the agreement is so asymmetric as to be substantively unconscionable. But even if Mey's arbitration agreement did contain terms that disproportionately burden the

---

[5]     *Reading Aviation Serv., Inc. v. Bertolet*, 311 A.2d 628 (Pa. 1973) (cited at Mey Br. 12) does not involve arbitration at all and is therefore even further afield. The court there found an "open-ended" covenant not to compete to "impose an unconscionable burden on [the plaintiff's] ability to pursue his chosen occupation." *Id.* at 630. To the extent Mey is suggesting that arbitration imposes a "burden" on the consumer akin to a non-compete agreement, that only underscores why her argument places arbitration agreements in a disfavored category and therefore squarely runs afoul of the FAA.

17

consumer, that would not render the agreement substantively unconscionable. *E.g.*, *Dan Ryan Builders, Inc. v. Nelson*, 737 S.E.2d 550, 559–60 (W. Va. 2012) ("We emphasize that a one-sided contract provision may not be unconscionable under the facts of all cases…. A court in its equity powers is charged with the discretion to determine, on a case-by-case basis, whether a contract provision is so harsh and overly unfair that it should not be enforced under the doctrine of unconscionability."). Instead, West Virginia law requires extreme one-sidedness before a court will find substantive unconscionability; the fact that some provisions of an arbitration agreement favor one party is not enough to justify a refusal to enforce the agreement as one-sided. *See, e.g.*, *Ocwen Loan Servicing*, 752 S.E.2d at 393–96 (arbitration agreement that (i) precluded either party from recovering the other's attorneys' fees, which the consumer argued was more likely to favor the defendant, and (ii) excluded from arbitration foreclosure claims that the lender-defendant might bring to enforce its security interest was not substantively unconscionable); *Dan Ryan Builders, Inc. v. Nelson*, 2014 WL 496775, at *14 (N.D. W. Va. Feb. 6, 2014) (arbitration agreement that permitted defendant to enforce limited claims in court, while requiring plaintiff to arbitrate all claims, was "not so one-sided" or "unreasonably favor[able]" to the defendant as to be unconscionable); *Kucharek v. Dan Ryan Builders, Inc.*, 2013 WL 3365249, at *13 (N.D. W. Va. July 3, 2013) (same); *Baker v. Green Tree Servicing LLC*, 2010 WL 1404088, at *4 (S.D. W. Va. Mar. 31, 2010) ("mutual" fee-shifting provision in arbitration clause did not make arbitration agreement "one-sided" or substantively unconscionable, notwithstanding risk that plaintiff could be liable for corporate defendant's attorney's fees). Mey has not shown anything even close to the level of one-sidedness needed to declare an arbitration clause substantively unconscionable.

18

## 2. Mey's Substantive-Unconscionability Theories Have Already Been Rejected By The Fourth Circuit And Are Contrary To The FAA.

Mey also argues that her arbitration agreement is unconscionable because it does not have a defined end date and applies to disputes that she may have with a broad range of companies under the AT&T umbrella.  Mey Br. 10–11.  Mey theorizes that such an agreement could conceivably be construed to require arbitration of disputes unrelated to her cell phone agreement "with half of the companies in the S&P 500" (on the unrealistic assumption that AT&T could acquire them in the future) and that this "absurd" "hypothetical[]" renders her agreement unconscionable.  *Id.*  Mey's resort to fanciful hypotheticals fails because it is just a repackaged version of the parade-of-horribles argument that the Fourth Circuit rejected.  As the Fourth Circuit explained, the court need not "define the outer limits of this arbitration agreement" (and thus whether it would cover Mey's parade-of-horribles) in order to decide whether Mey's *actual* claims are subject to arbitration:  "The question before us today is not abstract; it is tethered to the facts of this dispute and the categories of claims specifically included in this arbitration agreement." *Mey*, 971 F.3d at 294.  In so holding, the Fourth Circuit embraced the Eighth Circuit's decision in *Parm v. Bluestem Brands, Inc.*, 898 F.3d 869, 878 (8th Cir. 2018).  There, the Eighth Circuit rejected the parade of "hypotheticals" offered by the plaintiffs and the district court—such as "a car accident between a consumer and her neighbor or the third-party courier" delivering the items plaintiffs purchased from the defendant or another "personal injury claim"—because those hypotheticals had nothing to do with the "*actual* allegations" in the case.  *Id.* at 874–78.

The same is true here.  Under the Fourth Circuit's decision, which is of course binding on this Court, the enforceability of the parties' arbitration agreement must be judged by the *specific* claim that is actually before the court—namely, Mey's TCPA claim against AT&T's affiliate, DIRECTV.  Mey cannot carry her burden to demonstrate that it would be unfair to require her to

19

honor her obligation to arbitrate that dispute, much less show the kind of severe unconscionability

that would be required to invalidate her agreement.

>    **a.    Mey has failed to demonstrate that there is anything substantively unconscionable about her agreement to arbitrate claims relating to communications contemplated by her Wireless Customer Agreement.**

Turning to the claims at issue, there is nothing substantively unconscionable about an

agreement to arbitrate a TCPA claim.  Courts have routinely found TCPA claims subject to

arbitration.[6]  Nor is Mey right in contending (Mey Br. 11–13) that the TCPA claims against

DIRECTV are so unrelated to her original contract as to make it contrary to a consumer's

"reasonable expectations."  The Fourth Circuit already rejected Mey's argument to that effect

when it held that Mey's claims *do* "aris[e] out of or relat[e] to … the relationship between [Mey

and AT&T and its affiliates]" within the meaning of her arbitration agreement:

> The Wireless Customer Agreement elsewhere states that Mey "consent[s] to the use by us or our authorized agents of regular mail, predictive or autodialing equipment, email, text messaging, facsimile or other reasonable means to contact you to advise you about our Services *or other matters we believe may be of interest to you.*" [citation]. One "aspect of the relationship" between Mey and AT&T Mobility and its affiliates under this provision is communication about matters of interest other than AT&T's services, *such as advertising affiliates' products and services*.  The arbitration agreement also specifically includes "claims relating to advertising" and claims "based in ... statute."

*Mey*, 971 F.3d at 294 (second emphasis added).  In sum, the Fourth Circuit has already recognized

that Mey's agreement explicitly contemplates the kind of advertising of AT&T affiliates' services

(like DIRECTV television service) that are at issue in this case.  That holding forecloses Mey's

---

6    *E.g.*, *Raynor v. Verizon Wireless, LLC*, 2016 WL 1626020, at *5 (D.N.J. Apr. 25, 2016); *Craddock v. Beats Music, LLC*, 2015 WL 4960041, at *3–5 (N.D. Ill. Aug. 19, 2015); *Conway v. Done Rite Recovery Servs., Inc.*, 2015 WL 1989665, at *5 (N.D. Ill. Apr. 30, 2015); *Weingarten v. Colony Brands, Inc.*, 2013 WL 4482836, at *2–5 (D. Conn. Aug. 21, 2013); *Owings v. T-Mobile USA, Inc.*, 978 F. Supp. 2d 1215, 1224–25 (M.D. Fla. 2013); *Cayanan v. Citi Holdings, Inc.*, 928 F. Supp. 2d 1182, 1207–08 (S.D. Cal. 2013).

argument that "no ordinary person confronting AT&T Mobility's contract in 2012" would expect it to cover her claims (Mey Br. 11) and fundamentally distinguishes cases like *Jiffy Lube* (*see infra* p. 23 & n.8).

Finally, AT&T's "U-verse" brand has offered paid television service since 2006, well before Mey signed to accept the AT&T Wireless Customer Agreement in 2012. *See AT&T U-verse Timeline*, https://www.att.com/Common/merger/files/pdf/U-verse%20Timeline41907.pdf. It could hardly be absurd for Mey to agree to arbitrate a claim against a member of the AT&T family of companies based on the marketing of a service that the AT&T family of companies has long provided.

> **b.**  **Mey's arguments about the breadth of her arbitration agreement reflect precisely the kind of hostility to arbitration that the FAA forbids.**

Equally fatal, the broad coverage of an agreement to arbitrate cannot be equated with unconscionability—especially not when the Supreme Court has specifically recognized that consumers are "*better off*" under Mey's arbitration agreement than they would be in court. *Concepcion*, 563 U.S. at 352.  As explained above (p. 17), Mey's contrary argument boils down to the impermissible assumption that a consumer is "harmed" by agreeing to arbitrate a broad range of disputes—and thus reflects precisely the kind of hostility towards arbitration forbidden by the FAA.  Put simply, the FAA preempts any interpretation of state law under which arbitration is treated as an inferior form of dispute resolution—which is precisely what Mey invites the Court to do.

Mey's absurd-results argument also rests on the same misreading of Judge Posner's decision in *Smith v. Steinkamp*, 318 F.3d 775 (7th Cir. 2003), that Judge Posner himself later rejected as "untenable."  *See Andermann v. Sprint Spectrum L.P.*, 785 F.3d 1157, 1159 (7th Cir. 2015).  Writing for the court in *Smith*, Judge Posner used a colorful example to illustrate why an

arbitration provision in a payday loan agreement could not be construed as "standing free" from the agreement in which it appeared and applied to an entirely different agreement—explaining that such approach could lead to "absurd results," "for example … if [the payday lender] murdered Smith in order to discourage defaults and her survivors brought a wrongful death suit against [the lender]." 318 F.3d at 777. But in *Andermann*, Judge Posner, again writing for the court, clarified that he found nothing "absurd" about "allowing the arbitration clause in the payday loan agreement to apply *to statutory and tort claims arising after the transactions regarding that loan were completed*" (*Andermann*, 785 F.3d at 1159 (emphasis added))—which in both *Andermann* and this case were TCPA claims. Similarly, he explained that the concerns hypothesized in *Smith* are not implicated when, as here, the court is dealing with a "single contract." *Id.*[7]

Ignoring *Andermann*'s clarification, Mey and the California case she cites (which pre-dates *Andermann*) latch onto the example in *Smith* to suggest that an otherwise even-handed arbitration agreement can be "unconscionable" solely by virtue of its breadth (*i.e.*, the fact that it covers "any and all disputes" between the parties). *See* Mey Br. 12 (citing *In re Jiffy Lube Int'l, Inc., Text Spam Litig.*, 847 F. Supp. 2d 1253, 1263 (S.D. Cal. 2012)). As explained above, it is hard to imagine an application of the unconscionability doctrine that is more hostile to arbitration.[8]

---

[7]   In rejecting the same mischaracterization of *Smith* that Mey advances here, Judge Posner clarified: "What we said [in *Smith*], which differs totally from the [plaintiffs'] characterization of what we said, is that 'absurd results' would ensue if the arising-from and relating-to provisions contained in a payday loan agreement … were *cut free from the loan and applied to a subsequent payday loan agreement that did not contain those provisions*." *Id.* (emphasis added)). The *Smith* issue is not present when, as in this case, only a "single contract" is at issue. *See, e.g.*, *Hollingsworth v. Jackson Hewitt Inc.*, 2016 WL 6778380, at *2–3 (N.D. Ill. Nov. 16, 2016) (relying on this discussion in *Andermann* to conclude that "the *Steinkamp* issue ... is not present" and compelling arbitration); *Craddock*, 2015 WL 4960041, at *5 n.4 (compelling arbitration of TCPA claims and explaining that "*Steinkamp* does not apply here, as Craddock's claims fall within the scope of a single dispute resolution agreement").

[8]   Notably, *Jiffy Lube* has been widely rejected or limited. *See, e.g.*, *Ostreicher v. TransUnion, LLC*, 2020 WL 3414633, at *9 (S.D.N.Y. June 22, 2020) (rejecting plaintiff's

22

Indeed, Mey's argument squarely conflicts with settled law, including Fourth Circuit precedent, holding that "the generally applicable contract defense of unconscionability may not be applied in a manner that targets the existence of an agreement to arbitrate as the basis for invalidating that agreement." *Muriithi v. Shuttle Express, Inc.*, 712 F.3d 173, 180 (4th Cir. 2013).

### c.     Mey's remaining out-of-state authorities offer her no assistance.

The remaining out-of-state authorities on which Mey relies do not support her unconscionability argument either.

In *Wexler*, the court declined to enforce an arbitration agreement on contract-formation grounds, reasoning that no contract covering the plaintiff's claims was ever formed because those claims were not "connected in some way to [her] service agreement" with AT&T. *Wexler v. AT&T Corp.*, 211 F. Supp. 3d 500, 504 (E.D.N.Y. 2016) (cited at Mey Br. 12). But the Fourth Circuit has already found that analysis inapplicable, because Mey's Wireless Customer Agreement specifically contemplates the type of affiliate-advertising contact on which her claim is based. *Mey*, 971 F.3d at 294. More fundamentally, the Fourth Circuit (and even *Wexler*) rejected precisely the unconscionability argument that *Mey* advances here as contrary to the FAA. *Mey*,

---

invitation to consider hypothetical applications of arbitration agreement when the claims at issue were "precisely what one would reasonably expect [to] fall under the terms of the arbitration clause" and collecting cases confining *Jiffy Lube* to narrow circumstance in which claims bore no relationship to parties' agreement) (internal quotation marks omitted); *Ahmed v. Citibank, N.A.*, 2020 WL 2988666, at *6 (E.D.N.Y. June 2, 2020) (provision requiring arbitration of "any claim, dispute, or controversy between you and us arising out of or related to your Account, a previous related Account, or our relationship" was not unconscionably overbroad); *Brown v. Firstsource Advantage, LLC*, 2019 WL 568935, at *1 (E.D. Pa. Feb. 12, 2019) (agreement requiring arbitration of "any current or future claim, dispute or controversy relating to your Account(s), this Agreement, or any agreement or relationship you have or had with us" was not unconscionably overbroad); *Coppock v. Citigroup, Inc.*, 2013 WL 1192632, at *5 (W.D. Wash. Mar. 22, 2013) (likewise distinguishing *Jiffy Lube* as inapplicable to arbitration clauses that are limited to the parties' relationship or contract).

23

971 F.3d at 294 n.5; *Wexler*, 211 F. Supp. 3d at 505 (candidly acknowledging that "deeming an arbitration clause unconscionable because it is too broad" would be "appl[ying] a general contract defense 'in a fashion that disfavors arbitration'" in violation of *Concepcion*) (quoting *Concepcion*, 563 U.S. at 341).[9]

Mey also cites the district court and Ninth Circuit opinions in *Revitch* (which say nothing about unconscionability). Mey Br. 5, 11. But the Fourth Circuit already rejected the analysis advanced in that case, too. *Mey*, 971 F.3d at 290 ("nothing in the contract … support[s]" the "construction" advanced by Mey and adopted in *Revitch*). And the Ninth Circuit explicitly acknowledged that it was reaching the "opposite conclusion" from the one reached by the Fourth Circuit *in this case* on "substantially similar" issues. *Revitch v. DIRECTV, LLC*, 977 F.3d 713, 719–20 (9th Cir. 2020) (citing *Mey*, 971 F.3d at 284). This Court is of course bound to follow the Fourth Circuit's decision—not the Ninth Circuit's.

Mey's remaining cases reflect the same legally erroneous hostility to arbitration and are also factually distinguishable for the same reasons. *See Jiffy Lube*, 847 F. Supp. 2d at 1262–63 (finding arbitration agreement unconscionable because plaintiff's claims did not "arise[] out of or relate[] to the contract" in question); *Bruni v. Didion*, 160 Cal. App. 4th 1272, 1295 (2008) (same); *Valued Servs. of Kentucky, LLC v. Watkins*, 309 S.W.3d 256, 265 (Ky. Ct. App. 2009) (involving

---

[9]     Though the *Wexler* court (erroneously) believed that it could achieve the same "end result" on contract-formation grounds (reasoning that the FAA has no role to play on questions of contract-formation), that view has since been rejected by the U.S. Supreme Court. *See Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 137 S. Ct. 1421 (2017). In *Kindred*, Justice Kagan's opinion for the Court explained that "[a] rule selectively finding arbitration contracts invalid because improperly formed fares no better under the [FAA] than a rule selectively refusing to enforce those agreements once properly made." *Id.* at 1428. Both violate the FAA's savings clause and "equal footing" principle. *Id.* at 1429.

24

"an intentional tort with so little connection to the underlying agreement that it could not have been foreseen by Watkins when he signed that agreement").

## CONCLUSION

The Court should reject Mey's unconscionability challenge and grant DIRECTV's motion to compel arbitration.

Dated:  December 4, 2020                             Respectfully submitted,

                                         */s/ Danielle M. Waltz*
                                         Danielle M. Waltz (WVSB #10271)
                                         Sarah A. Phipps (WVSB #13031)
                                         JACKSON KELLY PLLC
                                         500 Lee Street East, Suite 1600
                                         Charleston, WV 25301
                                         Tel.: (304) 340-1000
                                         Fax: (304) 340-1050
                                         dwaltz@jacksonkelly.com

                                         Archis A. Parasharami
                                         Daniel E. Jones
                                         MAYER BROWN LLP
                                         1999 K Street, N.W.
                                         Washington, D.C. 20006
                                         Telephone: (202) 263-3000
                                         Facsimile: (202) 263-3300
                                         aparasharami@mayerbrown.com

                                         *Counsel for Defendant DIRECTV, LLC*

25

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**Wheeling Division**

| | | |
|---|---|---|
| DIANA MEY, individually<br>and on behalf of a class of all persons<br>and entities similarly situated, | )<br>)<br>)<br>) | |
| *Plaintiffs*, | )<br>) | |
| v. | ) | Civil Action No.: 5:17-cv-00179-JPB |
| | ) | |
| DIRECTV, LLC; ADAM COX;<br>AC1 COMMUNICATIONS;<br>IQ MARKETING 2, CORP., d/b/a<br>PACIFICOM; and MICHAEL<br>ASGHARI, | )<br>)<br>)<br>)<br>)<br>) | |
| *Defendants.* | ) | |

## CERTIFICATE OF SERVICE

I, Danielle M. Waltz, counsel for Defendant DIRECTV, LLC, do hereby certify on this 4th day of December, 2020, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which provided notice to all counsel of record.

/s/  Danielle M. Waltz_____
   Danielle M. Waltz (WVSB #10271)

1