**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Wheeling**

**DIANA MEY,
CRAIG CUNNINGHAM,
STEWART ABRAMSON,
JAMES SHELTON,
DAVID VANCE,
ROXY VANCE,
RUSSELL LOCKE**, and
**THOMAS STARK**, individually
and on behalf of a class of all
persons and entities similarly situated,

Plaintiffs,

v.

**Civil Action NO. 5:17-CV-179**
Judge Bailey

**DIRECTV, LLC,**

Defendant.

## ORDER GRANTING IN PART AND DENYING
## IN PART DEFENDANT'S MOTION TO DISMISS

Pending before this Court is DIRECTV, LLC's Partial Motion to Dismiss Pursuant

to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6) [Doc. 183]. The Motion has been

fully briefed and is ripe for decision. The defendant seeks dismissal as follows:

1.      Diana Mey must proceed with her claims in arbitration, for all the reasons

described in DIRECTV's initial motion to compel arbitration [Doc. 15].

2.      The Court lacks personal jurisdiction over DIRECTV with respect to the

claims of Craig Cunningham, Stewart Abramson, and James Shelton (collectively "out of

state plaintiffs). According to the defendant, the claims of these three Plaintiffs arise out

1

of alleged telemarketing calls from third party retailers authorized to sell DIRECTV service, but no contacts related to those calls allegedly occurred in West Virginia.

3.      In Count I, plaintiffs allege violations of 47 U.S.C. § 227(b)(1)(B) of the Telephone Consumer Protection Act ("TCPA").  According to the defendant, that provision of the TCPA, however, only prohibits calls made to cellular telephone numbers without the consent of the called party if the calls are made using a prerecorded voice or an "automatic telephone dialing system" ("ATDS").  To the extent the calls alleged by plaintiffs were not sent with a prerecorded voice, plaintiffs must allege the use of an ATDS to state a claim. According to defendants, the statutory definition of an ATDS covers only equipment that can generate numbers randomly or sequentially, and nothing in the complaint plausibly alleges that any of the calls were sent using that type of equipment.

"A motion to dismiss under Rule 12(b)(2) is a test of the Court's personal jurisdiction over the defendant.  '[W]hen, as here, the court addresses the question [of personal jurisdiction] on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge.' *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005) (quoting *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989))." *Lincoln v. Ford Motor Co.*, 2020 WL 5820985, at *3 (D. Md. Sept. 29, 2020).

A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (applying the

2

*Twombly* standard and emphasizing the necessity of **plausibility**).  When reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must assume all of the allegations to be true, must resolve all doubts and inferences in favor of the plaintiff, and must view the allegations in a light most favorable to the plaintiff.  *Edwards v. City of Goldsboro*, 178 F.3d 231, 243–44 (4th Cir. 1999).  "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' [*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)].  'A pleading that offers "labels and conclusions" or ... "naked assertion[s]" devoid of "further factual enhancement" will not suffice.'"  *Lincoln*, *supra* (quoting *Twombly*, 550 U.S. at 555, 557).

With respect to the first issue, the defendant contends that Diana Mey must proceed with her claims in arbitration, for all the reasons described in DIRECTV's initial motion to compel arbitration [Doc. 15].  Subsequent to the filing and briefing of this Motion, however, this Court denied the defendant's arbitration motion, finding that the provision upon which the defendant relies to be unconscionable.  Accordingly, this Court will deny dismissal on this ground.

With regard to this Court's jurisdiction over the claims of the out of state plaintiffs, the non-moving party must make a prima facie showing that the exercise of personal jurisdiction is proper.  *See Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989); *Vishay Intertechnology, Inc. v. Delta Int'l Corp.*, 696 F.2d 1062, 1064 (4th Cir. 1982).  A plaintiff must prove facts sufficient for the court to find that it has personal jurisdiction. *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005).

3

In addition, plaintiffs must show that the exercise of personal jurisdiction over a defendant complies with the forum state's long-arm statute and the constitutional requirements of due process. *Ellicott Mach. Corp. v. John Holland Party Ltd.*, 995 F.2d 474, 477 (4th Cir. 1993).

As noted by Judge Cayer:

To be consistent with the limitations of due process, a defendant must have "minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Minimum contacts may be established by showing "general" or "specific" jurisdiction. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).

A court may exercise general jurisdiction over a non-resident defendant if that defendant has contacts with the State that are so "continuous and systematic" as to render them "essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

In the absence of general jurisdiction, a court may exercise specific jurisdiction over the defendant in a cause of action arising from that defendant's activities in the forum state. The Fourth Circuit has "synthesized the due process requirement for asserting specific personal jurisdiction in a three-part test ... (1) the extent to which the defendant purposefully availed

> itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009) (quoting *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002)).

*Hernandez v. Equifax Info. Servs. LLC*, 2020 WL 4584249, at *3 (W.D. N.C. Aug. 10, 2020).

In *Lincoln*, the Court was presented by an analogous fact pattern.  The original plaintiff filed a putative class action against Ford Motor in Maryland, where he purchased a vehicle.  He then amended the complaint to add claims for a non-resident of Maryland, who had no contact with Ford in Maryland.  Judge Bredar dismissed the out of state plaintiff, stating:

> Although federal courts regularly adjudicate class action suits featuring unnamed plaintiffs residing in many states, the U.S. Supreme Court's ruling in *Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 137 S.Ct. 1773 (2017), has prompted a growing number of courts to require each named plaintiff in a class action suit to establish personal jurisdiction over a defendant. In *Bristol-Myers Squibb*, the Supreme Court held that the Fourteenth Amendment's due process clause prohibits state courts from asserting specific jurisdiction over claims of nonresident plaintiffs whose contacts with the forum state did not give rise to the lawsuit. *Id.* at 1781.

5

In March 2020, the U.S. Court of Appeals for the Seventh Circuit applied *Bristol-Myers Squibb's* rule to a class action suit in federal court, holding:  "We see no reason why personal jurisdiction should be treated any differently from subject-matter jurisdiction and venue: the named representatives must be able to demonstrate either general or specific personal jurisdiction, but the unnamed class members are not required to do so." *Mussat v. IQVIA, Inc.*, 953 F.3d 441, 447 (7th Cir. 2020).  The Seventh Circuit's decision reinforced the majority rule across federal district courts. *See, e.g., Napoli-Bosse v. Gen. Motors LLC*, 2020 WL 1677089, at *3 (D. Conn. Apr. 6, 2020) ("I therefore join the majority of district courts to consider the issue and conclude that, because the non-resident [named] Plaintiffs have failed to allege that their claims arise out of [the defendant's] contacts with Connecticut, *Bristol-Myers* precludes this Court from exercising personal jurisdiction over their claims"); *Sloan v. Gen. Motors, LLC*, 2019 WL 6612221, at *9 (N.D. Cal. Dec. 5, 2019) ("The overwhelming majority of federal courts have held that *Bristol-Myers* applies to claims brought by named plaintiffs in class actions"); *Molock v. Whole Foods Mkt., Inc.*, 297 F.Supp.3d 114, 125–26 (D.D.C. 2018).

*Lincoln*, *supra* at *4 (footnote omitted).

Judge Bredar concluded that "In keeping with the majority of federal courts to address this issue, this Court will require each *named* plaintiff in a class action suit to demonstrate personal jurisdiction over a defendant.  In contrast with Lincoln, [the out of

state plaintiff] never purchased, drove, or sought repairs for his F-150 in Maryland. Because [his] claims are based exclusively on alleged actions that occurred in New Mexico, the Court dismisses all claims brought by [him]—under the New Mexico Unfair Trade Practices Act, MMWA, and New Mexico common law—without prejudice." *Id.* at *5 (emphasis in original).

In a similar case, also arising in this Circuit, the Court reached similar results. In this case, non-resident plaintiffs brought claims against the defendant, even though they did not suffer any harm in North Carolina.

In recommending the dismissal of the non-residents' claims, the Court noted:

In ***Bristol-Myers Squibb Co. v. Superior Court***, 137 S. Ct. 1773 (2017), consumers brought a mass tort action against a prescription drug company in California state court. *Id.* at 1777. The Supreme Court held that the California state court did not have specific jurisdiction over the non-resident unnamed plaintiffs. *Id.* ***Bristol-Myers*** establishes that "the mere fact that other plaintiffs" have established personal jurisdiction "does not allow the State to assert specific jurisdiction over the nonresidents' claims." *Id.* at 1776. However, the Court added that "since our decision concerns the due process limits on the exercise of specific jurisdiction by a State, we leave open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court." *Id.* at 1783–84.

The Seventh Circuit addressed the issue left open by the Supreme

Court in *Mussat v. IQVIA, Inc.*, 953 F.3d 441 (7th Cir. 2020). *Mussat*

concluded "that the principles announced in *Bristol-Myers* do not apply to

the case of a nationwide class action filed in federal court under a federal

statute." *Id.* at 443. But *Mussat* concerned a class action where personal

jurisdiction was challenged for the unnamed plaintiffs' claims. In fact,

*Mussat* clarifies, "the named representatives must be able to demonstrate

either general or specific personal jurisdiction." *Id.* at 447. "If the court has

personal jurisdiction over the defendant with respect to the class

representative's claim, the case may proceed." *Id.* at 448.

*Hernandez v. Equifax Info. Servs. LLC*, 2020 WL 4584249, at *4 (W.D. N.C. Aug. 10,

2020).

Finally, in *Napoli-Bosse v. General Motors LLC*, 453 F.Supp.3d 536 (D. Conn.

2020), the Court took up the issue of whether *Bristol-Myers* applies to the federal courts,

stating:

The parties do not point to any Circuit Court decision addressing whether

*Bristol-Myers* applies to federal courts, and I am aware of none. But the

vast majority of district courts to have addressed the question have

concluded that *Bristol-Myers* does govern actions in federal courts. *See,*

*e.g., Chufen Chen v. Dunkin' Brands, Inc.*, 2018 WL 9346682, at *5 (E.D.

N.Y. Sept. 17, 2018) (applying *Bristol-Myers* to require each named plaintiff

in a purported class action "to show that in-state contacts specific to their

8

claim give rise to specific jurisdiction over an out-of-state defendant," and indicating that "[t]his reading of *Bristol-Myers* comports with the weight of district court authority on the subject"); *Lugones v. Pete and Gerry's Organic, LLC*, 2020 WL 871521, at *4 (S.D. N.Y. Feb. 21, 2020) (applying *Bristol-Myers* to dismiss non-resident named plaintiffs in a class action in federal court); *Spratley v. FCA US LLC*, 2017 WL 4023348 (N.D. N.Y. Sept. 12, 2017) (same); *Molock v. Whole Foods Market, Inc.*, 297 F.Supp.3d 114, 125-26 (D. D.C. 2018) (same).

\*       \*       \*

Plaintiffs cite a single out-of-circuit District Court case holding that an extension of *Bristol-Myers* to federal courts is unwarranted, because *Bristol-Myers* "was animated by unique interstate federalism concerns." *Sloan v. General Motors LLC*, 287 F.Supp.3d 840, 858 (N.D. Cal. 2018). But that decision did not consider the distinction between claims as to which personal jurisdiction stems from statutory authorization for nationwide service and those as to which personal jurisdiction stems from a state's long-arm statute. In light of this, I do not find *Sloan* persuasive, at least as it might apply to the circumstances of this case. I therefore join the majority of district courts to consider the issue and conclude that, because the non-resident Plaintiffs have failed to allege that their claims arise out of GM's contacts with Connecticut, *Bristol-Myers* precludes this Court from exercising personal jurisdiction over their claims.

*Napoli-Bosse*, 453 F.Supp.3d at 541–42.

In fact, in a later decision, the *Sloan* Court reversed its stance and found that *Bristol-Myers* did apply to cases in federal court. *Sloan v. General Motors LLC*, 2019 WL 6612221, at *9 (N.D. Cal. Dec. 5, 2019).

The plaintiffs contend that this Court has jurisdiction over the claims of the out of state plaintiffs under the doctrine of pendant jurisdiction, citing, *inter alia*, *Action Embroidery Corp. v. Atlantic Embroidery, Inc.*, 368 F.3d 1174 (9th Cir. 2004). This case, however, describes pendant jurisdiction as a doctrine under which "a court may assert pendent personal jurisdiction over a defendant with respect to a claim for which there is no independent basis of personal jurisdiction so long as it arises out of a common nucleus of operative facts with a claim in the same suit over which the court does have personal jurisdiction. *See, e.g., United States v. Botefuhr*, 309 F.3d 1263, 1272–75 (10th Cir. 2002); *Robinson Eng'g Co., Ltd. Pension Plan Trust v. George*, 223 F.3d 445, 449–50 (7th Cir. 2000); *ESAB Group, [Inc. v. Centricut, Inc.,]* 126 F.3d [617,] at 628–29 [(4th Cir. 1997)]; *IUE AFL–CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1056–57 (2d Cir. 1993); *Oetiker v. Werke*, 556 F.2d 1, 5 (D.C. Cir. 1977); *Robinson v. Penn Cent. Co.*, 484 F.2d 553, 555–56 (3d Cir. 1973)." *Action Embroidery Corp.*, 368 F.3d at 1180.

The doctrine is also defined in *United States v. Botefuhr, supra*:

Pendent personal jurisdiction, like its better known cousin, supplemental subject matter jurisdiction, exists when a court possesses personal jurisdiction over a defendant for one claim, lacks an independent basis for personal jurisdiction over the defendant for another claim that arises out of

the same nucleus of operative fact, and then, because it possesses personal jurisdiction over the first claim, asserts personal jurisdiction over the second claim. *See, generally*, 4A Charles Alan Wright & Arthur A. Miller, ***Federal Practice & Procedure*** § 1069.7 (3d ed. 2002); Linda Sandstrom Simard, ***Exploring the Limits of Specific Personal Jurisdiction***, 62 Ohio St. L.J. 1619, 1622–27 (2001). In essence, once a district court has personal jurisdiction over a defendant for one claim, it may "piggyback" onto that claim other claims over which it lacks independent personal jurisdiction, provided that all the claims arise from the same facts as the claim over which it has proper personal jurisdiction. ***Anderson v. Century Prods. Co.***, 943 F.Supp. 137, 145 (D. N.H. 1996).

***Botefuhr***, 309 F.3d at 1272.

Similarly, in ***ESAB Group, Inc. v. Centricut, Inc.***, 126 F.3d 617 (4th Cir. 1997), the Fourth Circuit recognized pendant personal jurisdiction, stating that "[w]hen a federal statute authorizes a federal district court to exercise personal jurisdiction over a defendant beyond the borders of the district and the defendant is effectively brought before the court, we can find little reason not to authorize the court to adjudicate a state claim properly within the court's subject matter jurisdiction so long as the facts of the federal and state claims arise from a common nucleus of operative fact. The defendant will have to adjudicate the facts of the federal claim, and it could impose only a minimal burden to require the defendant to provide a defense on the factually-related state claim." ***ESAB Group, Inc.***, 126 F.3d at 628.

11

The above definitions speak in terms of claims, not parties.  None of the above cases describing pendant jurisdiction suggest that the doctrine may be used to add a plaintiff who has no personal jurisdiction over a defendant.

The plaintiffs cite two cases which they contend support their argument that the out of state plaintiffs should remain as named plaintiffs.  The first case is **Komaiko v. Baker Technologies, Inc.**, 2020 WL 1915884 (N.D. Cal. Apr. 20, 2020).  In that case, however, there were no out of state plaintiffs.  Rather, both plaintiffs were citizens of California.

The other case is **Sloan v. General Motors LLC**, 287 F.Supp.3d 840, 858 (N.D. Cal. 2018).  However, in a subsequent decision, **Sloan v. General Motors LLC**, 2019 WL 6612221, at *5 (N.D. Cal. Dec. 5, 2019), the District Court dismissed the claims of out of state plaintiff Szep because there was "no independent relationship between Plaintiff Szep's Ohio state law claims and the State of California."

This Court finds the **Lincoln** and **Hernandez** cases to be persuasive and will grant the motion to dismiss plaintiffs Abramson, Cunningham and Shelton as named plaintiffs in this case.

The third and final ground under which DIRECTV seeks dismissal is that the plaintiffs have failed to plead the use of an ATDS, since they have not pled that the calls were made "using a random or sequential number generator."  The crux of this issue is whether a dialing system must include a random or sequential number generator to qualify as an ATDS.

The TCPA was enacted in 1991 to combat pervasive telemarketing.  **ACA Int'l. v. FCC**, 885 F.3d 687, 692 (D.C. Cir. 2018).

12

"By the early 1990s, telemarketing was in its golden age. Telemarketing sales had 'skyrocketed to over \$435 million in 1990,' which was a 'fourfold increase since 1984.' 137 Cong. Rec. S16,971 (daily ed. June 27, 1991) (statement of Rep. Pressler). 'This marketing success ha[d] created an industry in which over 300,000 telemarketing solicitors call[ed] more than 18 million Americans every day.' *Id*. In part, this was due to the advent of machines that 'automatically dial a telephone number and deliver to the called party an artificial or prerecorded voice message.' S. Rep. No. 102-178, at 2 (1991). Advertisers found these autodialers highly efficient because they could 'ensure that a company's message gets to potential customers in the exact same way, every time, without incurring the normal cost of human intervention.' H.R. Rep. No. 102-317, at 6 (1991). At that time, a single autodialer could cause as many as 1,000 phones to ring and then deliver a prerecorded message to each. *Id*. at 10." *Marks v. Crunch San Diego*, 904 F.3d 1041, 1043 (9th Cir. 2018).

"Recipients deemed that 'automated telephone calls that deliver an artificial or prerecorded voice message are more of a nuisance and a greater invasion of privacy than calls placed by "live" persons.' S. Rep. No. 102-178, at 4. Among other reasons, '[t]hese automated calls cannot interact with the customer except in preprogrammed ways, do not allow the caller to feel the frustration of the called party' and deprive customers of 'the ability to slam the telephone down on a live human being.' *Id*. at 4 & n.3 (citation omitted)." *Id*. at 1044.

"'A leading Senate sponsor of the TCPA captured the zeitgeist in 1991, describing robocalls as 'the scourge of modern civilization. They wake us up in the morning; they

13

interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall.' [*Barr v. Am. Ass'n of Pol. Consultants*], 140 S.Ct. [2335,] at 2344 (Kavanaugh, J.) (quoting 137 Cong. Rec. 30821 (1991)).  It is clear from the legislative history that Congress intended to crack down on automated calls themselves—not just the technology making them possible at the time. The multiple debt-collection calls made to Wilson and Allan on a near-daily basis in this case certainly are the sort of harm contemplated at the time of enactment and, indeed, are the type of calls that 'consumers appear to find *most* invasive.'  *See id.* at 2365 (Gorsuch, J., concurring in part and dissenting in part)." *Allan v. Pa. Higher Educ. Assistance Agency*, 968 F.3d 567, 577 (6th Cir. 2020) (emphasis in original).

The TCPA contains an autodialer ban, which generally makes it a finable offense to use an ATDS to make unconsented-to calls or texts.  The question in this case is whether, as a matter of statutory interpretation, an automatic dialer that dials numbers from a stored list qualifies as an ATDS.

In *Allan*, *supra*, the Sixth Circuit discussed the issue in depth:

The TCPA autodialer ban generally makes it a finable offense to use an automatic telephone dialing system, or "ATDS," to make unconsented-to calls or texts.  47 U.S.C. § 227(b)(1).  In the same section, the TCPA defines ATDS as "equipment which has the capacity–(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."  § 227(a).  That definition is at issue on this appeal.  How to define ATDS has split the circuits.

14

The . . . autodialer system that PHEAA uses to make collection-related calls dials from a stored list of numbers. It does not randomly or sequentially generate numbers to dial. Whether autodialer devices like [this] are covered by the TCPA is the source of the circuit split. The Ninth Circuit was the first to weigh in and held that stored-number systems are covered under the TCPA. *See Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1052 (9th Cir. 2018) (Ikuta, J.). The Second Circuit likewise concluded that stored-number systems are covered. *See Duran v. La Boom Disco, Inc.*, 955 F.3d 279, (2d Cir. 2020) (Cabranes, J.). The Seventh and Eleventh Circuits have gone the other way. *See Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 460 (7th Cir. 2020) (Barrett, J.); *Glasser v. Hilton Grand Vacations Co.*, 948 F.3d 1301, 1304–05 (11th Cir. 2020) (Sutton, J., visiting).

At the outset, we cannot look to Federal Communications Commission ("FCC") orders for guidance on this interpretive question because the D.C. Circuit invalidated the FCC's interpretation of ATDS in *ACA Int'l v. Fed. Commc'ns Comm'n*, 885 F.3d 687, 700 (D.C. Cir. 2018). *See Marks*, 904 F.3d at 1049; *Glasser*, 948 F.3d at 1310; *Gadelhak*, 950 F.3d at 463. *But see Duran*, 955 F.3d 279 (holding that pre-2015 FCC orders "survived" ACA International "and continue to inform [its] interpretation of the TCPA today"). Previously, FCC orders permitted two, contradictory interpretations of ATDS: (1) a device qualifies as an ATDS "only if it can generate random or

15

sequential numbers to be dialed" and (2) a device qualifies as an ATDS "even if it lacks that capacity" to generate numbers. *ACA Int'l*, 885 F.3d at 702. "It might be permissible," the D.C. Circuit reasoned, "for the Commission to adopt either interpretation," "[b]ut the Commission cannot, consistent with reasoned decisionmaking, espouse both competing interpretations in the same order." *Id*. at 703.  Plaintiffs argue that this holding pertains only to the 2015 FCC order that was being litigated in ACA International, but the D.C. Circuit was clear that its holding applied to the FCC's earlier orders as well. *Id*. at 701.  Either interpretation is fair game now.

*Allan*, 968 F.3d at 571–72 (footnote omitted).

The *Allan* Court concluded that "related provisions clear up any ambiguity" and that "the plain text of the section, read in its entirety, makes clear that devices that dial from a stored list of numbers are subject to the autodialer ban." *Id*. at 569.

This Court believes that *Allan*, *Duran* and *Marks* have correctly determined that the ATDS includes automatic dialers that dial numbers from a stored list.

Among the reasons asserted by *Allan* are:

"[I]t is hard to see how a number **generator** could be used to 'store' telephone numbers," even if it can "as a technical matter."  [*Gadelhak*] at 464 (emphasis added) (citation omitted).  Because a number generator **produces** numbers, the more natural reading is that "using a random or sequential number generator" solely modifies "produce."  "As a matter of

ordinary usage it's hard to say that the random number generator is 'storing' in any notable way." *Id*. at 464–65 (quotation omitted).  We will not apply the last antecedent rule "in a mechanical way where it would require accepting 'unlikely premises.'"  *Paroline v. United States*, 572 U.S. 434 (2014) (quotation omitted).  The last antecedent rule "is 'not an absolute and can assuredly be overcome by other indicia of meaning.'"  *Id*. (quoting *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003)).

This reading also renders "store" superfluous. "Common sense suggests that any number that is stored using a number-generator is also produced by the same number-generator; otherwise, it is not clear what 'storing' using a number-generator could mean." *See Duran*, 955 F.3d 279. Even if a random or sequential number generator can store numbers, its storage function, if any, is incidental to its production function.  "It is our duty 'to give effect, if possible, to every clause and word of a statute .... We are thus 'reluctan[t] to treat statutory terms as surplusage' in any setting." *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (quotations omitted).  True, Congress sometimes will use the "belt-and-suspenders" approach to avoid loopholes.  But here, we risk creating a loophole if we were to follow the Seventh and Eleventh Circuits' narrow interpretation of "store."   If stored-number systems are not covered, companies could avoid the autodialer ban altogether by transferring numbers from the number generator to a separate storage device and then dialing from that separate storage

17

(no visible marking)

device.  The autodialer ban would not apply to them because, technically, they are not using the random or sequential number generator to store and dial the numbers.

*Allan*, 968 F.3d at 572–73.

A further reason found by the *Allan* Court:

The TCPA's autodialer ban contains an exception for calls "made with the prior express consent of the called party." § 227(b)(1)(A). Consenting recipients are known persons whose numbers are stored on a list. *See Marks*, 904 F.3d at 1051; *Glasser*, 948 F.3d at 1316 (Martin, J., concurring in part and dissenting in part).  In order to give their express consent prior to receiving a call, they must give their number to the entity making the call. Thus, the entity making the automated call is dialing a stored number—not a number that it randomly generated.  The consent exception is key to defining ATDS because an exception cannot exist without a rule.  An exception for consented-to calls implies that the autodialer ban otherwise could be interpreted to prohibit consented-to calls.  And consented-to calls by their nature are calls made to known persons, i.e., persons whose numbers are stored on a list and were not randomly generated.  Therefore, the TCPA's exception for calls made to known, consenting recipients implies that the autodialer ban applies to stored-number systems.

Under the Seventh and Eleventh Circuits' interpretation of "store," the numbers to be dialed must have been randomly generated at some point.

18

But as the consent exception makes clear, the autodialer ban covers calls made to known recipients—in other words, people whose numbers are known and are stored on a list. Calls made from a stored list of numbers accordingly are subject to the autodialer ban.

*Id*. at 575.

A further underpinning of the *Allan* decision is the following:

Prior to the Court's decision in *AAPC*, the Second and Ninth Circuits reasoned that an exception to the autodialer ban for government-debt collectors implies that the TCPA prohibits automated collection calls made to collect on private debts. *See Marks*, 904 F.3d at 1051–52; *Duran*, 955 F.3d at 285. Like consented-to calls, calls made to collect on a debt are calls made to known recipients. *See Marks*, 904 F.3d at 1052. These calls are dialed from a stored list of numbers because the debt-collection industry uses known numbers, not random numbers. . . . ("Obviously, a loan servicer like PHEAA would have no interest in randomly calling borrowers."). They are targeting known persons to collect on their debts. "[T]he only way this exception [for calls made by government-debt collectors] makes sense is if an ATDS can make calls or texts using a human-generated list of phone numbers." *Duran*, 955 F.3d at 285. The now-defunct government-debt-collection exception implies that the autodialer ban covers stored-number systems.

*Id*. at 576.

19

To this Court's knowledge, *Allan* is the only circuit court case which has addressed this issue since *AAPC*. This is important since that decision dealt with debt collectors, who, as noted above, can only deal with stored lists. If the TCPA did not prevent autodialers using stored lists, then this Court would assume that the United States Supreme Court would have ruled that the statute did not prohibit debt collection robocalls, rather than handing down such a fractured opinion.

This Court agrees with the *Allan* Court that "[w]hatever Congress's purpose may have been at the time of enactment, 'language in the statute indicates that equipment that made automatic calls from lists of recipients [is] also covered by the TCPA.'" *Allan*, 968 F.3d at 574–75 (quoting *Marks*, 904 F.3d at 1051).

One of the reasons given by the Eleventh Circuit for rejecting this view is that the TCPA would then apply to smartphones. Of course, smartphones did not exist at the time that the TCPA was enacted.

However, as noted by *Allan*, "When a new application emerges that is both unexpected and important, [the Eleventh Circuit] would seemingly have us ... decline to enforce the plain terms of the law .... That is exactly the sort of reasoning [the Supreme] Court has long rejected." *Bostock v. Clayton County*, —— U.S. ——, 140 S.Ct. 1731, 1750 (2020)." *Id*. at 578.

The autodialer ban applies to *automatic* dialing systems or artificial or prerecorded voice messages only. *See* § 227(b) (titled "[r]estrictions on use of *automated* telephone equipment" (emphasis added)). It is an "accepted assumption that auto-dialers must *automatically* dial the numbers." *Glasser*,

948 F.3d at 1312.  To the extent that companies use smart phone autodialer

software to call or message recipients *en masse*, that would be covered.  But

the standard, non-automatic message or call would not create TCPA liability.

*See id.* at 1317 (Martin, J., concurring in part and dissenting in part) ("[W]hat

may have been a reasonable worry in *ACA International* doesn't exist here.

Neither situation hypothesized by the majority involves the simultaneous

dialing of numbers, plural.").

*Id.* at 578–79 (emphasis in original).

This Court agrees with the Sixth, Second and Ninth Circuits that the definition of

ATDS includes autodialers which dial from a stored list of numbers.

For the reasons stated above:

1.     Ms. Mey is not required to arbitrate her claims against DIRECTV;

2.     Plaintiffs Abramson, Cunningham and Shelton are **DISMISSED** as named

       plaintiffs in this case;

3.     DIRECTV's 12(b)(6) motion to dismiss this case for failure to state a claim

       is **DENIED**.

DIRECTV, LLC's Partial Motion to Dismiss Pursuant to Federal Rule of Civil

Procedure 12(b)(2) and 12(b)(6) [**Doc. 183**] is **GRANTED IN PART** and **DENIED IN PART**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to any counsel of record.

21

**DATED:** February 25, 2021.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT COURT