## IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF WEST VIRGINIA
### Wheeling Division

**DIANA MEY,**
**DAVID and ROXY VANCE,**
**RUSSELL LOCKE, and**
**THOMAS STARK, individually**
**and on behalf of a class of all**
**persons and entities similarly situated,**
        **Plaintiffs,**
**vs.**                                    Case No. 5:17-cv-00179-JPB-JPM
**DIRECTV, LLC,**
        **Defendant.**


## MEMORANDUM IN SUPPORT OF DEFENDANT DIRECTV, LLC'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)

4840-7243-4671.v1

# TABLE OF CONTENTS

**Page**

RELEVANT ALLEGATIONS ..................................................................................................... 3

STANDARD OF REVIEW ......................................................................................................... 3

ARGUMENT ............................................................................................................................... 3

A.     Plaintiffs Have Not Plausibly Alleged That They Received Calls From An ATDS ............................................................................................................................... 3

        1.     List-Based Systems That Do Not Involve Random Or Sequential Number Generation or Selection Are Not Covered By Section 227(b) Of The TCPA ............................................................................... 4

        2.     Plaintiffs Have Not Plausibly Pleaded That An ATDS Was Used To Call Them ............................................................................................ 6

CONCLUSION ............................................................................................................................ 8

4840-7243-4671.v1

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*ACA International v. FCC*,
    885 F.3d 687 (D.C. Cir. 2018) ................................................................................................4

*Allan v. Pennsylvania Higher Education Assistance Agency*,
    968 F.3d 567 (6th Cir. 2020) ..............................................................................................5, 6

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...........................................................................................................3, 7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................................3

*Despot v. Allied Interstate Inc.*,
    2016 WL 4593756 (W.D. Pa. Sept. 2, 2016) ......................................................................7, 8

*Duran v. La Boom Disco Inc.*,
    955 F.3d 279 (2nd Cir. 2020) .................................................................................................4

*Facebook Inc.  v. Duguid*,
    141 S. Ct. 1163 (2021) ................................................................................................. *passim*

*Gadelhak v. AT&T Services, Inc.*,
    950 F.3d 458 (7th Cir. 2020) .................................................................................................4

*Glasser v. Hilton Grand Vacations Company*,
    948 F.3d 1301 (11th Cir. 2020) .............................................................................................4

*Gragg v. Orange Cab Co.*,
    995 F. Supp. 2d 1189 (W.D. Wash. 2014) ............................................................................7

*Kaiser Aluminum & Chem. Corp. v. Bonjorno*,
    494 U.S. 827 (1990) ................................................................................................................4

*Levin v. Alms & Assocs. Inc.*,
    634 F.3d 260 (4th Cir. 2011) .................................................................................................1

*Marks v. Crunch San Diego*,
    904 F.3d 1041 (9th Cir. 2018) ...............................................................................................4

*Ross v. Blake*,
    136 S. Ct. 1850 (2016) ...........................................................................................................4

1

**Statutes**

47 U.S.C. § 227(a)(1)..................................................................................................................2, 4

47 U.S.C. § 227(b)(1)(A)(iii)......................................................................................................2, 4

**Other Authorities**

Rule 12(b)(6)....................................................................................................................................3

AMECURRENT 741994250.1 16-Jun-21 14:59

4840-7243-4671.v1

David and Roxy Vance, Russell Locke, and Thomas Stark (collectively the "Plaintiffs")[1] each allege that DIRECTV, LLC ("DIRECTV") violated the Telephone Consumer Protection Act ("TCPA") when AC1, a third-party independent retailer, placed marketing calls regarding DIRECTV service to their cellular telephone numbers without their consent. Plaintiffs' claims are twofold. *First*, each Plaintiff alleges that AC1 (and, vicariously, DIRECTV) violated § 227(b)(1)(A) of the TCPA by placing automated calls to their cellular telephone numbers without their consent. Fourth Amended Complaint ("FAC") ¶¶ 97-99. *Second*, the Vances (along with Mey) also allege that they were on the do-not-call list at the time they received the calls at issue and thus assert a claim under the do-not-call list provisions in § 227(c) of the TCPA. *Id.* ¶¶ 43, 58, 100-102.[2]

This motion involves only the first set of claims, relating to automated calls to cell phones. Section 227(b)(1)(A) of the TCPA does not prohibit all calls to a cellular telephone number made without the prior consent of the called party. Instead, only unconsented calls sent using an "automatic telephone dialing system" ("ATDS") or a prerecorded voice are barred. 47 U.S.C. § 227(b)(1)(A)(iii). Plaintiffs do not allege that any of AC1's calls used a prerecorded voice, and instead their section 227(b) claims rest upon the ATDS provision of that subsection.

DIRECTV previously moved to dismiss similar claims under the Third Amended Complaint. Dkt. No. 183. At the time, a circuit split existed regarding interpretation of the definition of an ATDS. The definition at issue requires equipment to have the capacity "to store or

---

[1] Plaintiff Diana Mey asserts similar TCPA claim that are currently stayed pending an appeal of a denial of a motion to compel arbitration. *Levin v. Alms & Assocs. Inc.,* 634 F.3d 260, 263-64 (4th Cir. 2011). Should that appeal be denied, the issues raised in this motion to dismiss apply equally to Ms. Mey's claims.

[2] Plaintiffs do not allege that Locke or Stark were ever on the do-not-call registry, and thus, to the extent the FAC can be read to allege a do-not-call claim on behalf of those individuals, it fails to state a claim.

produce telephone numbers to be called, using a random or sequential number generator" to fall within the TCPA's scope. 47 U.S.C. § 227(a)(1). This Court, following the circuits that adopted a broader construction of ATDS, concluded that an ATDS "includes autodialers that dial numbers from a stored list." Dkt. 199 at 16-18.

This Court issued its decision in late February 2021. However, in early April, the Supreme Court decided *Facebook, Inc. v. Duguid,* which resolved the circuit split regarding whether equipment that does not have the capacity to generate random or sequentially generated numbers can nevertheless constitute an ATDS, if the equipment stores numbers in a list and dials them automatically. 141 S.Ct. 1163 (2021). In *Facebook*, the Supreme Court concluded that the answer to that question is no, and that the capacity for random or sequential number generation is required for an autodialer to constitute an ATDS within the meaning of the statute. Here, Plaintiffs claim they received calls because their numbers were included in a lead list purchased by AC1, not because the numbers were generated randomly or sequentially. That is not enough to surpass the hurdle imposed by *Facebook*, and DIRECTV thus requests that Count 1 of the FAC be dismissed.

## **Relevant Allegations**

The FAC does not allege that DIRECTV called any of the Plaintiffs directly. Rather, it seeks to impose vicarious liability on DIRECTV for calls allegedly made by AC1, a third-party independent dealer authorized to sell DIRECTV subscriptions pursuant to a contract. FAC ¶¶ 3-4, 27. Plaintiffs allege that AC1 purchased a lead list of potential customers from a marketing list company. *Id.* at ¶ 33. Plaintiffs further claim that AC1 contracted with XenCall to dial the numbers on the list uploaded to it by AC1. *Id.* at ¶¶ 35-36. Plaintiffs allege that XenCall used a predictive dialer to make marketing calls to them and other members of their proposed class. *Id.* at ¶ 37. That dialer allegedly would first call the numbers not previously called, and then call the numbers from the list that had previously been dialed the least. *Id.* at ¶ 39.

2

Notably, the FAC does not allege that telephone numbers were generated from any source other than this lead list. Nor does it allege that the system used to place the calls ever randomly or sequentially generated their telephone numbers as part of a calling strategy.

## Standard of Review

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[A] plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Thus "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

## Argument

### A.  Plaintiffs Have Not Plausibly Alleged That They Received Calls From An ATDS.

#### 1.  List-Based Systems That Do Not Involve Random Or Sequential Number Generation or Selection Are Not Covered By Section 227(b) Of The TCPA.

"Statutory interpretation . . . begins with the text[.]" *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016); *see also Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 835 (1990). The TCPA does not ban all calls to cellular telephones placed without consent—just calls made using a prerecorded voice or an ATDS. 47 U.S.C. § 227(b)(1)(A)(iii). Plaintiffs make no allegations that they received any prerecorded voice calls. Thus, to state a claim they must allege the use of an ATDS.

By statute, an ATDS means equipment that has "the capacity: (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial

3

such numbers." 47 U.S.C. § 227(a)(1). Thus, "a device constitutes an ATDS if it has the capacity to perform both of two enumerated functions: 'to store or produce telephone numbers, to be called using a random or sequential number generator,' and 'to dial such numbers.'" *ACA International v. FCC*, 885 F.3d 687, 701 (D.C. Cir. 2018).

This motion thus turns on whether equipment that dials only from a preexisting list of numbers (such as, for example, a list of potential customers obtained from a marketing agency) constitutes an ATDS. Until recently, the circuits had split over this issue. Some courts found the capacity for random or sequential number generation an essential element of an ATDS and thus applied a narrow definition. *Gadelhak v. AT&T Services, Inc.,* 950 F.3d 458 (7th Cir. 2020); *Glasser v. Hilton Grand Vacations Company,* 948 F.3d 1301 (11th Cir. 2020); *Dominguez v. Yahoo Inc.!,* 894 F.3d 116 (3rd Cir. 2018). Other courts instead adopted a much broader construction of what constituted an ATDS, concluding it covered equipment that *either* stored numbers and dialed them automatically *or* that could generate numbers randomly or sequentially. *Marks v. Crunch San Diego,* 904 F.3d 1041 (9th Cir. 2018); *Duran v. La Boom Disco Inc.,* 955 F.3d 279 (2nd Cir. 2020); *Allan v. Pennsylvania Higher Education Assistance Agency,* 968 F.3d 567 (6th Cir. 2020). The *Facebook* decision resolved this circuit split by adopting the narrower interpretation that requires the capacity for random or sequential number generation for equipment to constitute an ATDS.

*Facebook* involved an automated calling system that directed notification texts to users' cell numbers when an attempt was made to sign into the account from an unfamiliar device. 141 S.Ct. at 1168. The plaintiff alleged the messages were misdirected, and instead were sent to a wireless telephone user who had never had a Facebook account and never authorized Facebook to contact him. *Id. Facebook,* which was decided at the pleadings stage, thus posed the same issue as

4

this case does—*i.e.* whether a complaint that alleged messages that could only have been logically directed at a list of numbers, and not generated randomly or sequentially, sufficiently alleged the use of an ATDS.

The Supreme Court found that it did not. In doing so, the Court started with the statutory text, which refers to equipment with the capacity "to store or produce telephone numbers to be called, *using a random or sequential number generator*." It concluded that "[u]nder conventional rules of grammar when there is a straightforward, parallel construction that involves all nouns or verbs in a series, a modifier at the end of the list normally applies to the entire series." *Id.* at 1169 (citations omitted). It then applied this "series-qualifier" canon to conclude that in the statutory definition of an ATDS, the phrase "using a random or sequential number generator" applies to both verbs—to store and to produce. *Id.* at 1170. The Court further noted that this construction of the statute also followed "the commands of its punctuation." *Id.* That is, the phrase "using a random or sequential number generator" in the definition is separated from the rest of the sentence by a comma, which the Court found further suggests that Congress intended the phrase to apply to both proceeding verbs. *Id.* Thus, to be an ATDS, the Court held, equipment must have the capacity to use a random or sequential number generator as part of its storage or production of numbers.

The Court also concluded that the broader construction of the statute that Duguid urged it to follow would lead to an overbreadth in the statute. In particular, it noted that ordinary smart phones have the capacity to store numbers in a list and dial them automatically, through the use of tools like speed dialing or automated responses to text messages, which would thus subject them to TCPA liability under the broader interpretation. *Id.* at 1171. And it declined to solve this problem by reading a "human intervention" test into the statute, on the grounds that such a test

5

would impose a "difficult line drawing exercise" on courts that is not based in the statutory language. *Id.* at 1171, n.6.

The Court also considered and rejected each of Duguid's counterarguments (and, by extension, the holdings of the circuit courts that had promulgated a broad interpretation of the TCPA). It first found that the narrower interpretation of the statute did not read the term "store" out of the statute, because the types of equipment in use at the time Congress passed the TCPA included machines that would generate numbers randomly or sequentially and then store them for dialing later. *Id.* at 1171-72 The Court further found that its definition aligned with Congress' legislative intent, since Congress enacted this provision of the TCPA to resolve unique problems posed by equipment using random or sequential number generation. *Id.* at 1172. Finally, the Court rejected Duguid's argument that the decision would unleash a torrent of robocalls, pointing to the other provisions of the TCPA that limited prerecorded voice calls and finding that revising the definition to address new technologies was a question that should be presented to Congress, and not the courts. *Id.* at 1172-73.

### 2. Plaintiffs Have Not Plausibly Pleaded That An ATDS Was Used To Call Them.

Nothing in the FAC plausibly indicates that Plaintiffs received calls sent from an ATDS as defined by the statute under the test set forth in *Facebook*, as opposed to some other form of equipment. Plaintiffs do not allege that their numbers were called because they were generated randomly or sequentially. Rather, the FAC merely alleges that the telephone numbers called by AC1 came from a preexisting lead list. Thus, the only "reasonable inference," *Iqbal*, 556 at 678, that can be drawn from Plaintiffs' allegations is that the numbers were *not* generated randomly or sequentially, but were instead targeted at individuals that AC1 had targeted as customers.

The FAC suggests (at ¶¶ 39-40) that because the XenCall system allegedly sorts its list according to certain preset criteria before calling the numbers on the list, it "stores" numbers sequentially before dialing and thus meets the definition of an ATDS. But this misinterprets what "sequential" means. Rather than encompassing any form of dialing from a list, "[r]andom number generation means random sequences of 10 digits, and 'sequential number generation' means (for example) (111) 111-1111, (111) 111-1112, and so on." *Gragg v. Orange Cab Co.*, 995 F. Supp. 2d 1189, 1193 (W.D. Wash. 2014) (internal citation omitted).

Courts interpreting the TCPA have long recognized the difference between random and sequential number generation on the one hand; and calling numbers from a targeted preexisting list on the other. For example, in *Trumper v. GE Capital Retail Bank*, the plaintiff alleged that the defendant bank mistakenly placed calls to her cell phone in an attempt to reach a different individual (*i.e.*, the bank's customer). 79 F. Supp. 3d 511 (D.N.J. 2014). The court observed that the "[c]omplaint takes the position that the calls were placed using an [ATDS]–a random number or sequential number generator–[but] it appears that the calls were directed at" a specific person, and thus not random. *Id.* at 513; *see also Despot v. Allied Interstate Inc.*, 2016 WL 4593756, at *5 (W.D. Pa. Sept. 2, 2016) ("Moreover, the calls were not random or sequential because they were made to Plaintiff" specifically).

Such a broad interpretation is also flatly inconsistent with *Facebook*, where the Supreme Court firmly recognized that the TCPA's prohibitions on an ATDS were not meant to sweep in a broad array of equipment that dialed from a list but rather were intended to "target a unique type of telemarketing equipment that risks dialing emergency lines randomly or tying up all the sequentially numbered lines at a single entity." 141 S.Ct. at 1171. Contorting the *Facebook*

7

decision as the FAC proposes to cover any equipment that dials from a list based on criteria[3] would nullify the Supreme Court's conclusion that Congress did not intend section 227(b)(1)(A) to be wide-ranging statute and that "[e]xpanding the definition of an autodialer to encompass any equipment that merely stores and dials telephone numbers would take a chainsaw to these nuanced problems when Congress meant to use a scalpel." *Id.*

**<u>Conclusion</u>**

Plaintiffs have not alleged any facts that, even if true, lead to the plausible conclusion that they were contacted using equipment with the capacity for random or sequential number generation. Under *Facebook,* that defect is fatal to their claims under section 227(b) and those claims should be dismissed.

DATED: June 17, 2021

Respectfully submitted,

/s/ Danielle M. Waltz

Danielle M. Waltz (WVSB #10271)
JACKSON KELLY PLLC
500 Lee Street East, Suite 1600
Charleston, WV 25301
Telephone: (304) 340-1000
Email: dwaltz@jacksonkelly.com

Hans J. Germann (*admitted pro hac vice*)
Kyle J. Steinmetz (*admitted pro hac vice*)
MAYER BROWN LLP
71 S. Wacker Drive
Chicago, IL 60606
Telephone: (312) 782-0600
Email: hgermann@mayerbrown.com
Email: ksteinmetz@mayerbrown.com

---

[3] All lists, after all, would have to dialed in some order, based on some criteria.

**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF WEST VIRGINIA**

**Wheeling Division**

DIANA MEY,
DAVID and ROXY VANCE,
RUSSELL LOCKE, and THOMAS STARK,
individually and on behalf of a class of all
persons and entities similarly situated,
          Plaintiffs,

v.

DIRECTV, LLC,

        Defendant.

Case No.: 5:17-cv-00179-JPB

**CERTIFICATE OF SERVICE**

I, Danielle Waltz, counsel for Defendant DIRECTV, LLC, hereby certify that on this

17th day of June, 2021 a true and correct copy of the foregoing was electronically filed with the

Clerk of the Court using the CM/ECF system, which will send notification of such filing to all

counsel of record.

        /s/ Danielle Waltz

        Danielle Waltz (WVSB #10271)
        JACKSON KELLY PLLC
        500 Lee Street East, Suite 1600
        Charleston, WV 25301
        Telephone: (304) 340-1000
        Email: dwaltz@jacksonkelly.com

9