IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF WEST VIRGINIA

Wheeling Division

DIANA MEY,
DAVID and ROXY VANCE,
RUSSELL LOCKE, and
THOMAS STARK, individually
and on behalf of a class of all
persons and entities similarly situated,

    Plaintiffs,

vs.                                                Case No. 5:17-cv-00179-JPB

DIRECTV, LLC,

    Defendant.

**Plaintiffs' Reply Memorandum in Support of Their
<u>Motion to Compel DirecTV to Respond to Discovery</u>**

**Argument Summary**

Even though DirecTV has raised defenses that place at issue (1) its implementation of its TCPA compliance policies, (2) its knowledge of illegal telemarketing conducted by its dealers on its behalf, and (3) its exercise of control over dealers who use telemarketing, DirecTV refuses to produce information that would allow Plaintiffs to challenge these defenses. How DirecTV implemented its compliance policies company-wide, what it knew about its dealers' telemarketing abuses, and what it did to rein them in are within the scope of discovery, and are probative of DirecTV's safe harbor defense, whether its conduct was knowing or willful, and the degree of control it exercised over its telemarketing dealers. The Court should grant Plaintiffs' motion to compel, require DirecTV to produce the information requested in Int. Nos. 2 and 12, and RFP Nos. 2 and 20, and direct the parties to negotiate reasonable search terms within seven days of the Court's ruling, with full production thirty days thereafter, absent the parties' agreement.

1

**Argument**

A. **The Court should deem the motion timely because it was filed only after an extensive (but unsuccessful) meet-and-confer process addressing ESI search terms.**

Local Rule 37.02 requires the filing of a motion to compel discovery within thirty days after the responses were due, absent "excusable neglect" or "some other valid reason" for the late filing. *Taggart v. Damon Motor Coach,* No. 5:05-CV-00191, 2006 WL 2473395, *5 (N.D. W. Va. Aug. 24, 2006). The Court has discretion to weigh the reason for the late filing in order to avoid strict application of the Rule. *Id.*

DirecTV asserts the Court should deny the motion because it was filed more than thirty days after its responses to the written discovery requests at issue were due. While that is what the calendar shows, what it does not show — and what DirecTV neglects to mention in its opposition — is that this delay was attributable to the extensive but ultimately unsuccessful meet-and-confer effort initiated by the Plaintiffs to negotiate search terms. This is a "valid reason" under the Rule, so the Court should reject DirecTV's argument.

As outlined in Plaintiffs' motion, Plaintiffs and defense counsel held five telephone conferences in the weeks following the discovery responses to discuss search issues. (Doc. 210 at 5-6). And, despite DirecTV's claim to the contrary, Plaintiffs made clear *in writing* from the very outset of the meet-and-confer process — just five days after DirecTV provided its discovery responses — that they were seeking discovery regarding corporate-wide telemarketing compliance issues. *See* Letter of March 29, 2021 from Plaintiffs' counsel to Defense Counsel (Doc. 210-2) (seeking production of "documents related to Do Not Call requests, TCPA complaints, investigations of telemarketing complaints, and responses to telemarketing complaints"). In this letter, Plaintiffs' counsel specifically referenced DirecTV's inadequate

responses to Int. No. 12 and RFP Nos. 2 and 20 — the very requests that are the subject of the instant motion to compel.[1] (Doc. 210-2 at 3.)

This letter led to the five telephone calls and the participation of ESI specialists (including Bailey Glasser partner Katherine Charonko, who focuses exclusively on electronic discovery, *see* https://www.baileyglasser.com/lawyers-katherine-e-charonko) to begin the process of negotiating search terms for DirecTV's production. The parties agreed that DirecTV would make the first search-term proposal, and on April 20 DirecTV proposed its search terms. (*See* April 20, 2021 email from defense counsel to Plaintiffs' counsel, attached as Exhibit A (email attachment omitted)). Then, on April 26, one day after the expiration of the Local Rule 37.02 period, DirecTV's counsel provided the "hit counts" for the search terms, so the parties could understand the breadth and scope of documents generated by the search. (*See* April 26, 2021 email from defense counsel to Plaintiffs' counsel, attached as Exhibit B (email attachment omitted)). Just seven business days later, Plaintiffs provided their proposed search terms, which expanded DirecTV's narrow, AC1-only search to include other dealers believed to have violated the TCPA in selling DirecTV. (*See* May 5, 2021 email from Ms. Charonko to defense counsel, attached as Exhibit C (email attachment omitted)). After two more telephone conferences, the parties reached impasse (*see* Doc. 210-7), and Plaintiffs filed this motion.

This demonstrates that the delay in filing resulted from the Plaintiffs' good faith negotiation of search terms, and in part was due to DirecTV's own delay in proposing search terms and providing hit counts. These reasons, combined with the fact that Plaintiffs were not

---

[1] DirecTV claims the March 29 letter "expressly limited the issues to be discussed at a meet and confer to 'complaints involving AC1.'" (Doc. 213 at 2.) This is wrong and mischaracterizes the letter. The portion of the letter DirecTV quotes was referring to Int. No. 10, which did not request compliance information regarding other dealers and is not even the subject of Plaintiffs' motion to compel. (*See* Doc. 210-2 at 3.)

3

dilatory and DirecTV has not been prejudiced, warrant relief from the strict application of Local Rule 37.02.

    B. **The requested information is discoverable and highly relevant to DirecTV's safe harbor defense, issues of vicarious liability, and whether DirecTV's conduct was knowing or willful.**

DirecTV's opposition avoids addressing the logic of Plaintiffs' entitlement to the requested discovery: a party cannot assert the safe harbor defense by on the one hand claiming that the existence of its compliance policy warrants exemption from TCPA liability, but on the other hand refuse to produce documents and information showing how it actually carried that policy out. *See* 47 C.F.R. § 64.1200(f)(5)(i) (safe harbor defense requires the proponent to show that the violation was error, and the proponent "has established and implemented written procedures" to comply with the law).

To DirecTV, all that matters with respect to the safe harbor, agency, and the knowing/willful violation issues is that its dealer contracts did not allow telemarketing; that and that alone should allow DirecTV off scot-free. That is not the law. Merely having a policy is not enough; the policy must be *implemented* and the violation must be an *error* (as opposed to the natural result of a corporate practice of neglect or willful ignorance). At this point, not only do Plaintiffs not have the first document from DirecTV explaining what its compliance procedures are, Plaintiffs also have no information about how DirecTV implemented those procedures to prevent TCPA violations by those acting on its behalf to sell DirecTV.

To the extent DirecTV claims its dealer contracts exempt it from any assertion of vicarious liability, the Fourth Circuit has held in a TCPA vicarious liability case much like this one that "parties cannot avoid the legal obligations of agency by simply contracting out of them." *Krakauer v. Dish Network, L.L.C.,* 925 F.3d 643, 661 (4th Cir. 2019). What matters is *conduct*. Was AC1 the only dealer that violated the contractual bans on telemarketing? Or was the

contractual ban nothing more than words on a page, with other dealers also engaging in telemarketing and DirecTV turning a blind eye while gladly accepting the dealers' sales? *See id.* (relevant agency analysis is whether the defendant "acquiesced in and benefitted from a wrongful course of conduct that was carried out on its behalf")

Plaintiffs believe the evidence will establish the latter: that the violations at issue here were no "error," but instead DirecTV knew that *many* dealers were using telemarketing despite the contractual ban, but nonetheless looked away in favor of meeting sales goals. In fact, that is what the limited evidence adduced to date already shows. According to AC1 principal Adam Cox, his DirecTV manager, Steve Shapiro, "knew [DirecTV dealer North Kentucky Satellites] was telemarketing" and moved NKS to another management area, where its principal could continue telemarketing, in Cox's words, "under a different manager that continued to turn a blind eye." (Dep. of A. Cox, Dec. 3, 2019, at 85 (excerpt attached as Exhibit D)). As Cox said about Shapiro's oversight into telemarketing, "[H]e never dug. I mean, he never dug into it.. . . I mean, it was all about the bottom line. . . . I think everybody knew. I think everybody just didn't say." (*Id.* at 82.)

Mr. Cox also testified that he personally knew of "three or four, maybe five" other DirecTV dealers that were using telemarketing despite the contractual ban, and at DirecTV corporate events would meet other DirecTV dealers who did the same. (*Id.* at 79-81.)

Without the requested discovery, Plaintiff has no means of obtaining information on these important issues. But rather than address the logic compelling the production of the requested information, DirecTV weakly distinguishes Plaintiffs' cases and cites inapposite authority. DirecTV distinguishes *United States v. Dish* on the basis that the safe harbor provision at issue in the case, though materially the same as the one DirecTV asserts here, was contained in the section of the TCPA allowing states to enforce DNC violations — an irrelevant distinction. It

5

distinguishes *Krakauer v. Dish Network, L.L.C.,* 2017 WL 2455095 (M.D. N.C. June 6, 2017) on the ground that the decision addressed a post-trial review of the evidence rather than a discovery motion — a distinction without a difference.

DirecTV's citation to *Pieterson v. Wells Fargo Bank, N.A.*, 2018 WL 4039972 (N.D. Cal. Aug. 18, 2018) and other cases referenced on page 8 of its brief is particularly puzzling, as it cites those cases for the proposition that "[i]nformation regarding past complaints is relevant to [the knowing or willful] inquiry only to the extent it sheds some light on whether the party in question acted knowingly or willfully with respect to the particular theory in the case." (Doc. 213 at 8.) Um, isn't that what Plaintiffs are arguing here? Plaintiffs are seeking information regarding past complaints, and have alleged that DirecTV knowingly and willfully turned a blind eye to its authorized dealer's wholesale TCPA violations. So Plaintiffs are entitled to information regarding past telemarketing complaints.

The remaining cases DirecTV cites have nothing to do with the issues presented in this motion. *Mey v. Enterprise Financial Group* did not involve the safe harbor, agency, and knowing/willful issues presented here; instead, the discovery sought concerned identifying class members. 2016 WL 9110357, *5 (M.D. Fla. July 27, 2016). *Leeb v. Charter Communications*, 2019 WL 144132, at *2 (M.D. Fla. Jan. 9, 2019) baldly undermines DirecTV's arguments. There the district court stated that a broad discovery request encompassing all complaints of unwanted telemarketing and related investigation documents "could be relevant and proportional to the needs of the case with respect to Plaintiff's allegations that [the defendant Charter] willfully or knowingly violated the TCPA." *Id.* Exactly.

## C. DirecTV's claimed undue burden can be mitigated through a meaningful meet-and-confer, which did not happen because DirecTV flatly refused to produce compliance documents unrelated to AC1.

DirecTV claims Plaintiffs are requesting "documents regarding *thousands* of other retailers" that would require thousands of attorney hours to review, dozens of custodial records to search, and may generate "millions" of documents. (Doc. 213 at 1, 10 & n.4.) This is both a dramatic overstatement, and a red herring. Overstatement: DirecTV does not have "thousands" of dealers who telemarket.[2] Red herring: Plaintiffs are not interested in searches that would generate millions of documents. Plaintiffs are seeking documents that show DirecTV's knowledge about its dealers' telemarketing, and whether and how it investigated complaints generated by that activity. For that reason, Plaintiffs proposed search terms centered around those telemarketing dealers known to Plaintiffs — either because they were the dealers involved in calls to the former Plaintiffs who have been dismissed on jurisdictional grounds, or were involved in other TCPA litigation.

But because DirecTV flatly refused to produce TCPA compliance documents unrelated to AC1, the parties did not meet-and-confer meaningfully on the search terms to be deployed. That is why Plaintiffs have not demanded that DirecTV produce documents according to the Plaintiffs' search terms. By this motion, Plaintiffs have instead asked the Court to decide that Plaintiffs are entitled to the documents and information in question, "with reasonable search terms negotiated between counsel[.]" Doc. 210 at 1, 11. Plaintiffs expect that, if the Court grants this motion and rules that DirecTV's telemarketing complaint files and documents are discoverable, the parties could successfully negotiate a search that will generate relevant documents but not place undue burden on DirecTV.

---

[2] But if it did, that would say a lot about DirecTV's willful blindness and the ineffectiveness and nonexistent enforcement of its contractual "no telemarketing" rule.

And besides, would the production be unduly burdensome? Is there some lesser burden that would allow Plaintiffs to receive relevant information easily and inexpensively? Because of DirecTV's refusal to produce *any* documents regarding complaints of illegal telemarketing involving other dealers, and because of the relatively early stage of discovery, Plaintiffs have no idea whether DirecTV's compliance department maintains consolidated and organized electronic or paper files tracking the receipt and handling of telemarketing complaints. If they do — and that seems likely for a company that since 2005 has been obligated by the FTC to maintain TCPA compliance records, as a result of FTC enforcement actions alleging widescale TCPA violations — then producing this type of information would hardly be burdensome. But DirecTV's flat refusal to produce anything except AC1-related compliance documents has foreclosed this type of inquiry.

## Conclusion

Plaintiffs filed this motion so the Court could decide that, for discovery purposes, DirecTV's receipt and handling of complaints of illegal telemarketing by its dealers are fair game. Plaintiffs respectfully requests the Court so rule so the parties may negotiate reasonable search terms and produce the requested documents while mitigating undue burden. Plaintiffs have no interest in any search that will generate millions of documents. But Plaintiffs do have the right and obligation to conduct reasonable discovery to prove their claims and overcome DirecTV's defenses.

For these reasons, Plaintiffs respectfully request the Court (1) grant their motion, (2) order DirecTV to respond to Interrogatory Nos. 2 and 12, and RFP Nos. 2 and 20, (3) direct counsel to meet and confer to develop reasonable search terms, and (4) require DirecTV to make full production within thirty days, or within such time as the parties agree.

Dated: June 24, 2021                              Respectfully submitted by,

   */s/ John W. Barrett*_____
John W. Barrett
Jonathan R. Marshall
Sharon F. Iskra
Benjamin Hogan
BAILEY & GLASSER LLP
209 Capitol Street
Charleston, WV  25301
Telephone: (304) 345-6555
jbarrett@baileyglasser.com
jmarshall@baileyglasser.com
siskra@baileyglasser.com
bhogan@baileyglasser.com

Anthony Paronich
PARONICH LAW, P.C.
350 Lincoln St., Suite 2400
Hingham, MA 02043
Telephone: (617) 485-0018
anthony@paronichlaw.com

Edward A. (Ted) Broderick
BRODERICK LAW, P.C.
Boston, MA 02111
Telephone: (617) 738-7080
Ted@Broderick-law.com

Matthew P. McCue
THE LAW OFFICE OF MATTHEW P. MCCUE
1 South Avenue, Suite 3
Natick, MA  01760
Telephone: (508) 655-1415
mmccue@massattorneys.net

*Counsel for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF WEST VIRGINIA

**Wheeling Division**

**DIANA MEY,**
**DAVID and ROXY VANCE,**
**RUSSELL LOCKE, and**
**THOMAS STARK, individually**
**and on behalf of a class of all**
**persons and entities similarly situated,**

    Plaintiffs,

vs.                                        Case No. 5:17-cv-00179-JPB

**DIRECTV, LLC,**

**Defendant.**

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th of June 2021, a copy of Plaintiffs' Reply Memorandum in Support of their Motion to Compel DirecTV to Respond to Discovery was filed using CM/ECF, the Court's electronic notification system, which provided notice to all counsel of record.

                                                            */s/ John W. Barrett*
                                                            John W. Barrett