IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Wheeling

**DIANA MEY, DAVID VANCE,**
**ROXY VANCE, RUSSELL LOCKE,** and
**THOMAS STARK,** individually and on
behalf of a class of all persons and entities
similarly situated,

Plaintiffs,

v.

**Civil Action No. 5:17-CV-179**
Judge Bailey

**DIRECTV, LLC,**

Defendant.

## ORDER

Presently pending before this Court is DirecTV, LLC's Partial Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) [Doc. 211], filed June 17, 2021. Therein, DirecTV, LLC requests that Count I of the Fourth Amended Complaint be dismissed[1] because of the Supreme Court's recent decision in *Facebook, Inc. v. Duguid*, 141 S.Ct. 1163 (2021).

## PROCEDURAL BACKGROUND

Plaintiffs instituted this action on December 11, 2017. On June 3, 2021, plaintiffs filed their Fourth Amended Class Action Complaint [Doc. 209] alleging that DirecTV, LLC violated the Telephone Consumer Protection Act ("TCPA") when AC1, a third-party independent

---

[1] As noted in DirecTV LLC's Motion, the Motion to Dismiss is not currently directed at plaintiff Diana Mey because her claims are subject to a motion to compel arbitration currently on appeal. DirecTV, LLC further states that "Mey's claims are not materially different from those of the other Plaintiffs." *See* [Doc. 224 at 5, fn. 1].

retailer, placed marketing calls regarding DirecTV, LLC's service to their cellular telephone numbers without their consent.  Plaintiffs allege two counts.  Count I alleges DirecTV, LLC violated § 227(b)(1)(A) of the TCPA by initiating a telephone call to Plaintiffs' cellular telephone lines using an automatic telephone dialing system.  *See* [Doc. 209 at 14].  Count II alleges DirecTV, LLC violated § 227(c) because DirecTV, LLC initiated more than one telephone call to plaintiffs in a twelve-month period while their numbers were on the National Do Not Call Registry.  *See* [Id.].

On June 17, 2021, DirecTV, LLC filed its Motion to Dismiss [Doc. 211] and accompanying Memorandum in Support [Doc. 212].  Therein, DirecTV, LLC asserts that plaintiffs have not plausibly alleged that they received calls from an ATDS for two reasons.  *See* [Doc. 212 at 7–12].  First, DirecTV, LLC argues that the "list-based systems that do not involve random or sequential number generation or selection are not covered by section 227(b) of the TCPA."  *See* [Id. at 7–10].  Second, DirecTV, LLC argues that plaintiffs have not plausibly pleaded that an ATDS was used to call them.  *See* [Id. at 10–12].

On July 2, 2021, plaintiffs filed Plaintiffs' Opposition to DirecTV, LLC's Partial Motion to Dismiss Pursuant to Rule 12(b)(6) [Doc. 222].  Therein, plaintiffs assert that DirecTV, LLC "mischaracterizes *Facebook*, and simply ignores Plaintiffs' well-pled allegations."  *See* [Id. at 1].

On July 15, 2021, DirecTV, LLC filed a Reply in Support of DirecTV LLC's Motion to Dismiss [Doc. 224].  DirecTV, LLC ultimately argues that "this Court cannot disregard the

2

reasoning and holding of *Facebook* on the basis of the thin reeds offered by Plaintiffs." [Doc. 224 at 5].

On July 9, 2020, the Supreme Court granted certiorari in *Facebook v. Duguid* to answer the following question: Whether the definition of ADTS in the TCPA encompasses any device that can "store" and "automatically dial" telephone numbers, even if the device does not "us[e] a random or sequential number generator." 141 S.Ct. 192 (2020). The answer to that question would resolve the circuit split and, potentially, be dispositive of plaintiffs' claims in this case.

On April 1, 2021, the Supreme Court issued its decision. *Facebook, Inc. v. Duguid*, 141 S.Ct. 1163 (2021). It held that the clause "using a random or sequential number generator" in the statutory definition of ATDS, 47 U.S.C. § 227(a)(1), modifies both "store" and "produce," thereby "specifying how the equipment must either 'store' or 'produce' telephone numbers." *Id.* at 1169. Thus, "a necessary feature of an autodialer under § 227(a)(1)(A) is the capacity to use a random or sequential number generator to either store or produce phone numbers to be called." *Id.* at 1173.

## STANDARD OF REVIEW

A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (applying the *Twombly* standard and emphasizing the necessity of *plausibility*). When reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must assume all of the allegations to be true, must resolve all doubts and inferences in favor of the plaintiff, and

3

must view the allegations in a light most favorable to the plaintiff. *Edwards v. City of Goldsboro,* 178 F.3d 231, 243–44 (4th Cir. 1999).

When rendering its decision, the Court should consider only the allegations contained in the Complaint, the exhibits to the Complaint, matters of public record, and other similar materials that are subject to judicial notice. *Anheuser-Busch, Inc. v. Schmoke*, 63 F.3d 1305, 1312 (4th Cir. 1995). In *Twombly*, the Supreme Court, noted that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . ." *Twombly*, 550 U.S. at 555, 570 (upholding the dismissal of a complaint where the plaintiffs did not "nudge[ ] their claims across the line from conceivable to plausible.").

"[M]atters outside of the pleadings are generally not considered in ruling on a Rule 12 Motion." *Williams v. Branker*, 462 F. App'x 348, 352 (4th Cir. 2012). "Ordinarily, a court may not consider any documents that are outside of the Complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396 (4th Cir. 2006). However, the Court may rely on extrinsic evidence if the documents are central to a plaintiff's claim or are sufficiently referred to in the Complaint. *Id*. at 396–97.

## DISCUSSION

"The TCPA is a remedial statute that was passed to protect consumers from unwanted automated telephone calls." *Stewart v. T-Mobile USA, Inc.*, 124 F.Supp.3d 729, 732 (D. S.C. Aug. 28, 2015) (citing *Gager v. Dell Fin. Servs., LLC* 727 F.3d 265, 271 (3d Cir. 2013)). It makes it unlawful for any person "to make any call (other than a call made . . . with

the prior express consent of the called party) using any automatic telephone dialing system [ADTS] . . . (iii) to any telephone number assigned to a . . . cellular telephone service. . . ." 47 U.S.C. § 227(b)(1)(A)(iii). At issue here is whether the system at issue, the XenCALL dialer, qualifies as an ATDS.

An ATDS is statutorily defined as "equipment which has the capacity–(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). As clarified by the Supreme Court in *Facebook*, "a necessary feature of an autodialer under § 227(a)(1)(A) is the capacity to use a random or sequential number generator to either store or produce phone numbers to be called." 141 S.Ct. at 1173.

Plaintiffs rely on footnote 7 in *Facebook*. Plaintiffs argue that the XenCALL dialer qualifies as an ATDS because it uses a random or sequential number generator to determine which phone numbers to automatically dial and when. In *Timms v. USAA Fed. Savings Bank*, 2021 WL 2354931 (D. S.C. June 9, 2021), Judge Lydon discussed footnote 7 as follows:

> Footnote 7 appears in a section of the opinion discussing whether the application of traditional rules of interpretation lead to a "'linguistically impossible' or contextually implausible outcome." 141 S. Ct. at p. 1171. Therein, the Court recognized Duguid's "valiant effort to prove as much," but ultimately concluded the effort fell short of reaching the goal. *Id*. The Court acknowledged that while "it is odd to stay that a piece of equipment 'stores' numbers using a random number 'generator,'" the concept "is less odd as a

5

technical matter." *Id*. at 1172. It then looked to a piece of equipment used in 1988, which "used a random number generator to store numbers to be called later (as opposed to using a number generator for immediate dialing)." *Id*. Footnote 7 follows the reference to that 1988 equipment.

In footnote 7, the Court specifically addressed Duguid's superfluity argument, i.e., that a device that stores numbers using a random or sequential number generator would necessarily produce those numbers using the same process. *Id*. at 1172 n.7. The Court concluded that this is "no superfluity," if "Congress [ ] include[d] both functions in the autodialer definition so as to clarify the domain of prohibited services." *Id*. (citing *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 544 n.7 (1994)). It followed with an example: "[A]n autodialer might use a random number generator to determine the order in which to pick phone numbers from a preproduced list." *Id*. It is this language on which Plaintiff relies to argue that the Aspect UIP is an ATDS. But yet again, this court cannot agree.

The Supreme Court followed the example with a reference to page 19 of the Professional Association for Customer Engagement ("PACE")'s amicus brief. Id. There, PACE described how the 1988 technology, specifically the '028 Patent, worked. [ECF No. 66-2, PACE Amicus Brief.] It explained that the 1988 technology functions, in part, by creating an "array" or list of telephone numbers that is sequentially generated and stored. *Id*. at p.18. In a separate step, the equipment randomly generates a number, e.g., the number 13. That number is used to identify the number to be stored or called. Stated differently, the 13th

number in the sequentially generated telephone number list is then produced for dialing or storage. *Id*. at p.19 ("A telephone number in the array is identified by the randomly generated number and then produced for creating sequential records in operation 32, which are then dialed or stored in operation 34."). As noted on page 19 of PACE's amicus brief, "[t]he randomly generated number is not necessarily dialed per se but can be used to produce the corresponding sequentially generated number from the array, which in turn is used to create the record that is dialed or stored." Id. Again, using the example of a randomly generated number 13, it explains that "the 13th sequentially generated telephone number in the array is selected for immediate or delayed dialing." *Id*. Following the above explanation of the then-existing technology, this court must conclude that footnote 7 does not support Plaintiff's argument. This court believes the Supreme Court's statement—that an "autodialer might use a random number generator to determine the order in which to pick phone numbers from a preproduced list" and "then store those numbers to be dialed at a later time"—refers to the process as explained by PACE on page 19 of its amicus brief. And, as a result, the "preproduced list," *Duguid*, 141 S. Ct. at 1172 n.7, is one that is "sequentially generated and stored." [ECF No. 66-2 at p.18.] Because the "preproduced list" in this case is not one that is "sequentially generated and stored," the language from footnote 7 is inapposite.

*Timms*, 2021 WL 2354931, at *6–7. *See also **Hufnus v. Donotpay Inc.***, 2021 WL 258548, at *1 (N.D. Cal. June 24, 2021) (holding that footnote 7 means that systems that generate

numbers randomly or sequentially and then store them to be called later are ATDS, but ordinary list-based call campaigns are not). Having considered the parties arguments and the Supreme Court's decision in *Facebook*, this Court concludes that DirecTV, LLC's Motion to Dismiss should be granted on Count I as it pertains to David and Roxy Vance, Russell Locke, and Thomas Stark. The Fourth Amended Complaint fails to allege that the XenCALL dialer system has the capacity to use a random or sequential number generator. Thus, as a result, and in accordance with *Facebook*, this Court hereby concludes that the XenCALL dialer is not an ATDS, and will grant DirecTV's Motion to Dismiss.

## CONCLUSION

For the foregoing reasons, this Court hereby **GRANTS** DirecTV, LLC's Partial Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) **[Doc. 211]** and **DISMISSES WITHOUT PREJUDICE** Count I of the Fourth Amended Complaint as it pertains to David and Roxy Vance, Russell Locke, and Thomas Stark.

Accordingly, defendant DirecTV, LLC's Motion for Leave to File Notice of Supplemental Authority **[Doc. 237]** is **DENIED AS MOOT**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED:** August **18**, 2021.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE