IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING

*FILED*

MAR 2 2 2022

U.S. DISTRICT COURT-WVND
WHEELING, WV 26003

DAVID and ROXY VANCE and CARLA
SCHULTZ, individually and on behalf of a
class of all persons and entities similarly
situated,

        **Plaintiffs,**

v.

DIRECTV, LLC,

        **Defendant.**

**CIVIL ACTION NO.: 5:17-CV-179
(BAILEY)**

## ORDER DENYING PLAINTIFFS' MOTION [262] to COMPEL

Currently pending before the undersigned on referral from the District Court is Plaintiffs'
Motion [262] to Compel.  In said Motion, Plaintiffs seek to compel production of documents which
have been withheld based on the attorney/client privilege.  *See* ECF Nos. 262, 270, 284.  Plaintiffs
argue, among other things, that by asserting the safe harbor affirmative defense, Defendant has
waived these privileges with regard to certain documents.  Plaintiffs rely primarily upon *United
States v. Dish Network, LLC,* 283 F.R.D. 420 (C.D. Ill. Jun. 12, 2012) to support its position.
Defendant opposes Plaintiffs' Motion and argues that the attorney/client privilege applies to the
documents at issue, and they should not be produced.  *See* ECF Nos. 268, 282, 283.

A hearing was held in this matter on February 24, 2022.  At the conclusion of the same,
the Court directed the parties to confer and submit a manageable list of documents Plaintiffs
wished for the Court to consider during an *in camera* review.  The Court directed the parties to file
these documents under seal within seven days.  ECF No. 277.  The parties sought an extension to
submit the documents for review.  An extension was provided.  ECF Nos. 280 and 281.  The

documents were filed under seal with the Court on March 7, 2022. ECF Nos. 282 and 283.  The parties also filed post-hearing briefs.[1]   ECF Nos. 282, 283, and 284.

The Court has thoroughly reviewed all briefs, the arguments made during the hearing, the applicable law, and the Court file.  After this review and after an exhaustive examination of *United States v. Dish Network*, the Court would conclude that a well-founded basis for *in camera* review does not exist at this time.  The Court would therefore **DENY** Plaintiff's Motion [262] to Compel.

*In camera* review of documents is not granted simply because the same is requested.  *Wier v. United Airlines, Inc.*, 2021 WL 1517975, at *16 (N.D. Ill. Apr. 16, 2021) ("[p]laintiff is not entitled to an *in camera* review simply because [s]he requested one").  Rather, a well-founded basis should be established for a challenge to an assertion of privilege before *in camera* review is undertaken.  *See Crabtree v. Experian Information Solutions, Inc.*, 2017 WL 4740662, at *3 (N.D. Ill. Oct. 20, 2017).  *See also N.L.R.B. v. Interbake Foods, LLC*, 2011 WL 6736435, at *2 (D.Md. Dec. 21, 2011) (before a court undertakes *in camera* review of privileged documents, the party advocating for review must provide a "factual basis sufficient to support a reasonable, good faith belief that *in camera* inspection may reveal evidence that information in the materials is not privileged").  Here, Plaintiffs argue that a well-founded basis exists by virtue of Defendant's reliance upon the safe harbor affirmative defense.  However, the mere fact of this defense does not, in and of itself, automatically result in the waiver of privileges asserted over the categories of documents discussed in *Dish Network* and in Plaintiffs' brief.

Plaintiffs argue that, like defendant's attorneys in *Dish Network*, DirecTV's lawyers were involved in compliance efforts, which are relevant to Defendant's safe harbor defense, and that,

---

[1] Though the parties' briefs refer to 650 documents, over 2,500 documents were filed.  The Court believes the parties reference to "650 documents" is a reference to individual privilege log entries, each of which appears to be comprised of multiple pages.

therefore, documents regarding the same, including those to which the attorney/client privilege applies, should be produced.  Plaintiffs submit ECF Nos. 270-3 and 270-4 as evidence to support its position that a well-founded basis exists for *in camera* review (and the ultimate production of) privileged documents.  The Court is not persuaded by this argument.

In *Dish Network*, plaintiffs alleged violations of the Federal Trade Commission Act, the Telemarketing and Consumer Fraud and Abuse Prevention Act, the Telemarketing Sales Rule ("TSR"), and the Telemarketing Act.  *Dish Network*, 283 F.R.D. at 422.  Dish Network asserted the safe harbor affirmative defense set forth in the TSR.  *Id.* at 422-23.  *See also* 16 C.F.R. §310.4. In response to a request for production of documents, defendant provided certain documents but withheld others on the basis of attorney/client privilege and the work product doctrine.  Plaintiffs filed a motion to compel, arguing that discovery previously produced had demonstrated that Dish Network's attorneys were actively involved in investigations into alleged violations, and that as a result, documents which pertained to these activities, and which were withheld pursuant to privilege, should be produced.  *Id.* at 423.

The court conducted *in camera* review of the documents at issue. Following this examination, the court determined that the documents should be produced because documents demonstrated that Dish Network's attorneys "actively participated in" Dish Network's compliance and monitoring functions by: (1) investigating consumer complaints, (2) arranging for consumers to participate in sting operations designed to establish that Dish retailers and distributers were violating Dish procedures for compliance with the Rule, (3) reviewing and approving scripts for compliance with the Rule, and (4) reviewing and approving calling programs for compliance with the Rule.  *Id.* at 424.  The court noted in particular that, "[b]y asking [the attorney] to serve multiple duties, the defendants have fused the roles of internal investigator and legal advisor."  *Id.*  The

court found that, "[c]onsistent with the doctrine of fairness…plaintiffs must be permitted to probe the substance of [the] investigation to determine its sufficiency." *Id.*

Importantly, the *Dish Network* decision relies heavily upon evidence that Dish Network's attorneys had been actively involved in <u>investigations</u> related to telemarketing violations. *Id.* Although it is not immediately apparent from the court's decision, evidence of Dish Network's attorneys' involvement in investigations into alleged telemarketing violations was obtained by plaintiffs through the normal discovery course, i.e. answers to interrogatories, requests for production of documents, and depositions. *See United States, et al. v. Dish Network, LLC,* 3:09-cv-3073 (C.D. Ill.), ECF No. 95 at p. 8-9.  In other words, non-privileged discovery material, including deposition testimony, demonstrated unequivocally that Dish Network's attorneys had been actively involved in investigations into alleged telemarketing violations and the resultant compliance activities related thereto.   Based  upon  this  non-privileged  evidence,  the  court undertook review of documents withheld based on privilege.  Such evidence of this nature and scope has not been presented here.

To the extent that Plaintiffs have submitted ECF Nos. 270-3 and 270-4 as evidence that Defendant's attorneys were involved in investigations into alleged telemarketing violations like DirecTV's attorneys, the Court is not persuaded by the same.  Neither document demonstrates that DirecTV's attorneys were actively involved in investigations into alleged telemarketing violations. ECF No. 270-3 appears to be a letter from outside counsel to a third-party asking them to cease and desist from engaging in "unauthorized telemarketing of AT&T and DIRECTV services" because such activity is "an unauthorized use of AT&T and its affiliates' trademarks and other relevant intellectual property."  Thus, ECF No. 270-3 appears to address a trademark/intellectual property issue, not a TCPA investigation or compliance issue.

ECF No. 270-4 appears to be an email exchanged in and among members of DirecTV's legal department (whether the persons are counsel or administrative employees is unclear) forwarding a finalized, agreed upon general message sent to authorized DirecTV dealers reminding them that they must comply with the AT&T Dealer Agreement regarding both telemarketing and the use of third parties to sell DirecTV.  A copy of the Dealer Agreement appears to be attached to the message.  Inasmuch as this email message does not seem to address any specific, alleged TCPA violations, and inasmuch as it is not immediately clear what prompted the apparent dissemination of this message, the Court does not believe this document supports a conclusion that Defendant's attorneys actively participated in TCPA investigations.

Plaintiffs further rely upon the language "monitoring and compliance" as used in the *Dish Network* opinion seemingly to advance the argument that documents withheld based on attorney/client privilege, and which relate in any way to "monitoring" and/or "compliance" with applicable telemarketing rules should be produced.  The Court is not persuaded by this argument.

The terms "monitoring and compliance" as used in *Dish Network* were terms specifically included within the regulation at issue in that case.  *See Dish Network,* 283 F.R.D. at 422-23.[2] Thus, Dish's attorneys, by virtue of their active participation in investigations into Rule violations, became "another person acting on behalf of the seller...[who] monitors and enforces compliance with the procedures established pursuant to § 310.4(b)(3)(i)."  16 C.F.R. § 310.4(b)(3).  In other words, the result of this investigation, a communication from in-house or outside counsel, did not, standing alone, justify *in camera* review or production of attorney/client privileged documents.  Rather, and consistent with the language of the regulation at issue, it was the fact that attorneys

---

[2] 16 C.F.R. § 310.4(b)(3) ("[a] seller or telemarketer will not be liable for violating [the Rule] if it can demonstrate [among other things] that, as part of the seller's or telemarketer's routine business practice...[t]he seller or a telemarketer or another person acting on behalf of the seller or charitable organization, **monitors and enforces compliance** with the procedures established pursuant to § 310.4(b)(3)(i)") (emphasis added).

conducted and/or participated in underlying investigations into alleged telemarketing violations which appears to have resulted in the *Dish Network* court's ruling.

At this time, there is no evidence before the Court that DirecTV's attorneys were actively involved in investigations into alleged TCPA violations.  Absent this evidence, this Court cannot grant Plaintiffs the relief they seek.[3]  Accordingly, and for all of the foregoing reasons, the Court would **DENY** Plaintiff's Motion [262] to Compel.


Any party may, within **FOURTEEN DAYS** of this Order, file with the Clerk of the Court written objections identifying the portions of the Order to which objection is made, and the basis for such objection.  A copy of such objections should also be submitted to the District Court Judge of Record.  Failure to timely file objections to the Order set forth above will result in a waiver of the right to appeal from a judgment of this Court based upon such an Order.


The Court **DIRECTS** the Clerk of the Court to mail a copy of this Order to any *pro se* party by certified mail, return receipt requested and to counsel of record herein.

Dated: 3/22/2022

JAMES P. MAZZONE
UNITED STATES MAGISTRATE JUDGE

---

[3] If and when Plaintiffs come into possession of such evidence, they are free to re-raise this issue, if appropriate.