**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**Wheeling**

**DAVID VANCE** and **ROXIE**
**VANCE,** individually and on behalf
of a class of all persons and entities
similarly situated,

        Plaintiffs,

    v.                        **CIVIL ACTION NO. 5:17-CV-179**
                                      Judge Bailey

**DIRECTV, LLC,**

        Defendant.

## <u>ORDER GRANTING MOTION FOR CLASS CERTIFICATION</u>

Pending before this Court is plaintiffs' Motion for Class Certification [Doc. 301] and accompanying Memorandum of Law [Doc. 301-1]. Defendant filed a Memorandum of Law in Opposition [Doc. 325]. Plaintiff filed a Reply [Doc. 328]. Defendant filed a Motion for Leave to File Supplemental Authority [Doc. 331] and accompanying supplemental authority [Doc. 331-1]. Plaintiff filed a Response in Opposition to the supplemental authority [Doc. 337]. Accordingly, this matter is ripe for adjudication. For the reasons contained herein, the Motion for Class Certification will be granted.

## BACKGROUND

### I.    Plaintiffs' Claims

Plaintiffs allege that defendant DirecTV, LLC ("defendant DirecTV") retained ACI Communications ("AC1") to sell defendant DirecTV's services. [Doc. 275 at ¶ 24]. Further, plaintiffs assert AC1 purchased a list of leads and phone numbers from a third party and used that list to make telemarketing calls, but failed to scrub the list for numbers on the national do-not-call list and called those numbers in violation of the Telephone Consumer Protection Act ("TCPA"). [Id. at ¶¶ 26, 29–34]. Plaintiffs do not claim defendant DirecTV itself placed the calls in question; rather, plaintiffs argue DirecTV is vicariously liable for AC1's actions. *See* [Doc. 301 at 15]. Based on these allegations, plaintiffs move this Court to certify a Rule 23(b)(3) damages class of "[a]ll persons within the United States (a) whose telephone numbers were listed on the Do Not Call Registry, and (b) who received more than one telemarketing call within any twelve-month period at any time from AC1, (c) to promote the sale of DirecTV." [Id. at 12].

### II.    Defendant DirecTV and AC1

Defendant DirecTV provides satellite television services to millions of customers across the United States. [Doc. 325 at 9]. During the relevant time, defendant DirecTV relied in part on a network of local dealers to promote its services. [Id.]. AC1, founded by Adam Cox and his father, was one of defendant DirecTV's dealers for Kentucky, Ohio, and West Virginia. [Doc. 325-2 at 17, 35]. In 2017, AC1 entered into a Preferred Dealer Agreement, wherein it agreed to market the services of defendant DirecTV and several affiliates, including AT&T Mobility. [Id. at 22–23]. The agreement authorized AC1 to promote, market, advertise,

solicit, and take orders for the (1) leasing of defendant DirecTV's systems, and (2) sale of subscriptions to single family residential households.  [Doc. 325-6 at 25].  According to defendant DirecTV, this agreement constituted an independent contractor relationship, rather than a joint employer enterprise, joint venture, partnership, or franchise arrangement. [Id. at 2–3].

Pursuant to the agreement, AC1 agreed to comply with a set of marketing guidelines, which expressly prohibited "cold calling."  [Id. at 19] ("You are prohibited from outbound telemarketing . . . except via a manually placed return call or text message in response to a direct inquiry from a customer and you are able to substantiate such inquiry . . . Using live operators . . . to place unsolicited (no applicable existing business relationship or qualifying inquiry) outbound telemarketing calls, sometimes also referred to as 'cold calls,' is expressly disapproved of for any use in advertising AT&T branded products and services.") (emphasis omitted).  AC1 represented that it would use events, flyers, and doorhangers to promote defendant DirecTV's services.  [Doc. 325-7 at 2].  Plaintiffs contend that AC1 nevertheless engaged in unlawful cold-call telemarketing to promote defendant DirecTV's services.

Plaintiffs' expert, Anya Verkhovskaya, asserts that she analyzed the phone numbers listed in AC1's call data, identified phone numbers therein on the national do-not-call list and the dates of those phone calls, and then determined which of those phone numbers received two or more calls from AC1 within a twelve-month period. [Doc. 301-6 at ¶¶ 49, 55].  She then produced a list of 113,997 telephone numbers that plaintiffs contend could belong to potential class members, along with a number of calls purportedly violating the TCPA.  [Doc. 301-7].

3

### III.    **The Named Plaintiffs**

The operative complaint names three plaintiffs: David Vance, Roxie Vance, and Carla Shultz. The Vances, who use AT&T Mobility, claim that on June 1, 2018, AC1 placed a telemarketing call to their phone number, which was listed on the national do-not-call list; they claim they received a second call from AC1 on November 29, 2018. Ms. Shultz alleges she received telemarketing calls from AC1 on July 17 and July 19, 2018. Based on these allegations, named plaintiffs seek to certify the proposed class identified by Ms. Verkhovskaya, and to act as class representatives.

## APPLICABLE LAW

### A.    **The TCPA**

In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy" and that Americans were "outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers." Pub. L. No. 102-243, §§ 2(5)–(6) (1991), *codified at* 47 U.S.C. § 227. Perhaps the most well-known aspect of the TCPA was the creation of the Do-Not-Call Registry, which was established in 2003 to provide a safe haven from unwanted telemarketing calls. By adding a telephone number to the Registry, a consumer indicates his or her desire not to receive telephone solicitations. *See* 47 C.F.R. § 64.1200(c)(2). The TCPA and its implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2); 16 C.F.R. § 310.4(b)(iii)(B) ("It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . .

4

initat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.").

The TCPA creates a private right of action for injunctive and monetary relief for any "person who has received more than one telephone call within any 12–month period by or on behalf of the same entity in violation of the [TCPA] regulations." 47 U.S.C. § 227(c)(5).  Calls may not be actionable if a seller has an established business relationship ("EBR") with a person, which is created after an individual makes a purchase, inquiry, or application for products or services and lasts for a certain number of months. *See* 47 U.S.C. § 227(a)(2), (4); 47 C.F.R. § 64.1200(c)(2), (f)(5).

The prohibitions against telemarketing to consumers who have listed their personal and non-business numbers on the Registry extends both to the entities that physically dial the illegal call and those entities that benefit from such calls.  As recognized by the Federal Communications Commission ("FCC"), the federal agency empowered by Congress to implement and interpret the TCPA, because allowing an entity "to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions," a corporation or other entity "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, 6574 (2013) ("May 2013 FCC Ruling").

As the Fourth Circuit recognized in *Krakauer v. Dish Network, L.L.C.*, the TCPA's "simple and administrable" provisions, the "obvious attempt [by Congress] to vindicate the public interest" through the statute's private enforcement provisions, and the overarching congressional intent "to allow consumers to bring their claims at modest personal expense" all combine to "make TCPA claims amenable to class action resolution." 925 F.3d 643, 663 (4th Cir. 2019).

## B.   Class Certification

"A district court 'has broad discretion in deciding whether to certify a class, but that discretion must be exercised within the framework of Rule 23.'" *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 (4th Cir. 2001) (quoting *In re American Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996)). "[P]laintiffs bear the burden . . . of demonstrating satisfaction of the Rule 23 requirements and the district court is required to make findings on whether the plaintiffs carried their burden . . . ." *Thorn v. Jefferson-Pilot Ins. Co.*, 445 F.3d 311, 317 (4th Cir. 2006) (quoting *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 370 (4th Cir. 2004)).

In an action such as this, class certification may be granted only if the plaintiffs satisfy the requirements of numerosity, commonality, typicality, representativeness, predominance, and superiority of Rule 23(a)[1] and (b)(3)[2] are met. *Lienhart*, 255 F.3d at 146.

---

[1] Rule 23(a) provides:

**(a) Prerequisites.**  One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
(1)  the class is so numerous that joinder of all members is impracticable;
(2)  there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

6

"[N]umerosity requires that a class be so large that 'joinder of all members is impracticable.' Fed.R.Civ.P. 23(a)(1). Commonality requires that 'there are questions of law or fact common to the class.' Fed.R.Civ.P. 23(a)(2). The common questions must be dispositive and over-shadow other issues." *Id*. (citing *Stott v. Haworth*, 916 F.2d 134, 145 (4th Cir. 1990)). "In a class action brought under Rule 23(b)(3), the 'commonality' requirement of Rule 23(a)(2) is 'subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class "predominate over" other questions.'" *Id.*, at n.4 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 609 (1997)).

"Typicality requires that the claims of the named class representatives be typical of those of the class; 'a class representative must be part of the class and possess the same

---

(4) the representative parties will fairly and adequately protect the interests of the class.

[2] Rule 23(b)(3) provides:

**(b) Types of Class Actions**. A class action may be maintained if Rule 23(a) is satisfied and if:
(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
(A) the class members' interests in individually controlling the prosecution or defense of separate actions;
(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
(D) the likely difficulties in managing a class action.

interest and suffer the same injury as the class members.' *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 156 (1982) (internal quotation marks omitted). Representativeness requires that the class representatives 'will fairly and adequately protect the interests of the class.' Fed.R.Civ.P. 23(a)(4). . . . [T]he final three requirements of Rule 23(a) 'tend to merge, with commonality and typicality "serv[ing] as guideposts for determining whether . . . maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."' *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 337 (4th Cir. 1998) (quoting *Falcon*, 457 U.S. at 157 n. 13)." *Id.* at 146–47.

"Apart from the enumerated requirements, 'Rule 23 contains an implicit threshold requirement that the members of a proposed class be "readily identifiable."'" *Krakauer v. Dish Network, L.L.C.*. 925 F.3d 643, 654–55 (4th Cir. 2019) (quoting *Hammond v. Powell*, 462 F.2d 1053, 1055 (4th Cir. 1972)).   Under this principle, sometimes called "ascertainability," "a class cannot be certified unless a court can readily identify the class members in reference to objective criteria." *EQT Prod. Co.*, 764 F.3d 347, 358 (4th Cir. 2014).

"In contrast to actions under Rule 23(b)(1) and (b)(2), Rule 23(b)(3) actions are '[f]ramed for situations in which class-action treatment is not clearly called for,' but 'may nevertheless be convenient and desirable.' *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997) (internal quotation marks omitted). In addition to the four Rule 23(a) requirements, Rule 23(b)(3) actions such as this one must meet two requirements: predominance and

8

superiority.  Predominance requires that '[common] questions of law or fact ... predominate over any questions affecting only individual members.'  Fed.R.Civ.P. 23(b)(3).  The predominance inquiry 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.' *Amchem,* 521 U.S. at 623.  Superiority requires that a class action be 'superior to other methods for the fair and efficient adjudication of the controversy.' Fed.R.Civ.P. 23(b)(3)." *Id*. at 147.

These questions present common legal issues which are susceptible to class action treatment.  Trial courts have great discretion to conduct and manage litigation in an efficient and equitable manner.  Manual for Comp. Litig., at Introduction,10.13 (4th ed. 2005). Particularly in the context of a class action, Rule 23 "allows district courts to devise imaginative solutions to problems created by… [determining] individual damages issues." *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004); *see also In re Scientific Atlantic Inc., Sec. Litig.,* 571 F.Supp.2d 1315, 1343 (N.D. Ga. 2007) (quoting *Carnegie* for this proposition and certifying class upon finding, "even if the Court ultimately concludes that aggregate damages models are not sufficiently reliable for use in this case, the Court is convinced that other viable alternatives exist to address any individual damages issues that may arise.").  Accepted methods of assessing the individual issues relating to class members include:

(1) bifurcating liability and damage trials with the same or different juries; (2) appointing a magistrate judge or special master to preside over individual damages proceedings; (3) decertifying the class after the liability trial and

9

providing notice to class members concerning how they may proceed to prove

damages; (4) creating subclasses; or (5) altering or amending the class.

*Id*. (citing *In re Visa Check/MasterMoney Antitrust Litig.,* 280 F.3d 124, 141 (2d Cir.

2001)).

## DISCUSSION

As the exhaustive considerations relating to class certification are multifaceted, this

Court will address each factor in turn.

## I.    Ascertainability

Under the principle called ascertainability, a class cannot be certified unless a court

can readily identify the class members in reference to objective criteria.  Fed. R. Civ. P. 23;

Syl. Pt. 12, *Krakauer*, 925 F.3d 643.  Moreover, all class members must be identifiable

"without extensive and individualized fact-finding or mini-trials." *Id.* at 658 (internal citation

omitted).  Although Rule 23 contains an implicit threshold requirement that the members of a

proposed class be readily identifiable, "[t]he goal is not to identify every class member at the

time of certification." *Id*.  Instead, Rule 23 merely requires that the class be defined "in such

a way as to ensure that there will be some administratively feasible way for the court to

determine whether a particular individual is a member at some point." *Id.*

In *Krakauer*, the Court found the class to be ascertainable because the defendant's

own records could be used to "show[ ] when calls were placed and whether the call went

through." *Id*.  Here, the same is true.  All class members whose numbers are included on the

Class List have been identified as consumers who received more than one telemarketing call

from AC1, on their non-business phones, that were listed at the time on the Do-Not-Call

Registry.   Moreover, plaintiffs' expert, Ms. Verkhovskaya, has further explained the methodology pursuant to which she can identify these class members by their name and address.

This Court is not persuaded by defendant DirecTV's attack on ascertainability, which, in actuality, is a ***Daubert*** challenge to the reliability of the class identification methodology used by Ms. Verkhovskaya.   First, defendant DirecTV has not filed a ***Daubert*** motion concerning Ms. Verkhovskaya's expert methodology.   Second, this Court would be disinclined to reject Ms. Verkhovskaya's expert methodology even in the context of a ***Daubert*** motion because Ms. Verkhovskaya is replicating the expert methodology she used that led to the affirmed class judgment in *Krakauer*–analyzing call records to identify putative class members.   *See **Krakauer v. Dish Network, L.L.C.**,* 2015 WL 5227693 (M.D. N.C. Sept. 8, 2015) (Eagles, J.).   In the district court there, Judge Eagles denied the defendant's motion to exclude Ms. Verkhovskaya's testimony at the class certification stage, finding her qualified by her experience analyzing call records for this purpose in hundreds of cases, and concluded that her "reverse lookup" methodology–that is, her process of identifying class member names and addresses through call records–sufficiently reliable.   *Id.*, at *2, *11.   After trial and the jury's acceptance of Ms. Verkhovskaya's testimony, Judge Eagles denied the defendant's post-trial motions finding that she "provided clear, cogent testimony explaining the methodology and the bases for her opinions."   ***Krakauer v. Dish Network, L.L.C.**,* 2017 WL 2455095, at *6 (M.D. N.C. June 6, 2017) (Eagles, J.).   In a ruling approximately six month later, Judge Eagles again found Ms. Verkhovskaya to be a credible and reliable witness, noting "familiarity with her work over time" and the court's "personal, in-court observations of

her testimony[.]" *Krakauer v. Dish Network, L.L.C.*, 2018 WL 11429948, at \*2 (M.D. N.C. June 6, 2017) (Eagles, J.).[3]

Ms. Verkhovskaya can identify class members from AC1's original source data–the list of intended call recipients, with names, addresses, and telephone numbers of every person AC1 called. *See* [Doc. 301-6]. That alone is sufficient to objectively identify the class, which is all ascertainability requires. Moreover, to confirm the accuracy of the source data, Ms. Verkhovskaya outlined the same "reverse lookup" methodology used in *Krakauer*, where she identified names and addresses of consumers associated with a particular phone number.

Defendant DirecTV's challenges to ascertainability fail. First, it contends Ms. Verkhovskaya did not identify class members. A review of the parties' joint Rule 26(f) report indicates otherwise. Next, defendant DirecTV argues a lack of ascertainability based on the contention that Ms. Verkhovskaya will exclusively identify class members by using reverse lookup methodology. This argument is belied by the fact that the AC1 source data contains the names, addresses, and phone numbers of almost all putative class members. Ms. Verkhovskaya's reporting indicates her intention to merely cross-reference and confirm the

---

[3]Several courts have recognized Ms. Verkhovskaya's qualifications and reliability in identifying class members in TCPA class actions. *See Bumpus v. Realogy Brokerage Group LLC*, 2022 WL 867256 (N.D. Cal. Mar. 23, 2022); *Chinitz v. Intero Real Estate Services*, 2020 WL 7391299 (N.D. Cal. July 22, 2020); *Abante Rooter and Plumbing, Inc., v. Alarm.com Incorporated*, 2017 WL 1806583 (N.D. Cal. May 5, 2017); *Shamblin v. Obama for America*, 2015 WL 1909756 (M.D. Fla. Apr. 27, 2015).

accuracy of that source data through reverse lookup.[4] Third, defendant DirecTV claims the "total inadequacy" of the reverse lookup methodology is revealed by its own comparison of the AC1 source data to a Lexis database. [Doc. 325 at 12–13]. This Court's review of defendant DirecTV's research in this regard appears to indicate the exact opposite. In fact, each person identified in the Lexis data shows an association with the named plaintiffs–who are specifically named in the source data–is a family member; in her supplemental report, Ms. Verkhovskaya explains that family members are commonly associated with the phone numbers of one another. [Doc. 329-1]. Finally, defendant DirecTV challenges the source data itself, claiming the lead list provider–TelephoneLists.biz–"expressly disclaims" its accuracy; indeed the disclaimer states that "telephone lists you purchase will not be 100% accurate," and explains why inaccuracies may arise. *See* [Doc. 325-1]. However, 100% accuracy is not required when evaluating ascertainability. *See Krakauer*, 2015 WL 5227693, at *9 (where Judge Eagles found Ms. Verkhovskaya's use of identification data with a 14% error rate to be "not unreasonably high for these particular circumstances.").

Accordingly, this Court finds, expressly, that the class is ascertainable.

---

[4] The fact that Ms. Verkhovskaya has the names and addresses of almost all class members from AC1 source data distinguishes this case from those cited by defendant DirecTV, where Ms. Verkhovskaya's source data did not include names, addresses, and telephone numbers. *See Sapan v. Yelp, Inc.*, 2021 WL 5302908 (N.D. Cal. Nov. 15, 2021) (class certification denied where no records identified class members); *Wilson v. Badcock Home Furniture*, 329 F.R.D. 454, 457 (M.D. Fla. 2018) (class certification denied where no source data existed and reverse lookup did not associate plaintiff with number); *Hunter v. Time Warner Cable Inc.*, 2019 WL 3812063 (S.D. N.Y. Aug. 14, 2019) (certification denied where no source data existed to identify class representative as associated with phone number that could be compared to results of reverse lookup methodology to confirm accuracy); *Balschmiter v. TD Auto Fin. LLC*, 303 F.R.D. 508, 525 (E.D. Wis. 2014) (same).

## II.    __Numerosity__

The first requirement of Rule 23(a) is that the class must be of such a size that joinder of all members is impracticable. "'Impracticable does not mean impossible.' *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir.1993). Practicability of joinder depends on factors such as the size of the class, ease of identifying its numbers and determining their addresses, facility of making service on them if joined and their geographic dispersion. *Buford* [*v. H & R Block, Inc.*], 168 F.R.D. at 348 (citing *Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859, 878 (11th Cir.1986)). The size of individual claims is another factor to consider; where individual claims are so small as to inhibit an individual from pursuing his own claim, joinder is less likely. *Id.* (citing *Luyando v. Bowen*, 124 F.R.D. 52, 55 (S.D.N.Y.1989))." *Hewlett v. Premier Salons International, Inc.*, 185 F.R.D. 211, 215 (D. Md.1997) (Chasanow, J.).

"There is no bright line test for determining numerosity; the determination rests on the court's practical judgment in light of the particular facts of the case. [*Buford v. H & R Block, Inc.*, 168 F.R.D. 340, 348 (S.D.Ga.1996)] (citing *Deutschman v. Beneficial Corp.*, 132 F.R.D. 359, 371 (D. Del.1990)). The class representatives are not required to specify the exact number of persons in the proposed class. *Kernan v. Holiday Universal, Inc.*, 1990 WL 289505, at *2 (D.Md.1990) (Howard, J.) (citing *Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir.1989)). An unsubstantiated allegation as to numerosity, however, is insufficient to satisfy Rule 23(a)(1). *Buford*, 168 F.R.D. at 348 (citing *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir.1981))." *Id.*

Here, Ms. Verkovshkaya's report asserts that AC1, acting for DirecTV, made 325,030 calls to 113,997 non-business numbers listed on the Do-Not-Call Registry; accordingly, it

14

would be impracticable to join all of these proposed class members, and numerosity is clearly

satisfied.

## III.   Commonality

Rule 23(a)(2) requires a showing of the existence of "questions of law or fact common

to the class."   Rule 23(b)(3) requires that questions of law or fact common to the class

predominate over any questions affecting only individual members.  The Fourth Circuit has

held that "[i]n a class action brought under Rule 23(b)(3), the 'commonality' requirement of

Rule 23(a)(2) is 'subsumed under, or superseded by, the more stringent Rule 23(b)(3)

requirement that questions common to the class "predominate over" other questions.'"

*Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 147 n. 4 (4th Cir. 2001)(quoting *Amchem,* 521

U.S. at 609).  Because this is a class action brought under Rule 23(b)(3), this Court will

analyze the two factors together in the predominance section of this opinion. *See **In re***

***LifeUSA Holding Inc.,*** 242 F.3d 136, 144 (3d Cir. 2001) (analyzing the two factors together).

## IV.   Typicality

"To satisfy the typicality requirement under Rule 23(a)(3), the 'claims or defenses of the

representative parties [must be] typical of the claims or defenses of the class.' Fed.R.Civ.P.

23(a)(3). 'A sufficient nexus is established [to show typicality] if the claims or defenses of the

class and class representatives arise from the same event or pattern or practice and are

based on the same legal theory.' *In re Terazosin Hydrochloride Antitrust Litig.,* 220

F.R.D. 672, 686 (S.D. Fla. 2004) (quoting *Kornberg v. Carnival Cruise Lines, Inc.,* 741

F.2d 1332, 1337 (11th Cir. 1984)); *see also **In re Diet Drugs,*** 2000 WL 1222042, at *43

(E.D. Pa. Aug. 28, 2000).  The class representatives and class members need not have suffered identical injuries or damages.  *United Broth. of Carpenters v. Phoenix Assoc., Inc.,* 152 F.R.D. 518, 522 (S.D. W.Va. 1994) (Haden, C.J.); *see also Mick v. Ravenswood Aluminum Corp.,* 178 F.R.D. 90, 92 (S.D. W.Va. 1998) (Haden, C.J.)." *In re Serzone Prods. Liab. Litig.,* 231 F.R.D. 221, 238 (S.D. W.Va. 2005) (Goodwin, J.).

"The typicality requirement has been observed to be a redundant criterion, and some courts have expressed doubt as to its utility. *Buford,* 168 F.R.D. at 350 (citing *Sanders v. Robinson Humphrey/American Express, Inc.,* 634 F.Supp. 1048, 1056 (N.D. Ga. 1986), *aff'd in part, rev'd in part on other grounds sub nom., Kirkpatrick v. J.C. Bradford & Co.,* 827 F.2d 718 (11th Cir. 1987), *cert. denied,* 485 U.S. 959 (1988)).  Some courts treat typicality as overlapping with commonality, *see Zapata* [*v. IBP, Inc.*], 167 F.R.D. at 160; *cf. Falcon,* 457 U.S. at 157 n. 13 (noting that typicality and commonality 'tend to merge'); other courts equate typicality with adequacy of representation. *Buford,* 168 F.R.D. at 350 (citing *Alfus v. Pyramid Technology Corp.,* 764 F.Supp. 598, 606 (N.D. Cal. 1991)). Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct. *Zapata,* 167 F.R.D. at 160 (citing 1 *Newberg on Class Actions* § 3.13). A plaintiff's claim may differ factually and still be typical if 'it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.' *Id.* (quoting 1 *Newberg on Class Actions* § 3.13). So long as the plaintiffs and the class have an interest in prevailing in similar

16

legal claims, then the typicality requirement is satisfied. *Buford,* 168 F.R.D. at 351 (citing *Meyer v. Citizens and Southern Nat'l Bank,* 106 F.R.D. 356, 361 (M.D. Ga. 1985)).  The existence of certain defenses available against plaintiffs that may not be available against other class members has been held not to preclude a finding of typicality. *See id.* (citing *International Molders' and Allied Workers' Local Union No. 164 v. Nelson,* 102 F.R.D. 457, 463 (N.D. Cal. 1983)).  The burden of showing typicality is not meant to be an onerous one, but it does require more than general conclusions and allegations that unnamed individuals have suffered discrimination. *Kernan,* 1990 WL 289505, at *3 (citing *Paxton v. Union Nat'l Bank,* 688 F.2d 552, 556 (8th Cir. 1982), *cert. denied,* 460 U.S. 1083 (1983))." *Hewlett v. Premier Salons, Int'l, Inc.,* 185 F.R.D. 211, 216 (D. Md. 1997) (Chasanow, J.).

Here, the named plaintiffs, like all purported class members, allegedly received telemarketing calls form AC1 on numbers listed on the Do-Not-Call Registry.  The named plaintiffs must prove the same elements as every class member.  Moreover, the named plaintiffs seek the same statutory relief as the putative class.  By proving their own legal claims, plaintiffs may also prove the class claims.  Accordingly, typicality is satisfied.

## V.   Adequacy of Representation

"The final requirement of Rule 23(a) is set forth in subsection (4), which requires that 'the representative parties will fairly and adequately protect the interests of the class.' *Fed.R.Civ.P.* 23(a)(4).  This determination requires a two-pronged inquiry: (1) the named plaintiffs must not have interests antagonistic to those of the class; and (2) the plaintiffs' attorneys must be qualified, experienced and generally able to conduct the litigation. *Hewlett*

17

*v. Premier Salons Int'l, Inc.,* 185 F.R.D. 211, 218 (D. Md. 1997)." *Serzone*, 231 F.R.D. at 238.

Here, none of the named plaintiffs has any interests that conflict with those of other class members. Rather, all seek a determination that defendant DirecTV violated the TCPA, and all seek the same remedy. Moreover, this Court is well aware of plaintiffs' counsel's history of handling cases involving TCPA class actions.

Defendant DirecTV's claims that the named plaintiffs are inadequate because each use the services of AT&T Mobility and are therefore subject to an EBR ("existing business relationship") defense does not persuade this Court to deem them inadequate class representatives because the purported applicability of this defense will be addressed post-certification. Accordingly, this Court finds that the threshold for adequacy of representation has been met.

## VI.    **Predominance**

The first factor under Rule 23(b)(3) requires that the questions of law or fact common to all class members predominate over questions pertaining to individual members. *In re Serzone Prods. Liab. Litig.*, 231 F.R.D. at 239. Common questions predominate if class-wide adjudication of the common issues will significantly advance the adjudication of the merits of all class members' claims.

"The predominance inquiry 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Lienhart*, 255 F.3d at 147 (quoting *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 623 (1997)); *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 362 (4th Cir. 2004). Where significant common questions can be resolved for class

18

members in one action, it is efficient to deal with class claims on a representative rather than an individual basis. *See* Charles Alan Wright & Arthur R. Miller, 7A *Federal Practice and Procedure* § 1778 (3d ed. 2009).  "The predominance inquiry focuses on whether liability issues are subject to class-wide proof or require individualized and fact-intensive determinations.  Deciding whether common questions predominate over individual ones involves a qualitative, rather than quantitative, inquiry." *Singleton v. Domino's Pizza, LLC*, 976 F.Supp.2d 665, 677 (D. Md. 2013) (Chasanow, J.)(citations omitted).

As noted by Judge Copenhaver in *Good v. American Water Works Co., Inc.*, 310 F.R.D. 274 (S.D. W.Va. 2015):

> A principle often forgotten is that the balancing test of common and individual issues is qualitative, not quantitative.  *Gunnells v. Healthplan Services, Inc.*, 348 F.3d 427, 429 (4th Cir. 2003).  Common liability issues may still predominate even when individualized inquiry is required in other areas. *Id*. At bottom, the inquiry requires a district court to balance common questions among class members with any dissimilarities between class members.  *See Gunnells*, 348 F.3d at 427–30.
>
> While courts have denied certification when individual damage issues are especially complex or burdensome, *see, e.g., Pastor v. State Farm Mut. Auto. Ins. Co.*, 487 F.3d 1042, 1047 (7th Cir. 2007), where the qualitatively overarching issue by far is the liability issue of the defendant's [actions], and the purported class members were exposed to the same risk of harm every time, such as where a defendant violates a statute in the identical manner on every

occasion, individual damages issues are insufficient to defeat class certification under Rule 23(b)(3). *See Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006); *Smilow v. Southwestern Bell Mobile Systems, Inc.*, 323 F.3d 32, 40 (1st Cir. 2003). The same principle would apply here to the alleged liability [issues].

310 F.R.D. at 296–97.

Common issues will predominate if "individual factual determinations can be accomplished using computer records, clerical assistance, and objective criteria — thus rendering unnecessary an evidentiary hearing on each claim." Newberg on Class Actions § 4:50 (5th ed.). In addition, common issues predominate when adding more plaintiffs to the class would minimally or not at all affect the amount of evidence to be introduced. Id.

Courts in every circuit have uniformly held that the 23(b)(3) predominance requirement is satisfied despite the need to make individualized damage determinations and a recent dissenting decision of four Supreme Court Justices characterized the point as "well nigh universal." Newberg on Class Actions § 4:54 (5th ed.) (citing *Comcast v. Behrend*, 569 U.S. 27, 133 S.Ct. 1426, 1437 (2013)). *See also, Gunnells*, 348 F.3d 417 at 428.

Here, like in *Krakauer*, common issues overwhelmingly predominate the putative class. *See* 925 F.3d at 658. There are two overriding questions in this case: (1) whether AC1 contacted class members listed on the Do-Not-Call registry; and (2) whether DirecTV is liable for AC1's actions. Any individual issues or defenses are limited and easily resolved with aggregate data from defendant DirecTV. Notably similar common facts were at issue in *Krakauer*. *Id*. at 658–59 (explaining that the district court properly determined that "all of the

20

major issues could be shown through aggregate records," rejecting the argument that "individual fact-finding would be required," and that because those "determinations were reasonable, there is no error for us to correct"). The same conclusion is not only warranted, but necessary here.[5]   As such, this Court finds that common issues overwhelmingly predominate the class.

## VII.   Superiority

"The superiority test of Rule 23(b)(3) requires the court to find that the class action instrument would be better than, not just equal to, other methods of adjudication. The four factors listed in this subsection (interest in controlling individual prosecutions, existence of other related litigation, desirability of forum, and manageability) are simply a guideline to help the court determine the benefit of the proposed class action. Advisory Committee's Notes to Fed.R.Civ.P. 23." *Hewlett v. Premier Salons, Intern., Inc.*, 185 F.R.D. 211, 220 (D. Md. 1997) (Chasanow, J.).

Rule 23(b)(3) requires the proposed class action to be superior to other methods of adjudication so that the class action will "achieve economies of time, effort and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem Prods., Inc. v. Windsor*, 521

---

[5]Defendant DirecTV offers several defenses to plaintiffs' claims. Notably, it claims that some consumers whose numbers are on the class list are pre-existing customers of DirecTV with whom it had an EBR, and that AC1 in turn had an EBR with class members. This is an argument better suited for resolution in summary judgment rather than class certification, as is defendant DirecTV's argument concerning standing.   Similarly, defendant DirecTV contends that some members on the class list are customers of its parent, AT&T, and that the claims of those consumers must be resolved at arbitration.   This argument would be better suited in a motion to compel arbitration rather than here.

U.S. 591, 615 (1997) (quotations omitted).  A primary purpose of class actions lawsuits, particularly money damages claims aggregated under 23(b)(3), is to enable the litigation of small claims like most of these claims, that could not be pursued individually. Newberg on Class Actions § 4:65 (5th ed.).  *Accord* **Amchem**, 521 U.S. 591, 617 (such cases are the "core" of the class action mechanism.).

The efficiencies that a class action may achieve are greater when the class is large. *Id*.  The need to avoid duplicative litigation can be significant even when the class is relatively small in number, but it is when there are many potential claimants that class actions bring the greatest efficiencies.  *Id*.  A class action may enhance judicial efficiency and legitimacy by preventing inconsistent results. *Id*.

## A.      Interest in controlling individual prosecutions

"The first factor identified in the rule is 'the interest of members of the class in individually controlling the prosecution or defense of separate actions.'  Fed.R.Civ.P. 23(b)(3)(A).  'This factor has received minimal discussion in Rule 23(b)(3) actions.' **Buford**, 168 F.R.D. at 361 (quoting 1 *Newberg on Class Actions* § 4.29).  According to the drafters of the rule:

>  The interests of individuals in conducting separate lawsuits may be so strong
>  as to call for denial of a class action.  On the other hand, these interests may be
>  theoretic[al] rather than practical; the class may have a high degree of cohesion
>  and prosecution of the action through representatives would be quite
>  unobjectionable, or the amounts at stake for individuals may be so small that
>  separate suits would be impracticable.

Advisory Committee's Notes to Fed.R.Civ.P. 23." *Hewlett*, at 220–21.

### B.    Existence of other related litigation

"Under Rule 23(b)(3)(B), the court should consider the 'extent and nature of any litigation concerning the controversy already commenced by or against members of the class.' This factor is intended to serve the purpose of assuring judicial economy and reducing the possibility of multiple lawsuits. 7A *Federal Practice and Procedure* § 1780, at pp. 568–69. 'If the court finds that several actions already are pending and that a clear threat of multiplicity and a risk of inconsistent adjudications actually exist, a class action may not be appropriate since, unless the other suits can be enjoined, which is not always feasible, a Rule 23 proceeding only might create one more action. . .. Moreover, the existence of litigation indicates that some of the interested parties have decided that individual actions are an acceptable way to proceed, and even may consider them preferable to a class action. Rather than allowing the class action to go forward, the court may encourage the class members who have instituted the Rule 23(b)(3) action to intervene in the other proceedings.' *Id*. at 569–70." *Hewlett*, at 221.

### C.    Desirability of forum

Rule 23(b)(3)(C) requires the court to evaluate the desirability of concentrating the litigation in a particular forum. This Court finds it desirable to concentrate the litigation in this judicial district given named plaintiffs' reside herein.[6]

---

[6]Defendant DirecTV raises an interesting argument by averring that this Court lacks personal jurisdiction over the out-of-state class members. In support, defendant DirecTV cites *Bristol-Myers Squibb Co. v. Superior Ct. of Cali., San Francisco Cnty.*, 137 S.Ct. 1773 (2017). However, that case does not support defendant DirecTV's position, as that issue was

### D.    Manageability

"The last factor that courts must consider in relation to superiority is the difficulty that may be 'encountered in the management of the class action.' Fed.R.Civ.P. 23(b)(3)(D). 'Of all the superiority factors listed in Rule 23, *manageability* has been the most hotly contested and the most frequent ground for holding that a class action is not superior.' ***Buford***, 168 F.R.D. at 363 (quoting 1 *Newberg on Class Actions* § 4.32).   Some courts have said, however, '[t]here exists a strong presumption against denying class certification for management reasons.' *Id.* (citing ***In re Workers' Compensation***, 130 F.R.D. 99, 110 (D. Minn. 1990); ***In re South Central States Bakery Prod. Antitrust Litig.,*** 86 F.R.D. 407, 423 (M.D. La. 1980))." ***Hewlett***, at 221.

"The manageability inquiry includes consideration of the potential difficulties in identifying and notifying class members of the suit, calculation of individual damages, and distribution of damages.   ***Six Mexican Workers v. Arizona Citrus Growers,*** 904 F.2d 1301, 1304 (9th Cir. 1990); ***Maguire v. Sandy Mac, Inc.,*** 145 F.R.D. 50, 53 (D. N.J. 1992); ***Kernan*** [***v. Holiday Universal, Inc.***]*,* 1990 WL 289505, at *7 [(D. Md. Aug. 14, 1990)

---

not reached in the case. ***Id.*** at n.4 ("The Court today does not confront the question whether its opinion here would also apply to a class action in which a plaintiff injured in the forum State seeks to represent a nationwide class of plaintiffs, not all of whom were injured there."). Further, two federal circuits have addressed defendant DirecTV's contention in the context of a TCPA class action, and both concluded that only the named plaintiffs, and not absent class members, must establish personal jurisdiction in the forum state. *See* ***Lyngass v. Curagen AG***, 992 F.3d 412, 433 (6th Cir. 2021); ***Mussat v. IQVIA, Inc.***, 953 F.3d 441, 447–48 (7th Cir. 2020).

(Howard, J.)]; *In re Folding Carton Antitrust Litig.,* 88 F.R.D. 211, 216 (N.D. Ill. 1980)." *Hewlett,* 185 F.R.D. at 221–22.

The question courts consider when they analyze manageability is not whether a class action is manageable in the abstract but how the problems that might occur in managing a class suit compare to the problems that would occur in managing litigation without a class suit. *Amchem*, 521 U.S. at 617.  Manageability should rarely, if ever, be in itself sufficient to prevent certification of a class. *Id*.

While a judge on the Second Circuit, Justice Sonia Sotomayor wrote, in an oft-cited passage, that "failure to certify an action under Rule 23(b)(3) on the sole ground that it would be unmanageable is disfavored and 'should be the exception rather than the rule.'" *In re Visa Check/MasterMoney Antitrust Litigation*, 280 F.3d 124, 141 (2d Cir. 2001). Before denying class certification (here for reasons concerning individualized damages), a court may consider whether any of a number of "management tools" might enable the case to proceed; the listed options included the following:

> (1) bifurcating liability and damage trials with the same or different juries; (2) appointing a magistrate judge or special master to preside over individual damages proceedings; (3) decertifying the class after the liability trial and providing notice to class members concerning how they may proceed to prove damages; (4) creating subclasses; or (5) altering or amending the class.

*Id*. See also, *Newberg on Class Actions* § 4:80 (5th ed.); *Pitt v. City of Portsmouth, Va.,* 221 F.R.D. 438, 447 (E.D. Va. 2004) (Jackson, J.).

Indeed, while certifying a class action can certainly create difficult management concerns, Judge Copenhaver points out that courts must also be:

cognizant of the inefficient, costly and time consuming alternative. Absent the proposed liability issues certification, the issue of fault, for one, would have to be tried seriatim in every case for which a jury is empanelled. That consideration alone tips the balance heavily toward the limited issue certification sought by plaintiffs. *See Gunnells*, 348 F.3d at 426 ("Proving these issues in individual trials would require enormous redundancy of effort, including duplicative discovery, testimony by the same witnesses in potentially hundreds of actions, and relitigation of many similar, and even identical, legal issues.").

Additionally, absence of the class device would surely discourage potentially deserving plaintiffs from pursuing their rights under the circumstances here presented. That is another factor influencing the outcome sought by plaintiffs. *See Gunnells*, 348 F.3d at 426 (noting in that case that "class certification will provide access to the courts for those with claims that would be uneconomical if brought in an individual action. As the Supreme Court put the matter, '[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.'" (quoting *Amchem*, 521 U.S. at 617)).

26

Surely, the plaintiffs thus receive a benefit from the proposed issues certification. But so, too, do the defendants. As our court of appeals has noted, the focus of Rule 23(b)(3) in the mass tort context is to "ensure that class certification in such cases 'achieve economies of time, effort, and expense, and promote ... uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Gunnells*, 348 F.3d at 424 (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 615 (1997)). As in *Gunnells*, defendants benefit from procedural fairness by certification:

> "Furthermore, class certification 'provides a single proceeding in which to determine the merits of the plaintiffs' claims, and therefore protects the defendant from inconsistent adjudications.' This protection from inconsistent adjudications derives from the fact that the class action is binding on all class members. By contrast, proceeding with individual claims makes the defendant vulnerable to the asymmetry of collateral estoppel: If [the Defendant] lost on a claim to an individual plaintiff, subsequent plaintiffs could use offensive collateral estoppel to prevent [the Defendant] from litigating the issue. A victory by [the Defendant] in an action by an individual plaintiff, however, would have no binding effect on future plaintiffs because the plaintiffs would not have been party to the original suit. Class certification thus

promotes consistency of results, giving defendants the benefit of

finality and repose."

*Gunnells*, 348 F.3d at 427.

*Good v. American Water Works Company, Inc.*, 310 F.R.D. 274, 297-98 (S.D. W.Va. 2015) (Copenhaver, J.).

In *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417 (4th Cir. 2003), the Fourth Circuit stated:

> First, it appears likely that in the absence of class certification, very few claims would be brought against TPCM, making "the adjudication of [the] matter through a class action ... superior to no adjudication of the matter at all." *See* 5 *Moore's Federal Practice* § 23.48[1] (1997). Thus, class certification will provide access to the courts for those with claims that would be uneconomical if brought in an individual action. As the Supreme Court put the matter, "[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem*, 521 U.S. at 617 (citation omitted).

348 F.3d at 426.

In this case, the plaintiffs' claims are easily susceptible to resolution on a classwide basis. In the event that the class would become unmanageable, this Court can decertify the class. *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d at 426 (4th Cir. 2003); *Central Wesleyan College v. W.R. Grace & Co.*, 6 F.3d 177, 184 (4th Cir. 1993).

Likewise, in the event that damages issues would require individual inquiry, the damage issues may be bifurcated. "Rule 23 contains no suggestion that the necessity for individual damage determinations destroys commonality, typicality, or predominance, or otherwise forecloses class certification. In fact, Rule 23 explicitly envisions class actions with such individualized damage determinations. *See* Fed. R. Civ. P. 23 advisory committee's note (1966 Amendment, subdivision (c)(4)) (noting that Rule 23(c)(4) permits courts to certify a class with respect to particular issues and contemplates possible class adjudication of liability issues with 'the members of the class ... thereafter ... required to come in individually and prove the amounts of their respective claims.'); *see also* 5 Moore's Federal Practice § 23.23[2] (1997) ('[T]he necessity of making an individualized determination of damages for each class member generally does not defeat commonality.'). Indeed, '[i]n actions for money damages under Rule 23(b)(3), courts *usually* require individual proof of the amount of damages each member incurred.' *Id.* at § 23.46[2][a] (1997) (emphasis added). When such individualized inquiries are necessary, if 'common questions predominate over individual questions as to liability, courts generally find the predominance standard of Rule 23(b)(3) to be satisfied.' *Id.*" ***Gunnells***, at 427–28.

"Courts have routinely rejected this argument, concluding, as we have in previous cases, that the need for individualized proof of damages alone will *not* defeat class certification. *See **Central Wesleyan**,* 6 F.3d at 189; ***Hill v. W. Elec. Co., Inc.,*** 672 F.2d 381, 387 (4th Cir. 1982) ('Bifurcation of ... class action proceedings for hearings on ... damages

is now commonplace.'); ***Chisolm v. TranSouth Fin. Corp.,*** 184 F.R.D. 556, 566 (E.D. Va. 1999) (Jackson, J.) (collecting cases)." ***Gunnells***, at 429 (emphasis in original).

Rule 23(g) requires that a court certifying a class also appoint class counsel. The Rule directs a court to consider several factors, including "[t]he work counsel has done in identifying or investigating potential claims in the action; [c]ounsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; [c]ounsel's knowledge of the applicable law; and [t]he resources counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(C)(i).

### E.    The Superior Method

Defendant DirecTV's arguments notwithstanding, this Court finds that class action litigation is the overwhelmingly superior method to handle these claims in consideration of the Fourth Circuit's superiority standards. As informed in ***Krakauer***, "given the large number of class members and claims, class-wide adjudication of the claims would be more efficient" than piecemeal litigation. ***Id***. at 655–57. In conclusion, this Court agrees with plaintiffs' contention that this is a "model case for the application of the class action mechanism."

### <u>CONCLUSION</u>

For these reasons, Plaintiffs' Motion for Class Certification [**Doc. 301**] is **GRANTED**. This Court will **CERTIFY** the following class:

All persons within the United States (a) whose telephone numbers were listed on the Do-Not-Call Registry, and (b) who received more than one telemarketing call within any twelve-month period at any time from AC1, (c) to promote the sale of DirecTV.

It is so **ORDERED**.

The Clerk is directed to transmit true copies of this order to all counsel of record.

**DATED**: August _____, 2022.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE