IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF WEST VIRGINIA

**Wheeling Division**

DAVID and ROXY VANCE,
and CARLA SHULTZ individually
and on behalf of a class of all
persons and entities similarly situated,

      **Plaintiffs,**

vs.                                                             Case No. 5:17-cv-00179-JPB

DIRECTV, LLC,

      **Defendant.**

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**I.    INTRODUCTION**

After more than five years of litigation—including the completion of all fact and

expert discovery, four appeals (two concluded and two pending), and a contested (and

appealed) grant of class certification—Plaintiffs have reached a proposed settlement with

Defendant DirecTV for the same class that this Court certified over DirecTV's opposition

seven months ago.

The proposed settlement requires DIRECTV to pay $16,850,000 to establish a non-

reversionary settlement fund for the benefit of Plaintiffs and the 113,997 class members.

After payment of proposed attorneys' fees, litigation costs, settlement administration costs,

and proposed incentive awards, class members who submit valid claims will receive

substantial cash payments, the amount of which will depend on the claims rate. If 20% of the

class submits claims and the Court awards all requested fees and costs, the net recovery for

each class member will be an estimated $460, a substantial amount to any class member.

This is an outstanding result in any TCPA case, and particularly so here, where the Court of Appeals had unexpectedly decided to accept DirecTV's petition to appeal class certification, which it would decide together with DirecTV's *third* arbitration appeal—all adding up to an interlocutory appellate stage could take years to complete. And even if Plaintiffs ultimately prevailed in these two extant appeals, DirecTV would potentially have another appellate round once this Court decided DirecTV's motion to compel class arbitration, which it could only do when the other appellate issues were finally decided. It is no exaggeration to say that, but for this proposed settlement, which will immediately pay class members substantial cash awards, the class could be in for four *more* years of delay before they would collect a penny; even then, to recover any amount they would also have to prevail at trial, and potentially another appeal.

At this preliminary approval stage, the Court must decide whether it is likely to finally approve the settlement, an assessment that includes whether class counsel and the representatives have adequately represented the class; whether the proposed settlement was negotiated at arms length; whether the settlement treats class members equitably relative to each other; and whether the settlement provides adequate relief to the class considering, among other things, the cost, risks, and delay of trial. Fed. R. Civ. P. 23(e)(5).  This settlement—considering the years long, hotly-contested litigation efforts required to obtain it, the superiority of the cash relief it provides, and the fair treatment to all class members— more than sufficiently meets the preliminary approval test.

Plaintiffs urge the Court to grant their motion and order the dissemination of notice so class members can file claims, opt-out, or object.

## II.  BACKGROUND

### A.  Diana Mey commences the action against DirecTV and two of its dealers, including AC1.

Wheeling resident Diana Mey commenced this action on December 11, 2017. ECF No. 1. She alleged that on August 12, 2017, DirecTV authorized dealer AC1 made an autodialed telephone call, the purpose of which was to sell DirecTV subscriptions, to Ms. Mey's cellular telephone number that she had previously listed on the National Do Not Call Registry. *Id.* ¶¶ 22-23. She also alleged that on two other occasions that month, she received prerecorded telemarketing calls from DirecTV dealer IQ Marketing 2, Corp., d/b/a Pacificom, on that same telephone number. *Id.* ¶¶ 31-35. On behalf of a putative class, she alleged three claims under the Telephone Consumer Protection Act: violation of the statute's prohibition on autodialed calls to cellular telephone calls (Count One); violation of the statute's ban on prerecorded calls to residential phones (Count Two); and solicitation calls to numbers on the National Do Not Call Registry (Count Three). *Id.* ¶¶ 74-82. DirecTV was named a defendant under a vicarious liability theory. *Id.* ¶¶ 45-60. IQ Marketing 2 and AC1 also were named defendants.

AC1 and its principal Adam Cox answered the complaint. ECF No. 25, March 26, 2018. In lieu of an answer, DirecTV moved to compel arbitration, asserting that Ms. Mey, whose cellular service was provided by AT&T Mobility LLC, was bound by her customer service agreement to arbitrate all claims against corporate affiliates of AT&T, Inc., including DirecTV. ECF No. 15, Feb. 16, 2018, at 1-2. The Court denied that motion, finding the scope of the AT&T arbitration agreement did not extend to Ms. Mey's TCPA claims against DirecTV. ECF No. 28, Apr. 25, 2018, at 14.

### B.  DirecTV's first arbitration appeal, and continued district court litigation.

DirecTV appealed the denial of its arbitration motion—the first of its four arbitration-

related appeals. ECF No. 31, May 11, 2018. Concurrently, Plaintiff continued to obtain discovery from Defendant AC1 after the Court denied AC1's motion to stay proceedings pending the outcome of the DirecTV's appeal. ECF No. 46, July 25, 2018. During this timeframe, Ms. Mey continued to receive telemarketing calls promoting DirecTV, prompting her to amend her complaint. ECF 57, Nov. 1, 2018. The amended complaint also added as named Plaintiffs three consumers (Craig Cunningham, Stewart Abramson, and James Everett Shelton) who alleged the receipt of calls from other DirecTV dealers who were brought into the action as defendants in the amended pleading. *Id.*

Calls to sell DirecTV continued, and Plaintiffs amended the complaint a second time, this time adding West Virginia residents David Vance, Roxie Vance, Russell Locke, and Thomas Stark as named Plaintiffs. ECF No. 151, Mar. 19, 2020.

More than two years after DirecTV's notice of appeal, and after full briefing and oral argument, the Fourth Circuit reversed and remanded this Court's arbitration ruling. ECF No. 171, Aug. 7, 2020. The Fourth Circuit directed this Court on remand to determine whether Plaintiff had waived argument that the arbitration provision was unconscionable, and to determine the unconscionability issue. *Id.*

### C. Remand, rulings on personal jurisdiction and ATDS, and DirecTV's second arbitration appeal.

Shortly after the Fourth Circuit's decision, DirecTV again moved to dismiss the complaint, asserting (1) Ms. Mey was obligated to arbitrate her claims, (2) the Court lacked personal jurisdiction over DirecTV with respect to the claims of Cunningham, Abramson, and Shelton, and  (3) Plaintiffs failed to state a claim that the calls were placed using an "automatic telephone dialing system" as defined in the TCPA. ECF No. 183, Oct. 23, 2020. The parties also filed briefs addressing the waiver and unconscionability issues that the Fourth Circuit directed

4

this Court to consider on remand. ECF Nos. 185, 191-192.

The Court ruled on the remanded arbitration issue, finding Ms. Mey did not waive her unconscionability argument, and that the arbitration provision was "overbroad, absurd, and unconscionable," and thus unenforceable. ECF No. 198, Feb. 12, 2021. Two weeks later, the Court ruled on the motion to dismiss, dismissing Plaintiffs Cunningham, Abramson, and Shelton for lack of personal jurisdiction, and finding that Plaintiffs had stated a claim for violations of the TCPA's ATDS provision. ECF No. 199, Feb. 25, 2021.

The Court's arbitration decision prompted DirecTV's second notice of appeal. ECF No. 202, March 11, 2021. Because DirecTV maintained that only Ms. Mey was subject to arbitration, Plaintiffs continued with the litigation in the district court while at the same time briefing the arbitration issue in the Fourth Circuit.

The next month, the United States Supreme Court decided *Facebook, Inc. v. Duguid,* 141 S. Ct. 1163 (2021), which narrowed the TCPA's definition of "automatic telephone dialing system." The Court granted Plaintiffs leave to amend their complaint to reflect the Court's prior dismissals of certain plaintiffs and defendants, and to conform their ATDS allegations to the *Facebook* standard. ECF No. 208, June 3, 2021. After full briefing on DirecTV's motion to dismiss, the Court agreed with DirecTV that the Plaintiffs had failed to satisfy the stringent ATDS definition announced in *Facebook.* ECF No. 238, August 18, 2021.

### D.  Continued discovery, depositions, and expert reports.

Because the Court dismissed Plaintiff Mey's only claim (the ATDS claim), the Court's earlier arbitration decision regarding Mey was rendered moot, and the appeal of that decision was terminated. ECF No. 269, February 22, 2022. Further, the Court's ATDS and personal jurisdiction dismissals left only Plaintiffs David and Roxie Vance and Carla Shultz remaining in

the case, and only on their Do Not Call Registry Claims arising out of calls by AC1. Fifth Am. Compl., ECF No. 275, February 23, 2022.

With Plaintiffs free to pursue their DNC claims against DirecTV, Plaintiffs continued with discovery in the spring of 2022, filing a partially successful motion to compel discovery (ECF No. 240), and deposing DirecTV three DirecTV officials and its Rule 30(b)(6) representative. ECF Nos. 305-308. Plaintiffs also produced expert reports from law professor and former director of the Federal Trade Commission's Bureau of Consumer Protection David Vladeck (TCPA safe harbor); door-to-door sales expert Kim Robinson (who testified that AC1 could not have generated the number of customers it generated through door-to-door sales and event marketing); and data management expert Anya Verkhovkaya, whose report addressed the methodology for identifying class members and class violations. All were deposed. DirecTV produced reports from Ken Sponsler (TCPA compliance/safe harbor) and Jennifer Smith (rebuttal to Ms. Verkhovskaya), which prompted Ms. Verkhovskaya to submit a rebuttal report.

### E.  Class certification, DirecTV's third arbitration appeal, and Rule 23(f) petition.

On April 11, 2022, supported by the Verkhovskaya report and the extensive factual record, Plaintiffs moved to certify a class consisting of "[a]ll persons within the United States (a) whose telephone numbers were listed on the Do Not Call Registry, and (b) who received more than one telemarketing call within any twelve-month period at any time from AC1, (c) to promote the sale of DirecTV." ECF No. 301. The class consists of 113,997 members, all of whom received two or more calls at numbers on the DNC Registry.

Just days before the Court issued its ruling granting Plaintiffs' motion and certifying the proposed class (ECF No. 341, Aug. 1, 2022), DirecTV moved a third time to compel arbitration, this time asserting that Plaintiff Carla Shultz was obligated to arbitrate her claims based on an

6

arbitration agreement executed by her husband, who was not a plaintiff in this case. ECF No.

340, July 29, 2022. The Court denied the Shulz arbitration motion (ECF No. 353, Aug. 25,

2022), prompting a *third* appeal from DirecTV. ECF No. 359, Sept. 9, 2022.

In the meantime, DirecTV petitioned the Fourth Circuit for leave to appeal the class

certification ruling under Federal Rule of Civil Procedure 23(f). ECF No. 348, Aug. 16, 2022.

DirecTV argued for appellate review to decide (1) whether the district court had personal

jurisdiction with respect to out-of-state absent class members, and (2) whether the district court

abused its discretion in its predominancy and adequacy findings. *DirecTV, LLC v. Vance*, No.

22-250 (ECF No. 2-1), August 15, 2022.

### F. DirecTV's motion to compel the class to arbitrate, the Fourth Circuit's grant of the Rule 23(f) petition, and this Court's stay pending appeals.

Back in the district court, DirecTV filed a *fourth* motion to compel arbitration, this time

after the close of discovery. ECF No. 365, Sept. 14, 2022. DirecTV asserted in this motion that

the Court must exclude from the certified class those class members subject to AT&T's

arbitration clause. *Id.* With a January 10, 2023 trial date looming, Plaintiffs moved the Court to

approve their plan to provide Rule 23(c)(2) notice of class certification to class members. ECF

354, Aug. 26, 2022.

Ultimately, because of the two pending appeals—the Shulz arbitration appeal, and the

Rule 23(f) petition—the Court *sua sponte* stayed the litigation and vacated its scheduling order.

ECF No. 366, Sept. 15, 2022. Just days later, Plaintiffs moved to reconsider the stay, asking the

Court to decide two issues bearing on the pending appeals: (1) the pending motion to compel

class members with AT&T contracts to arbitrate, and (2) DirecTV's motion to amend its answer

to assert lack of personal jurisdiction over absent class members. ECF No. 367, Sept. 19, 2022.

Plaintiffs argued that staying the proceedings before deciding these issues would likely generate

*a fifth* appeal after the Court of Appeals had ruled on the Shulz arbitration issue and class certification. *Id.* at 2. Plaintiffs maintained that leaving the stay in place without a ruling on the pending motions "would allow DirecTV to delay trial [which was set to begin just a few months away] as the Fourth Circuit works its way through one arbitration appeal and remands, only for this Court to rule on *another* arbitration motion that will almost certainly generate yet another appeal." *Id.* at 3.

The Court ordered accelerated briefing on DirecTV's motion to compel class members to arbitrate (ECF No. 369, Sept. 20, 2022), and shortly thereafter the Court of Appeals accepted DirecTV's Rule 23(f) petition. ECF 373, Oct. 4, 2023. The next month, this Court granted in part Plaintiffs' motion for reconsideration of the stay, and deferred a decision on DirecTV's motion to compel class arbitration until the Court of Appeals could decide the Shultz arbitration issue and the class certification appeal. ECF No. 382, November 9, 2022.

Although that order concluded the district court proceedings, the parties continued preparations for the Shulz arbitration and class certification appeals, with DirecTV's opening brief due January 30, 2023, and the completion of briefing that spring. No. 22-1958, ECF 20, Dec. 22, 2022.

### G.  Mediation

In the fall of 2022, while the multitude of developments were occurring in this Court and in the Court of Appeals, the parties began to discuss settlement. Delay was a real concern; Plaintiffs had lost their January 2023 trial date, and the Fourth Circuit's prior arbitration appeal had taken more than two years to resolve. Another contributing factor pointing to settlement was the possibility the Fourth Circuit could reverse the class certification decision now that it had accepted DirecTV's Rule 23(f) petition.

Ultimately, counsel agreed to mediate with experienced class action mediator Robert A. Meyer, with JAMS in Los Angeles. The parties convened in person there on December 14. No settlement was reached that day, but, through follow-up calls from Mr. Meyer throughout December and January, the parties reached the settlement presented in this motion. A term sheet was executed on January 27, and the formal settlement agreement on April 10. Exhibit 1, Class Action Settlement Agreement and Release ("SA" or "Settlement Agreement").

## III.    THE PROPOSED SETTLEMENT

### A.    Settlement relief.

The proposed settlement will establish a $16.85 million Settlement Fund.[1] Exhibit 1 ¶ 2.29. Settlement Costs—defined as court-approved attorneys' fees and costs, service awards, and costs to administer the settlement, *id.* ¶ 2.28—will be deducted from this amount to establish the Net Settlement Fund. *Id.* ¶ 2.16. Settlement Class Members who received calls from AC1 as reflected on its call records shall receive one "share" per qualifying call[2] identified in Anya Verkhovskaya's expert report, Dkt. 301-6. *Id.* 5.06.a. Each Settlement Class Member who submits a valid and timely claim will receive a pro-rata share calculated according to the following formula: (Net Settlement Fund) / (Total Number of shares held by Settlement Class Members who submit valid and timely claims) = (Pro-Rata Share). *Id.* 5.06.b. Each settlement check will be negotiable for 180 days. If that checks remain uncashed after 180 days yield an amount that, after deduction of administration costs, would allow a second distribution to the qualifying claimants who cashed their checks equal to or greater than $1.00 per qualifying

---

[1] Capitalized terms reflect the definitions stated in the Settlement Agreement.

[2] These are calls that allegedly violate the TCPA's do not call provisions. *See* 47 U.S.C. § 227(c) (authorizing suit by persons who receive two or more telephone solicitations on a number listed on the national Do Not Call Registry from or on behalf of the same entity in a 12-month period).

claimant, a second pro-rate distribution will be made. If the uncashed amount is not sufficient to allow a second pro-rate distribution, the remaining amount will be distributed to Consumer Action as the *cy pres* designee.

With the claims period not yet commenced, and motions for fees, costs, and service awards yet to be filed, there is no way to know what class members will receive. However, if 20% of the 113,997 class members submit valid and timely claims, and the Court awards the requested fees, expected litigation and settlement administration costs, and service awards, the average class member will receive a cash payment of $460.28, net of all fees and costs.[3]

## B.    Notice and administration

When Plaintiffs moved for class certification, they submitted a report from expert witness Anya Verkhovskaya. ECF 301. At Exhibit G to that report, Ms. Verkhovskaya identified 113,997 telephone numbers that received a total of 324,043 calls from DirecTV dealer AC1,

Persons associated with those numbers are the settlement class members. To identify 111,270 of these persons in order to distribute the class certification notice, Ms. Verkhovskaya

---

[3] This figure is determined as follows:

| | |
|---|---|
| Total Settlement: | $16,850,000 |
| Less one-third fee: | $5,526,000 |
| Less litigation costs: | $300,000 (estimated) |
| Less administration costs: | $500,000 (estimated) |
| Less $10,000 service awards: | $30,000 |
| **Net Settlement Fund:** | **$10,494,000** |

If 20% of the 113,997 class members submit valid claims, 22,799 claims would be submitted. Each class member received an average of 2.85 calls (324,943 class calls/113,997 class members). With a 20% claims rate and based on the 2.85 average number of calls per class member, the total number of claimed calls (or "shares") would be 64,977. The Net Settlement Fund ($10,494,000) divided by 64,977 calls = $161.50 per call. Because the average class member received 2.85 calls, the average class member would receive $460.28, net of all fees and expenses.

performed the analysis described in her earlier report, and produced an output listing the names and addresses associated with each number. ECF 354-5; SA ¶ 5.01.  Ms. Verkhovskaya will perform the same analysis to identify names and addresses tied to the remaining 2,727 class telephone numbers. *Id.* ¶ 5.02. She will also obtain email addresses for each of the persons associated with the 113,997 class telephone numbers. *Id.* ¶ 5.03.

With this information, the settlement administrator will mail notice to class members after updating the addresses via the United States Post Office's National Change of Address Database. *Id.* 9.02(a). If mail is returned as undeliverable, the administrator will conduct a reasonable search for a new address, and will update addresses based on any forwarding information received from the Post Office and any requests from class members. *Id.* The administrator will also send emailed notice and will maintain a dedicated settlement website. *Id.* § 9.03.

Plaintiffs, with the assent of Defendant, propose Kroll Settlement Administration, LLC ("Kroll") to serve as settlement administrator. A declaration from Robert DeWitte attesting to Kroll's qualifications and the proposed notice plan is attached as Exhibit 2. To cover initial costs of notice, the Settlement Agreement requires DirecTV to transfer $500,000 within ten days of preliminary approval. *Id.* ¶ 4.02.

## C.    Opt-out and objection procedures.

Class members will have sixty days from the notice date to exclude themselves from the class or object to the settlement. *Id.* ¶¶ 2.01, 11.01. Opt-out requests must be via signed writing from the class member, and include the name, address, contact telephone number, number on which class calls were received. *Id.* ¶ 11.02.a. Objections must also be in writing, and include the identifying information, factual and legal support for the objection, and other specified objection

requirements. *Id.* 11.03. Class members will also have sixty days after the notice date to object.

*Id.* ¶¶ 2.19, 11.03.

### D.    Release

Settlement class members who do not exclude themselves will provide the following release:

> Plaintiffs and each and all Settlement Class Members, on behalf of themselves and their respective heirs, executors, administrators, agents, attorneys, partners, successors, predecessors-in-interest, assigns, all those who claim through them or who assert or could assert claims on their behalf, and any customary or authorized users of their accounts or telephones shall release DIRECTV, LLC, AT&T Services, AT&T Mobility, their respective affiliates, and all Released Parties from any and all claims, causes of action, suits, obligations, debts, demands, agreements, promises, liabilities, damages, losses, controversies, costs, expenses, and attorneys' fees of any nature whatsoever, whether based on any federal law, state law, common law, territorial law, foreign law, contract, rule, regulation, any regulatory promulgation (including, but not limited to, any opinion or declaratory ruling), common law, or equity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, punitive or compensatory, as of January 27, 2022, that arise out of or relate in any way to telemarketing calls from AC1 received by Settlement Class Members through the date of final approval.

Exhibit 1 ¶ 13.01.

## IV.   ARGUMENT

### THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT AND APPROVE CLASS NOTICE

#### A.    At final approval, it is likely the Court will conclude the settlement is fair, reasonable, and adequate.

Under Rule 23(e)(1)(B), a court may "grant preliminary approval of a proposed class action settlement—and hence send notice of it to the class—as long as the moving parties demonstrate that the court 'will likely be able to' grant final approval to the settlement." Rubenstein, *Newberg on Class Actions* (6th ed.) § 13:14 (quoting Fed. R. Civ. P. 23(e)(1)(B)). In 2019, Rule 23 was amended to list the specific factors a court must consider in evaluating whether to approve a class

action settlement. A court may "authorize[] final approval only upon a showing that the settlement is 'fair, reasonable, and adequate,' made after a consideration of four factors." *Newberg,* § 13:14 (quoting Fed. R. Civ. P. 23(e)(5)). *Id.* The four factors are whether:

> **(A)** the class representatives and class counsel have adequately represented the class;
>
> **(B)** the proposal was negotiated at arm's length;
>
> **(C)** the relief provided for the class is adequate, taking into account:
>
>> **(i)** the costs, risks, and delay of trial and appeal;
>>
>> **(ii)** the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> **(iii)** the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> **(iv)** any agreement required to be identified under Rule 23(e)(3); and
>
> **(D)** the proposal treats class members equitably relative to each other.

*Id.*[4]

Plaintiffs address these factors below.

### 1. The Class has been adequately represented, and the settlement was negotiated at arms-length.

The Rule 23(e)(5)(A) and (B) factors of adequate representation and arms-length negotiation are procedural in nature, and do not look substantively at the settlement terms. This Court addressed adequacy of representation (23(e)(5)(A)) in its class certification order. As the Court stated then, adequacy of representation "requires that 'the representative parties will fairly and adequately protect the interests of the class.' Fed. R. Civ. P. 23(a)(4). This determination requires a two-pronged inquiry: (1) the named plaintiffs must not have interests antagonistic to those of the class; and (2) the plaintiffs' attorneys must be qualified, experienced and generally

---

[4] According to the leading treatise, these new provisions "essentially codified" the courts' prior jurisprudence governing preliminary settlement approval processes and standards, and therefore are "unlikely to generate a significant change in the settlement process or outcome." *Newberg* § 13:14.

able to conduct the litigation." ECF No. 341 at 17-18 (quoting *Hewlett v. Premier Salons, Int'l, Inc.* 185 F.R.D. 211, 218 (D. Md. 1997). The Court concluded "that the threshold for adequacy of representation has been met." ECF No. 341 at 18.

That adequacy finding has been borne out by the extraordinary lengths to which class counsel have gone to achieve this settlement, as outlined above. Further, the class representatives have maintained their obligations to diligently represent the class, responding to Defendant's discovery and sitting for lengthy depositions.

The requirement of arms-length negotiation generally looks to the procedural posture of the case to determine if it is the subject of legitimate, informed negotiations. *Newberg* § 13:14. As the Advisory Committee's notes to the 2018 amendments state, "[T]he nature and amount of discovery . . . may indicate whether counsel negotiating on behalf of the class had an adequate information base." Fed. R. Civ. P. 23(e)(2) Adv. Comm. note to 2018 amendment. Here, discovery not only had been completed when the parties negotiated this settlement, but so too had multiple appeals been briefed, argued, and resolved. Trial was only months away, and Plaintiffs had proposed and were prepared to carry out notice of the certification to all class members. And most notably, the Fourth Circuit had accepted DirecTV's petition for appeal of this Court's decision to certify the class, and consolidated that appeal with DirecTV's third arbitration-related appeal. All of this resulted in extraordinarily well-informed negotiations.

The delay risk was especially notable. A reversal of class certification would of course foreclose any possibility of a class recovery. But even a victory for the class on appeal would likely generate several more years of litigation, given the pendency in this Court of DirecTV's motion to compel the class to arbitrate. If the Court of Appeals affirmed this Court's certification decision, this Court would still have to resolve that arbitration motion, generating potentially another years-

long delay.

Another factor favoring a finding of the procedural adequacy of the settlement is that it was negotiated through the guidance of a respected and experienced mediator. As the Advisory Committee notes state, "the involvement of a neutral . . . in [the] negotiations may bear on whether they were conducted in a manner that would protect and further the class interests." *Id.*

Similarly, the settlement was negotiated by counsel experienced in TCPA class action litigation, with the three lead counsel bearing a combined 50+ years of experience in the field. *See In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Practice,* 952 F.3d 471, 484 (4th Cir. 2020) (a court considering whether to approve a class action settlement should consider "the experience of counsel in the relevant area of class action litigation."). *See also Muhammad*, 2008 WL 4382708, at *4 ("When the parties' attorneys are experienced and knowledgeable about the facts and claims, their representations to the court that the settlement provides class relief which is fair, reasonable and adequate should be given significant weight.") (cleaned up).

These factors combine to establish that this settlement was reached through arms-length, well-informed negotiations. From this procedural perspective, the settlement is likely to be approved at the final approval stage.

### 2.    The relief is adequate and treats all class members equitably.

The Rule 23(e)(5)(C) and (D) factors look at the substance of the settlement—the adequacy of its relief, and the equity of its distribution across the class. *Newberg* § 13:15.

The equity of its distribution is beyond question: every class member has the same claim, and every class member will receive the same amount of cash for each call in the class.

In determining adequacy, courts look to "the existence of any difficulties of proof or

strong defenses [that] the [class members were] likely to encounter if the claims proceeded to trial." *In re Lumber Liquidators,* 952 F.3d at 485 (cleaned up). Again, the Fourth Circuit's disposition of the class certification appeal was an existential issue for this class, and while Plaintiffs maintain that the district court properly certified the class, there is no assurance the Court of Appeals would have agreed, particularly considering the fact that the Fourth Circuit took the unusual step of accepting the interlocutory appeal in the first place. Plaintiffs likewise could have lost on arbitration issues either before this Court or the Court of Appeals, presenting another pretrial bar to recovery. And on the merits at trial, these claims against DirecTV were wholly dependent on a finding that AC1 acted as its agent, despite the fact that DirecTV's contract with AC1 prohibited outbound telemarketing, and the AC1 principal testified that he went to great lengths to hide his activities from DirecTV.

Another key factor supporting adequacy is, again, delay in getting to final judgment. Given the procedural posture, final judgment would require *at least* two more appeals in addition to the class certification/arbitration appeal. *See infra* at 14-15. The likelihood that this process would "likely drag on for years" is a significant factor supporting the adequacy of this settlement. *In re Lumber Liquidators,* 962 F.2d at 485 (quoting *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 933 (8th Cir. 2005)).

Finally, another indication of the adequacy of this settlement is the amount of recovery—an estimated $460 per class member at a 20% claims rate. Unlike the mandatory penalty of $500 for each violation of the statute's provisions governing prerecorded messages and autodialed robocalls (*see* 47 U.S.C. § 227(b)(5)), the claim at issue here—violation of the TCPA's Do Not Call provisions, provide only for penalties of "up to $500," *id.* § 227(c)(5), meaning any jury considering this case at some time years into the future the jury could award

16

any amount ranging from $1.00 or less to $500. *Krakauer v. Dish Network,* 925 F.3d 643, 649 (4th Cir. 2019). While the Court may treble any award from the jury if it finds the violations were willful or knowing, *id.,* such a finding is by no means assured, and in in any event, would be years away and dependent on Plaintiffs prevailing in multiple consecutive appeals.

**B.    Because the Court will likely conclude the settlement should be finally approved, the Court should approve the proposed notice plan, which meets all Rule-based and constitutional requirements.**

Rule 23(c)(2)(B) requires "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means." The Rule further requires that:

> The notice must clearly and concisely state in plain, easily understood language:
> (i) the nature of the action;
> (ii) the definition of the class certified;
> (iii) the class claims, issues, or defenses;
> (iv) that a class member may enter an appearance through an attorney if the member so desires;
> (v) that the court will exclude from the class any member who requests exclusion;
> (vi) the time and manner for requesting exclusion; and
> (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

*Id.*

The type of notice to which a member of a class is entitled depends upon the information available to the parties about that person, and the possible methods of identification. *See In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1098 (5th Cir. 1977) (*citing Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)). Here, Plaintiffs' expert witness Anya Verkhovskaya has identified names, addresses, telephone numbers, and email addresses for class members.

As the recent amendments to Rule 23's notice provisions allow, notice will be sent electronically, via email, and through first-class mail. "[D]ue process is satisfied 'where a fully descriptive notice is sent first-class mail to each class member, with an explanation of the right to opt out.'" *Domonoske*, 790 F. Supp. 2d at 472 (quoting *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985)).

Plaintiffs' proposed notice plan meets these requirements. The notice itself (Exhibit 1-A) is written in plain, easily understood language, and contains all required Rule 23(c)(2)(B) information.

## V. PROPOSED SETTLEMENT APPROVAL SCHEDULE

The last step in the settlement approval process is a final approval hearing at which the Court may hear all evidence and argument necessary to make its settlement evaluation.

Proponents of the settlement may explain the terms and conditions of the Settlement Agreement, and offer argument in support of final approval. The Court will determine after the final approval hearing whether the settlement should be approved, and whether to enter a final order and judgment under Rule 23(e).

Plaintiffs request that the Court set a date for a hearing on final approval at the Court's convenience, but no earlier than 180 days after entry of the preliminary approval order, and schedule further settlement proceedings pursuant to the schedule set forth below:

| ACTION | DATE |
|---|---|
| Preliminary Approval Order Entered | At the Court's Discretion |
| Notice Deadline | Within 30 days following entry of Preliminary Approval Order |

| Class Counsel's Fee Motion Submitted | Within 45 days following the Notice Deadline |
| Exclusion/Objection Deadline | 60 days after Notice Deadline |
| Deadline to Submit Claims | 60 days after Notice Deadline |
| Final Approval Brief and Response to Objections Due | Within 75 days after Notice Deadline |
| Final Approval Hearing/Noting Date | No earlier than 100 days after entry of preliminary approval order |
| Final Approval Order Entered | At the Court's Discretion |

## VI. CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court grant this Motion and enter the submitted Proposed Order, preliminarily approve the parties' proposed Settlement Agreement, and establish a schedule to complete the tasks necessary to effectuate the proposed settlement.

Dated:  April 25, 2023                           Respectfully Submitted,

                                                 /s/ John W. Barrett
                                                 John W. Barrett
                                                 Jonathan R. Marshall
                                                 Sharon F. Iskra
                                                 Benjamin Hogan
                                                 **BAILEY & GLASSER LLP**
                                                 209 Capitol Street
                                                 Charleston, WV  25301
                                                 Telephone: (304) 345-6555
                                                 jbarrett@baileyglasser.com
                                                 jmarshall@baileyglasser.com
                                                 siskra@baileyglasser.com
                                                 bhogan@baileyglasser.com

Matthew P. McCue
**The Law Office of Matthew P. McCue**
1 South Ave., Third Floor
Natick, MA 01760
Telephone: (508) 655-1415
mmcue@massattorneys.net

Edward A. Broderick
**Broderick Law, P.C.**
176 Federal Street, Fifth Floor
Boston, MA 02110
Telephone: (617) 738-7089
ted@broderick-law.com

*Counsel for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT FOR**
**THE NORTHERN DISTRICT OF WEST VIRGINIA**

**Wheeling Division**

**DAVID and ROXIE VANCE and**
**CARLA SHULTZ, individually**
**and on behalf of a class of all**
**persons and entities similarly situated,**

      **Plaintiffs,**

**vs.**                                  **Case No. 5:17-cv-00179-JPB**

**DIRECTV, LLC,**

      **Defendant.**

## CERTIFICATE OF SERVICE

I hereby certify that on the 25th day of April 2023, a copy of **PLAINTIFFS'**

**MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF**

**CLASS ACTION SETTLEMENT** was filed using CM/ECF, the Court's electronic notification

system, which provided notice to all counsel of record.

                                          */s/ John W. Barrett*
                                          John W. Barrett