**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF WEST VIRGINIA**

**WHEELING**

**DAVID and ROXY VANCE,
and CARLA SHULTZ individually
and on behalf of a class of all
persons and entities similarly situated,**

      **Plaintiffs,**

**vs.**                                      **Case No. 5:17-cv-00179-JPB**

**DIRECTV, LLC,**

**Defendant.**

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR
ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS**

# TABLE OF CONTENTS

<div align="right">

**Page**

</div>

Introduction.................................................................................................................. 1

Litigation history ........................................................................................................ 2

    A.   Diana Mey commences the action against DirecTV and two of its
        dealers, including AC1.................................................................................2

    B.   DirecTV's first arbitration appeal, and continued district court
        litigation. .....................................................................................................3

    C.   Remand, rulings on personal jurisdiction and ATDS, and DirecTV's
        second arbitration appeal. ...........................................................................3

    D.   Continued discovery, depositions, and expert reports....................................5

    E.   Class certification, DirecTV's third arbitration appeal, and Rule 23(f)
        petition. ......................................................................................................5

    F.   DirecTV's motion to compel the class to arbitrate, the Fourth Circuit's
        grant of the Rule 23(f) petition, and this Court's stay pending appeals. .........6

    G.   Mediation ....................................................................................................8

Argument .................................................................................................................... 8

    A.   An attorneys' fee award of one-third of the common fund is customary,
        reasonable and justified..................................................................................8

        1.   This Court awards fees based on the percentage of fund method. ...........8

        2.   A one-third fee is presumptively reasonable, and is regularly awarded
            by this Court and others...........................................................................9

        3.   A one-third fee is supported by consideration of the relevant factors...................11

            a.   Size of the fund and number of persons benefited ........................ 11

            b.   Objections.................................................................................... 12

            c.   The skill of the attorneys and the difficulty of the case ............... 13

            d.   Complexity and duration of the litigation .................................... 13

            e.   Risk of nonpayment...................................................................... 14

            f.   Amount of time devoted by Plaintiffs' counsel............................. 15

            g.   Awards in similar cases ................................................................ 16

        4.   A lodestar cross-check further demonstrates the reasonableness of a

one-third fee ...........................................................................................................16

B.   The proposed litigation costs award is reasonable and appropriate .................................17

C.   The proposed incentive awards are reasonable and appropriate .....................................17

Conclusion .................................................................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Abrams*,
    605 F.3d at 247 ...............................................................................................1, 12, 14, 15

*Adams v. AllianceOne Receivables Mgmt. Inc.*,
    No. 08-cv-00248, 2012 WL 12952683 (S.D. Cal., Sept. 28, 2012).........................................12

*Archbold v. Wells Fargo Bank*,
    No. 3:13-cv-24599, 2015 WL 4276295 (S.D. W. Va. July 14, 2015)....................................10

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980)..................................................................................................................8

*Cabiness v. Educ. Fin. Sols., LLC*,
    2019 WL 1369929 (N.D. Cal. Mar. 26, 2019).......................................................................12

*In re Capital One TCPA Litig.*,
    80 F. Supp. 3d 781 (N.D. Ill. 2015) ......................................................................................12

*Cather v. Seneca-Upshur Petroleum, Inc.*,
    No. 1:09–CV–0013, 2012 WL 12977984 (N.D. W. Va. May 31, 2012)................................10

*Craftwood Lumber Co. v. Interline Brands, Inc.*,
    No. 11-CV-4462, 2015 WL 1399367 (N.D. Ill. Mar. 23, 2015)............................................18

*In re Currency Conversion Fee Antitrust Litig.*,
    263 F.R.D. 110 (S.D.N.Y. 2009) ...........................................................................................18

*Dakota Medical, Inc. v. RehabCare Group, Inc.*,
    2017 WL 4180497 (E.D. Cal. 2017).......................................................................................10

*Deem v. Ames True Temper, Inc.*,
    2013 WL 2285972 (S.D. W.Va. 2013) ...................................................................................10

*Dijkstra v. Carenbauer*,
    No. 5:11–CV–00152, 2016 WL 6804980 (N.D. W.Va. July 12, 2016) (Bailey,
    J.)........................................................................................................................9, 11, 19

*Domonoske v. Bank of America, N.A.*,
    790 F. Supp. 2d 466 (W.D. Va. 2011) ....................................................................................16

*Facebook, Inc. v. Duguid*,
    141 S. Ct. 1163 (2021).............................................................................................................4

iv

*Grissom v. The Mills Corp.*,
    549 F.3d 313 (4th Cir. 2008) ...................................................................16

*Guarisma v. ADCAHB Med. Coverages, Inc.*,
    Case No. 1:13–cv–21016, Doc. 95 (S.D. Fla. June 24, 2015) ..................10

*Hageman v. AT & T Mobility LLC*,
    No. CV 13-50-BLG-RWA, 2015 WL 9855925 (D. Mont. Feb. 11, 2015) .....................10, 18

*Hoskins v. AB Resources, LLC*,
    5:12–cv–78, 2014 WL 12756365, at *3 (N.D. W. Va. Nov. 17, 2014) ...................................9

*Ikuseghan v. Multicare Health Sys.*,
    No. C14-5539 BHS, 2016 WL 4363198 (W.D. Wash. Aug. 16, 2016) ..................18

*Jones v. Dominion Res. Services, Inc.*,
    601 F. Supp. 2d 756 (S.D. W.Va. 2009) ..........................................................9, 16

*Jones v. I.Q. Data Int'l, Inc.*,
    No. 1:14-CV- 00130-PJK-RHS, 2015 WL 5704016 (D. N.M. Sept. 23, 2015)....................18

*Kolinek v. Walgreen Co.*,
    311 F.R.D. 483 (N.D. Ill. 2015)...............................................................10

*Kramer v. Autobytel*,
    No. 10-cv-02722, 2012 U.S. Dist. LEXIS 185800 (N.D. Cal. Jan. 27, 2012)........................11

*Krakauer v. Dish Network, LLC*,
    No. 1-14-333, 2018 WL 6305785, at *3 (M.D. N.C. Dec. 3, 2018) ...........................1, 10, 16

*Markos v. Wells Fargo Bank, N.A.*,
    2017 WL 416425 (N.D. Ga. Jan. 30, 2017)..........................................................12

*Martin v. Dun & Bradstreet, Inc.*,
    No. 1:12-cv-215, 2014 WL 9913504 (N.D. Ill. Jan. 16, 2014)...............................18

*Mey v. Patriot Payment Group, LLC*, Civil Action No. 5:15-CV-00027-JPB
    Final Approval Order ..........................................................................10, 18

*Mey v. Venture Data, LLC*, Civil Action No. 5:14-CV-00123-JPB
    Final Approval Order ..........................................................................10, 18

*In re Monitronics International, Inc., Telephone Consumer Protection Act Litigation*,
    No. 1:13-md-02493, Final Approval Order ..........................................9, 10, 11, 18

*Muhammad v. Nat'l City Mortg., Inc*.,
    2:07-0423, 2008 WL 5377783 (S.D. W.Va. Dec. 19, 2008) .............................9, 11

*Palmer v. Sprint Nextel Corp.*,
   No. 09-cv-01211, 2011 WL 13238842 (W.D. Wash. Oct. 21, 2011).....................................12

*Phillips v. Triad Guar. Inc.*,
   No. 1:09CV71, 2016 WL 2636289 (M.D.N.C. May 9, 2016)..........................................1, 9, 16

*Ritchie v. Van Ru Credit Corp.*,
   No. CV-12-1714-PHX-SMM, 2014 WL 956131 (D. Ariz. Mar. 12, 2014)..........................18

*Singleton v. Domino's Pizza, LLC*,
   976 F. Supp.2d 665 (D. Md. 2013)..........................................................................................16

*Smith v. Res-Care, Inc.*,
   No. 3:13-5211, 2015 WL 6479658 (S.D. W.Va. October 27, 2015)......................................16

*Steinfeld v. Discover Fin. Servs.*,
   No. C 12-01118, 2014 WL 1309352 (N.D. Cal. Mar. 10, 2014)............................................12

*Triplett v. Nationstar Mortg., LLC*,
   No. 3:11-cv-238 (S.D. W. Va. 2012).......................................................................................10

*Vandervort v. Balboa Capital Corp.*,
   8 F. Supp. 3d 1200 (C.D. Cal. 2014).......................................................................................10

*Wright et al. v. eXp Realty, LLC*,
   No. 6:18-cv-01851-PGB-EJK, ECF No. 230 (M.D. Fla. Oct. 26, 2022)................................10

**Rules**

Fed. R. Civ. P. 23(h)......................................................................................................................12

**Introduction**

After prosecuting this case without payment for more than five years — through the completion of all fact and expert discovery, four appeals, and a contested (and appealed) grant of class certification — Class Counsel negotiated an outstanding settlement expected to pay at least $460 to each claiming class member. Class Counsel now request an attorneys' fee award of one-third of the $16.85 million common fund settlement.

A one-third fee is the "typical" award in settled TCPA cases, *Krakauer v. Dish Network, LLC,* No. 1-14-333, 2018 WL 6305785, at *3 (M.D. N.C. Dec. 3, 2018), and is particularly justified considering the excellent result obtained, "the most critical factor" in determining a fee award. *In re Abrams & Abrams, P.A.*, 605 F.3d 238, 247 (4th Cir. 2010). Its reasonableness is further supported by the fact that the requested fee constitutes a 1.86 multiplier of Class Counsels' multiyear time investment in the litigation, a figure that falls below the 2-4.5 multiplier found reasonable in many other cases. *Phillips v. Triad Guar. Inc.,* No. 1:09CV71, 2016 WL 2636289, at *8 (M.D. N.C. May 9, 2016).

Plaintiffs also request reimbursement of $330,975 in expenses, and $10,000 service awards to each of the three class representatives whose participation made the outstanding result possible, an amount well within the range awarded by this Court and others in similar cases, as discussed below.

1

## Litigation history

### A. Diana Mey commences the action against DirecTV and two of its dealers, including AC1.

Plaintiffs' counsel began working on this hard-fought case more than five-and-a-half years ago, when Wheeling resident Diana Mey commenced the action on December 11, 2017. ECF No. 1. She alleged that on August 12, 2017, DirecTV authorized dealer AC1 made an autodialed telephone call, the purpose of which was to sell DirecTV subscriptions, to Ms. Mey's cellular telephone number that she had previously listed on the National Do Not Call Registry. *Id.* ¶¶ 22-23. She also alleged that on two other occasions that month, she received prerecorded telemarketing calls from DirecTV dealer IQ Marketing 2, Corp., d/b/a Pacificom, on that same telephone number. *Id.* ¶¶ 31-35. On behalf of a putative class, she alleged three claims under the Telephone Consumer Protection Act: violation of the statute's prohibition on autodialed calls to cellular telephone calls (Count One); violation of the statute's ban on prerecorded calls to residential phones (Count Two); and solicitation calls to numbers on the National Do Not Call Registry (Count Three). *Id.* ¶¶ 74-82. DirecTV was named a defendant under a vicarious liability theory. *Id.* ¶¶ 45-60. IQ Marketing 2 and AC1 also were named defendants.

AC1 and its principal Adam Cox answered the complaint. ECF No. 25, March 26, 2018. In lieu of an answer, DirecTV moved to compel arbitration, asserting that Ms. Mey, whose cellular service was provided by AT&T Mobility LLC, was bound by her customer service agreement to arbitrate all claims against corporate affiliates of AT&T, Inc., including DirecTV. ECF No. 15, Feb. 16, 2018, at 1-2. The Court denied that motion, finding the scope of the AT&T arbitration agreement did not extend to Ms. Mey's TCPA claims against DirecTV. ECF No. 28, Apr. 25, 2018, at 14.

**B.  DirecTV's first arbitration appeal, and continued district court litigation.**

DirecTV appealed the denial of its arbitration motion—the first of its four arbitration-related appeals. ECF No. 31, May 11, 2018. Concurrently, Plaintiff continued to obtain discovery from Defendant AC1 after the Court denied AC1's motion to stay proceedings pending the outcome of the DirecTV's appeal. ECF No. 46, July 25, 2018. During this timeframe, Ms. Mey continued to receive telemarketing calls promoting DirecTV, prompting her to amend her complaint. ECF 57, Nov. 1, 2018. The amended complaint also added as named Plaintiffs three consumers (Craig Cunningham, Stewart Abramson, and James Everett Shelton) who alleged the receipt of calls from other DirecTV dealers who were brought into the action as defendants in the amended pleading. *Id.*

Calls to sell DirecTV continued, and Plaintiffs amended the complaint a second time, this time adding West Virginia residents David Vance, Roxie Vance, Russell Locke, and Thomas Stark as named Plaintiffs. ECF No. 151, Mar. 19, 2020.

More than two years after DirecTV's notice of appeal, and after full briefing and oral argument, the Fourth Circuit reversed and remanded this Court's arbitration ruling. ECF No. 171, Aug. 7, 2020. The Fourth Circuit directed this Court on remand to determine whether Plaintiff had waived argument that the arbitration provision was unconscionable, and to determine the unconscionability issue. *Id.*

**C.  Remand, rulings on personal jurisdiction and ATDS, and DirecTV's second arbitration appeal.**

Shortly after the Fourth Circuit's decision, DirecTV again moved to dismiss the complaint, asserting (1) Ms. Mey was obligated to arbitrate her claims, (2) the Court lacked personal jurisdiction over DirecTV with respect to the claims of Cunningham, Abramson, and

Shelton, and (3) Plaintiffs failed to state a claim that the calls were placed using an "automatic telephone dialing system" as defined in the TCPA. ECF No. 183, Oct. 23, 2020. The parties also filed briefs addressing the waiver and unconscionability issues that the Fourth Circuit directed this Court to consider on remand. ECF Nos. 185, 191-192.

The Court ruled on the remanded arbitration issue, finding Ms. Mey did not waive her unconscionability argument, and that the arbitration provision was "overbroad, absurd, and unconscionable," and thus unenforceable. ECF No. 198, Feb. 12, 2021. Two weeks later, the Court ruled on the motion to dismiss, dismissing Plaintiffs Cunningham, Abramson, and Shelton for lack of personal jurisdiction, and finding that Plaintiffs had stated a claim for violations of the TCPA's ATDS provision. ECF No. 199, Feb. 25, 2021.

The Court's arbitration decision prompted DirecTV's second notice of appeal. ECF No. 202, March 11, 2021. Because DirecTV maintained that only Ms. Mey was subject to arbitration, Plaintiffs continued with the litigation in the district court while at the same time briefing the arbitration issue in the Fourth Circuit.

The next month, the United States Supreme Court decided *Facebook, Inc. v. Duguid,* 141 S. Ct. 1163 (2021), which narrowed the TCPA's definition of "automatic telephone dialing system." The Court granted Plaintiffs leave to amend their complaint to reflect the Court's prior dismissals of certain plaintiffs and defendants, and to conform their ATDS allegations to the *Facebook* standard. ECF No. 208, June 3, 2021. After full briefing on DirecTV's motion to dismiss, the Court agreed with DirecTV that the Plaintiffs had failed to satisfy the stringent ATDS definition announced in *Facebook.* ECF No. 238, August 18, 2021.

### D.  Continued discovery, depositions, and expert reports.

Because the Court dismissed Plaintiff Mey's only claim (the ATDS claim), the Court's earlier arbitration decision regarding Mey was rendered moot, and the appeal of that decision was terminated. ECF No. 269, February 22, 2022. Further, the Court's ATDS and personal jurisdiction dismissals left only Plaintiffs David and Roxie Vance and Carla Shultz remaining in the case, and only on their Do Not Call Registry Claims arising out of calls by AC1. Fifth Am. Compl., ECF No. 275, February 23, 2022.

With Plaintiffs free to pursue their DNC claims against DirecTV, Plaintiffs continued with discovery in the spring of 2022, filing a partially successful motion to compel discovery (ECF No. 240), and deposing DirecTV three DirecTV officials and its Rule 30(b)(6) representative. ECF Nos. 305-308. Plaintiffs also produced expert reports from law professor and former director of the Federal Trade Commission's Bureau of Consumer Protection David Vladeck (TCPA safe harbor); door-to-door sales expert Kim Robinson (who testified that AC1 could not have generated the number of customers it generated through door-to-door sales and event marketing); and data management expert Anya Verkhovskaya, whose report addressed the methodology for identifying class members and class violations. All were deposed. DirecTV produced reports from Ken Sponsler (TCPA compliance/safe harbor) and Jennifer Smith (rebuttal to Ms. Verkhovskaya), which prompted Ms. Verkhovskaya to submit a rebuttal report.

### E.  Class certification, DirecTV's third arbitration appeal, and Rule 23(f) petition.

On April 11, 2022, supported by the Verkhovskaya report and the extensive factual record, Plaintiffs moved to certify a class consisting of "[a]ll persons within the United States (a) whose telephone numbers were listed on the Do Not Call Registry, and (b) who received more than one telemarketing call within any twelve-month period at any time from AC1, (c) to

promote the sale of DirecTV." ECF No. 301. The class consists of 113,997 members, all of whom received two or more calls at numbers on the DNC Registry.

Just days before the Court issued its ruling granting Plaintiffs' motion and certifying the proposed class (ECF No. 341, Aug. 1, 2022), DirecTV moved a third time to compel arbitration, this time asserting that Plaintiff Carla Shultz was obligated to arbitrate her claims based on an arbitration agreement executed by her husband, who was not a plaintiff in this case. ECF No. 340, July 29, 2022. The Court denied the Shultz arbitration motion (ECF No. 353, Aug. 25, 2022), prompting a *third* appeal from DirecTV. ECF No. 359, Sept. 9, 2022.

In the meantime, DirecTV petitioned the Fourth Circuit for leave to appeal the class certification ruling under Federal Rule of Civil Procedure 23(f). ECF No. 348, Aug. 16, 2022. DirecTV argued for appellate review to decide (1) whether the district court had personal jurisdiction with respect to out-of-state absent class members, and (2) whether the district court abused its discretion in its predominancy and adequacy findings. *DirecTV, LLC v. Vance*, No. 22-250 (ECF No. 2-1), August 15, 2022.

## F. DirecTV's motion to compel the class to arbitrate, the Fourth Circuit's grant of the Rule 23(f) petition, and this Court's stay pending appeals.

Back in the district court, DirecTV filed a *fourth* motion to compel arbitration, this time after the close of discovery. ECF No. 365, Sept. 14, 2022. DirecTV asserted in this motion that the Court must exclude from the certified class those class members subject to AT&T's arbitration clause. *Id.* With a January 10, 2023 trial date looming, Plaintiffs moved the Court to approve their plan to provide Rule 23(c)(2) notice of class certification to class members. ECF 354, Aug. 26, 2022.

Ultimately, because of the two pending appeals—the Shulz arbitration appeal, and the Rule 23(f) petition—the Court *sua sponte* stayed the litigation and vacated its scheduling order. ECF No. 366, Sept. 15, 2022. Just days later, Plaintiffs moved to reconsider the stay, asking the Court to decide two issues bearing on the pending appeals: (1) the pending motion to compel class members with AT&T contracts to arbitrate, and (2) DirecTV's motion to amend its answer to assert lack of personal jurisdiction over absent class members. ECF No. 367, Sept. 19, 2022. Plaintiffs argued that staying the proceedings before deciding these issues would likely generate *a fifth* appeal after the Court of Appeals had ruled on the Shulz arbitration issue and class certification. *Id.* at 2. Plaintiffs maintained that leaving the stay in place without a ruling on the pending motions "would allow DirecTV to delay trial [which was set to begin just a few months away] as the Fourth Circuit works its way through one arbitration appeal and remands, only for this Court to rule on *another* arbitration motion that will almost certainly generate yet another appeal." *Id.* at 3.

The Court ordered accelerated briefing on DirecTV's motion to compel class members to arbitrate (ECF No. 369, Sept. 20, 2022), and shortly thereafter the Court of Appeals accepted DirecTV's Rule 23(f) petition. ECF 373, Oct. 4, 2023. The next month, this Court granted in part Plaintiffs' motion for reconsideration of the stay, and deferred a decision on DirecTV's motion to compel class arbitration until the Court of Appeals could decide the Shultz arbitration issue and the class certification appeal. ECF No. 382, November 9, 2022.

Although that order concluded the district court proceedings, the parties continued preparations for the Shulz arbitration and class certification appeals, with DirecTV's opening brief due January 30, 2023, and the completion of briefing that spring. No. 22-1958, ECF 20, Dec. 22, 2022.

### G.  Mediation

In the fall of 2022, while the multitude of developments were occurring in this Court and in the Court of Appeals, the parties began to discuss settlement. Delay was a real concern; Plaintiffs had lost their January 2023 trial date, and the Fourth Circuit's prior arbitration appeal had taken more than two years to resolve. Another contributing factor pointing to settlement was the possibility the Fourth Circuit could reverse the class certification decision now that it had accepted DirecTV's Rule 23(f) petition.

Ultimately, counsel agreed to mediate with experienced class action mediator Robert A. Meyer, with JAMS in Los Angeles. The parties convened in person there on December 14. No settlement was reached that day, but, through follow-up calls from Mr. Meyer throughout December and January, the parties reached the settlement presented in this motion. A term sheet was executed on January 27, and the formal settlement agreement on April 10.

### Argument

### A.  An attorneys' fee award of one-third of the common fund is customary, reasonable and justified.

#### 1.  This Court awards fees based on the percentage of fund method.

The common fund doctrine is one of the earliest recognized exceptions to the "American Rule," which generally requires that litigants bear their own costs and attorney's fees. Premised on the equitable power of the court, the common fund doctrine allows a person who maintains a suit that results in the creation of a fund in which others have a common interest, to be reimbursed from that fund for the litigation expenses incurred. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).

This Court and others in the Fourth Circuit "overwhelmingly" prefer the percentage method in common-fund cases, *Phillips v. Triad Guar. Inc.,* No. 1:09CV71, 2016 WL 2636289, at \*2 (M.D.N.C. May 9, 2016), and "the vast majority of courts of appeals now permit or direct district courts to use" this method. Manual for Complex Litigation § 14.121 (4th ed. 2011), at n.483, n.484, n.485 (listing cases by circuit); *In re Monitronics International, Inc., Telephone Consumer Protection Act Litigation,* No. 1:13-md-02493, Final Approval Order and Judgment (ECF 1214) at 11 ("Monitronics Final Approval Order") (N.D. W. Va., June 12, 2018) (Bailey, J.) (citing *Dijkstra v. Carenbauer,* No. 5:11–CV–00152, 2016 WL 6804980, at \*4 (N.D. W.Va. July 12, 2016) (Bailey, J.) (approving settlement and attorneys' fee application in consumer class action); *Muhammad v. Nat'l City Mortg.*, *Inc.*, 2:07-0423, 2008 WL 5377783, at \*6 (S.D. W.Va. Dec. 19, 2008) ("Where there is a common fund in a class settlement, application of a percentage method to calculate an attorney's fee award is now favored."); *Hoskins v. AB Resources, LLC,* 5:12–cv–78, 2014 WL 12756365, at \*3 (N.D. W. Va. Nov. 17, 2014) ("The contingent or percentage method is now the preferred method to be used in determining attorneys' fees in a class action case")). The percentage method "better aligns the interests of class counsel and class members because it ties the attorneys' award to the overall result achieved rather than the hours expended." *Jones v. Dominion Res. Services, Inc.*, 601 F. Supp. 2d 756, 758-59 (S.D. W.Va. 2009), *citing* Third Circuit Task Force Report, *Selection of Class Counsel,* 208 F.R.D. 340, 355 (Jan. 15, 2002).

### 2. A one-third fee is presumptively reasonable, and is regularly awarded by this Court and others.

State and federal courts in West Virginia recognize the presumptive reasonableness of an attorney's fee equal to one-third of a class recovery. *Dijkstra*, 2016 WL 6804980, at \*5 (N.D. W.Va. 2016) (approving fee request of one-third of the settlement fund, noting that one-third is

presumptively reasonable in West Virginia), *citing Eriksen Const. Co., Inc. v. Morey*, 923 F. Supp. 878, 881 (S.D. W. Va. 1996)).

And based at least in part on that presumption, this Court and others have regularly awarded one-third fees in TCPA cases and other class action litigation. *Mey v. Venture Data, LLC,* Final Approval Order and Judgment (ECF No. 313) ("Venture Data Final Approval Order"), No. 5:14-CV-123 (N.D. W. Va. Sept. 6. 2018) (Bailey, J.) (one-third fee in $2.1 million TCPA settlement); *Mey v. Patriot Payment Group, LLC,* Final Approval Order and Judgment (ECF No. 127) ("Patriot Payment Group Final Approval Order"), No. 5:15-CV-00027 (N.D. W. Va. July 26, 2017) (Bailey, J.) (one-third fee in $3.7 million TCPA settlement). *But see Monitronics Final Approval Order* at 4, 11 (in $28 million TCPA settlement paying an estimated $38 to claiming class members, awarding a 29.6% fee). *See also Krakauer,* 2018 WL 6305785, at *3 (noting that in settled TCPA cases, "courts have typically awarded one-third of the settlement fund to cover attorneys' fees," and awarding attorneys' fees of one-third of a $61 million judgment) (collecting cases).[1]

---

[1] *See also, e.g., Dakota Medical, Inc. v. RehabCare Group, Inc.*, 2017 WL 4180497, at *9 (E.D. Cal. 2017) (one-third of $25 million TCPA settlement fund); *Wright et al. v. eXp Realty, LLC*, No. 6:18-cv-01851-PGB-EJK, ECF No. 230 (M.D. Fla. Oct. 26, 2022) (one-third of the $26.9 million monetary relief and less than one-third of the total settlement value when including other non-monetary benefits to class members); *Archbold v. Wells Fargo Bank,* No. 3:13-cv-24599, 2015 WL 4276295, at *1 (S.D. W. Va. July 14, 2015) (awarding class counsel one-third of the settlement in a consumer class action); *Guarisma v. ADCAHB Med. Coverages, Inc.,* Case No. 1:13–cv–21016, Doc. 95 (S.D. Fla. June 24, 2015) (one-third of the $4,500,000.00 settlement fund); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 503 (N.D. Ill. 2015) (36% of common fund in TCPA case); *Hageman v. AT & T Mobility LLC*, No. CV 13-50-BLG-RWA, 2015 WL 9855925, at *4 (D. Mont. Feb. 11, 2015) (awarding attorney's fees in TCPA class action in the amount of $15 million, or one-third of the common fund recovery); *Vandervort v. Balboa Capital Corp.*, 8 F. Supp. 3d 1200, 1210 (C.D. Cal. 2014) (33% in TCPA case); *Deem v. Ames True Temper, Inc.,* 2013 WL 2285972, at *5 (S.D. W.Va. 2013) (one-third fee in insurance class action); *Cather v.*

### 3. A one-third fee is supported by consideration of the relevant factors.

This Court has considered certain factors in analyzing the reasonableness of fees determined by the percentage of recovery method. *Dijkstra*, 2016 WL 6804980, at *5; *see also Muhammad*, 2008 WL 5377783, at *8. These factors include:

> (1) the size of the fund created and the number of persons benefited; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

*Id.* (*citing In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 733 (3rd Cir. 2001)).

Each is discussed below, and each fully support a one-third fee.

#### a. *Size of the fund and number of persons benefited*

Here, the $16.85 million settlement fund will benefit 113,997 class members. While precise figures will not be known until the conclusion of the claims period, if 20% of the class submits valid claims, each approved claimant will receive an estimated award in the amount of $460, net of fees and costs. *See* Declaration of John W. Barrett, attached as Exhibit 1, ¶ 3 ("Barrett Decl.").

This amount compares very favorably to other TCPA class action settlements involving similarly-sized classes. *See, e.g., Monitronics* Final Approval Order at 4 ($28 million settlement fund estimated to pay $38 to each claiming class member); *Kramer v. Autobytel*, No. 10-cv-

---

*Seneca-Upshur Petroleum, Inc.*, No. 1:09–CV–0013, 2012 WL 12977984, at *4 (N.D. W. Va. May 31, 2012) (*citing Nationwide v. O'Dell,* Circuit Court of Roane County, approving a one-third contingent fee in a $75,000,000 class action settlement). *Triplett v. Nationstar Mortg., LLC,* No. 3:11-cv-238 (S.D. W. Va. 2012) (one-third fee in consumer class action).

02722, 2012 U.S. Dist. LEXIS 185800 (N.D. Cal. Jan. 27, 2012) (approving $12.2 million settlement to benefit 47 million class members); *Palmer v. Sprint Nextel Corp.*, No. 09-cv-01211, 2011 WL 13238842, at *4 (W.D. Wash. Oct. 21, 2011) (approving $5.5 million settlement to benefit 18.1 million class members); *Adams v. AllianceOne Receivables Mgmt. Inc.*, No. 08-cv-00248, 2012 WL 12952683, at *3 (S.D. Cal., Sept. 28, 2012) (approving $9 million settlement to benefit 6.7 million class members). The estimated individual award of $460 per approved claimant far exceeds other TCPA settlements. *See, e.g., Steinfeld v. Discover Fin. Servs.*, No. C 12-01118, 2014 WL 1309352, at *6 (N.D. Cal. Mar. 10, 2014) (approving settlement with payments estimated to be between $20 and $40; actual payments were $46.98); *In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) (claimants recovered approximately $30 each); *Markos v. Wells Fargo Bank, N.A.*, 2017 WL 416425, at *4 (N.D. Ga. Jan. 30, 2017) (direct liability; $24 per claimant; deemed an "excellent result"); *Cabiness v. Educ. Fin. Sols., LLC*, 2019 WL 1369929 (N.D. Cal. Mar. 26, 2019) (direct liability; $33.36 per claimant).

This excellent result obtained is "the most critical factor in determining the reasonableness of a fee award." *In re Abrams*, 605 F.3d at 247 (internal quotation omitted); *see also* Fed. R. Civ. P. 23(h) advisory committee notes to 2003 amendments (explaining that the "fundamental focus" in determining a common fund attorney's fee award "is the result actually achieved for class members").

The outstanding result obtained for the class strongly supports a one-third fee.

### b.  Objections

The deadline for objections is August 7, 2023, so this factor is not discussed here.

### c.   *The skill of the attorneys and the difficulty of the case*

This settlement was achieved only after a five-year battle against a well-funded opponent represented by one of the largest law firms in the country, and required deployment of nearly all the skills required for successful prosecution of complex litigation: briefing, oral advocacy, discovery development, appellate advocacy, and negotiation. Over thirty contested motions were briefed, including three motions to dismiss, a successful motion for class certification, as well as four appeals to the Fourth Circuit. The case required extensive discovery, including twelve depositions and voluminous document production and review, as well as expert testimony to analyze voluminous call record data in the case. The parties participated in a full-day mediation session conducted by Robert Meyer of JAMS in Los Angeles and continued negotiating with the assistance of Mr. Meyer over a two-month period which culminated in the Settlement Agreement which the Court has preliminarily approved.

Class Counsel have successfully prosecuted dozens of TCPA class actions, and were well-suited for the challenges presented, and for funding the litigation without payment for years. *See* Barrett Decl. ¶ 2; Decl. of Matthew P. McCue ("McCue Decl."), attached as Exhibit 2, ¶¶ 3-12; Decl. of Edward A. Broderick ("Broderick Decl."), attached as Exhibit 3, ¶¶ 2-13; Decl. of Anthony I. Paronich ("Paronich Decl."), attached as Exhibit 4, ¶¶ 3-11.

### d.   *Complexity and duration of the litigation*

As the extensive procedural history *supra* at 1-8 demonstrates, the case was highly complex, involving multiple dispositive motions, contested (and successful) class certification motions, and four appeals. Further, Class Counsel have litigated this case for five-and-a-half years without payment. This factor strongly supports a one-third fee.

### e. *Risk of nonpayment*

Plaintiffs bore an extraordinary risk of loss here, and could have seen their investment of time and money evaporate at any number of junctures, including risk of loss (1) on three motions to dismiss; (2) on class certification; (3) on class certification appeal, a particularly concerning possibility given the Fourth Circuit's grant of DirecTV's petition for appeal of the Court's grant of class certification; (4) on summary judgment; (5) at trial; and (6) on post-trial appeal.

Even if Plaintiffs were successful in defending class certification on appeal, prevailing on the merits at trial was by no means a foregone conclusion. Plaintiffs' case required proof that DirecTV was vicariously liable for the actions of its dealer, AC1 Communications. DirecTV strongly contested vicarious liability, pointing to its policy against outbound telemarketing as well as deposition testimony from Adam Cox, the principal of AC1 Communications claiming he had hid his telemarketing from his DirecTV supervisor. If the jury adopted a narrow view of DirecTV's vicarious liability, the value of this case to Class Members would have dropped virtually to zero.

The Fourth Circuit has strongly emphasized the importance of weighing risk when evaluating a fee award in a contingency case. *Abrams*, 605 F.3d at 245. *Abrams* involved the appeal of a district court's decision to reduce the attorneys' fees payable under an $18 million settlement from the one-third contained in the parties' contingency fee agreement, to three percent of the total. *Id.* at 242. In vacating and remanding the decision, the Fourth Circuit focused on the "chief error" in the district court's analysis – its failure to "recognize the significance of the contingency fee." *Id.* at 245. "[C]ontingency fees provide access to counsel for individuals who would otherwise have difficulty obtaining representation" and "provide attorneys due consideration for the risk they undertake." *Id.* at 245-46. The court stressed that

14

without a percentage fee that compensates attorneys for risk, "many attorneys [would be] unwilling to accept the risk of nonpayment" if "the reward for accepting a contingency case is merely payment at the same rate they could obtain risk-free for hourly work, while their downside is no payment whatsoever." *Id.* at 246.

All of these same considerations support a one-third fee. But for the enormous risk of loss assumed by class counsel, and class counsel's willingness to invest their time and money in prosecuting the claims for the class, this case never would have been brought, the purposes of the TCPA's purposes never vindicated, and the class members never paid.

### f.   Amount of time devoted by Plaintiffs' counsel

Class counsel have invested a combined $3,020,362.50 hours in attorney and paralegal time in the case, as well as $330,975 in expenses. In summary[2]:

| Firm | Hours | Fees |
|------|-------|------|
| Bailey & Glasser | 3,135.25 | $1,612,707.50 |
| Law Office of Matthew P. McCue | 980 | $784,000 |
| Broderick Law | 603.7 | $472,385 |
| Paronich Law | 277.8 | $151,270 |
| TOTAL | 4,996.75 | $3,020,362.50 |

---

[2] *See* Declaration of John W. Barrett ("Barrett Decl."), attached as Exhibit 1, Declaration of Matthew P. McCue ("McCue Decl."), attached as Exhibit 2, ¶¶ 4; Declaration of Edward A. Broderick ("Broderick Decl."), attached as Exhibit 3, ¶ 7; Declaration of Anthony I. Paronich ("Paronich Decl."), attached as Exhibit 4, ¶ 6.

15

g.   *Awards in similar cases*

This factor is discussed *infra* at 9-10, where Plaintiffs list numerous recent fee decisions awarding fees of one-third of the common fund.

**4.   A lodestar cross-check further demonstrates the reasonableness of a one-third fee**

Some courts use a "lodestar crosscheck" to confirm the reasonableness of a percentage-based fee.  *Jones,* 601 F. Supp. 2d at 756, 759 (collecting cases). To determine lodestar, courts multiply the reasonable hourly rate for each attorney by the number of hours reasonably expended. *Grissom v. The Mills Corp*., 549 F.3d 313, 320 (4th Cir. 2008). "When the lodestar method is used only as a cross-check, however, courts need not 'exhaustively scrutinize[ ]' the hours documented by counsel and 'the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case.'" *Krakauer,* 2018 WL 6305785, *5 (quoting *Goldberger v. Integrated Res., Inc.,* 209 F.3d 43, 50 (2d Cir. 2000).

Here, the requested fee is amply supported by the lodestar multiplier crosscheck of 1.86. "Courts have found that lodestar multipliers ranging from 2 to 4.5 demonstrate the reasonableness of a requested percentage fee." *Phillips*, 2016 WL 2636289, at *8; *Jones v. Dominion Resources Services, Inc.*, 601 F. Supp. 2d 756, 766 (S.D. W. Va. 2009) ("[c]ourts have generally held that lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorney's fee"; approving fee with multiplier of 3.4) (citations omitted); *see also Smith v. Res-Care, Inc.,* No. 3:13-5211, 2015 WL 6479658, at *7 (S.D. W.Va. October 27, 2015) (approving fee of one-third, with lodestar cross check of 1.15, citing range of 2 to 4.5); *Singleton v. Domino's Pizza, LLC*, 976 F. Supp.2d 665, 689 (D. Md. 2013) (lodestar multipliers "on large and complicated class actions have ranged from at least 2.26 to 4.5); *Domonoske v. Bank of America,*

*N.A.*, 790 F. Supp. 2d 466, 476 (W.D. Va. 2011) (approving multiplier of 1.8, which was easily within range of other cases).

### B.  The proposed litigation costs award is reasonable and appropriate

The Settlement Agreement provides that Class Counsel may seek actual litigation costs incurred in the prosecution of this Action, to be paid from the Settlement Amount. The Notice advised class members that Class Counsel will seek to recover approximately $300,000 in out-of-pocket expenses. Docket 389-1, ¶ 18. Between all firms, the total costs were $330,975, in line with the anticipated costs referenced in the Notice. Barrett Decl. ¶ 6. The cost items include data storage costs, expert witness and investigator costs, payments to appellate counsel, deposition transcripts, travel, and mediation fees.

### C.  The proposed incentive awards are reasonable and appropriate

As this Court has recognized, "Incentive or service awards reward representative plaintiffs' work in support of the class, as well as their promotion of the public interest." *Dijkstra*, 2016 WL 6804980, at *6 (awarding $10,000 service award) (cited authority omitted). Service awards "encourage socially beneficial litigation by compensating named plaintiffs for their expenses on travel and other incidental costs, as well as their personal time spent advancing the litigation on behalf of the class and for any personal risk undertaken." *Id.*

Here, each Plaintiff requests an award of $10,000. This award is justified by the same rationale as this Court's $10,000 award in *Dijkstra*: "Had the Plaintiff not stepped forward to prosecute these claims, the rest of the class would have received nothing. [The Plaintiff] was interested and actively engaged in the direction of this litigation. The Plaintiff was available to counsel whenever needed." *Id.* at *6. Each Plaintiff devoted significant time to this action, assisting in developing the facts underlying the amended complaint in this action, making their

17

initial disclosures, responding to request for documents, and answering interrogatories. Each Plaintiff sat for a deposition, and each was prepared to attend trial should the case have proceeded to trial. Without their willingness to file suit, no recovery would have been possible. Barrett Decl. ¶ 9.

The proposed $10,000 awards are in line with awards from this Court and others across the country. *See Venture Data* Final Approval Order at 6 (awarding $15,000 to class representative); *Patriot Payment Group* Final Approval Order at 6 (awarding $20,000 to class representative); *Monitronics* Final Approval Order at 12-13 (awarding $35,000, $30,000, $6,000; and $3,500). *See also Ikuseghan v. Multicare Health Sys.,* No. C14-5539 BHS, 2016 WL 4363198, at *3 (W.D. Wash. Aug. 16, 2016) ($15,000 award); *Hageman*, 2015 WL 9855925, at *4 ($20,000 award); *In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 131 (S.D.N.Y. 2009) (awards as high as $35,000-$45,000 "are within the range of what other courts have found to be reasonable" (citation omitted)); *Jones v. I.Q. Data Int'l, Inc.*, No. 1:14-CV-00130-PJK-RHS, 2015 WL 5704016, *2 (D. N.M. Sept. 23, 2015) ($20,000 incentive award from a $1 million common fund); *Craftwood Lumber Co. v. Interline Brands, Inc.*, No. 11-CV-4462, 2015 WL 1399367, at *6 (N.D. Ill. Mar. 23, 2015) (collecting cases and approving a $25,000 service award to TCPA class representative); *Ritchie v. Van Ru Credit Corp.*, No. CV-12-1714-PHX-SMM, 2014 WL 956131, at *5 (D. Ariz. Mar. 12, 2014) ($12,000 incentive award from a $2.3 million common fund); *Martin v. Dun & Bradstreet, Inc.*, No. 1:12-cv-215, 2014 WL 9913504, at *3 (N.D. Ill. Jan. 16, 2014) (approving a $20,000 service award to a TCPA class representative).

Given Plaintiffs personal contributions to the successful prosecution of this Action, Plaintiff should be granted incentive awards in the amount of $10,000.

**Conclusion**

For all of the foregoing reasons, the requested attorneys' fees of $5,616,666, litigation costs of $330,975, and service awards of $10,000 to each of the three Plaintiffs should be approved.

Dated: June 22, 2023

<div style="margin-left: 40%;">

Respectfully Submitted,

BAILEY & GLASSER LLP

By:  /s/ John W. Barrett
John W. Barrett
**BAILEY & GLASSER LLP**
209 Capitol Street
Charleston, West Virginia 25301
(304) 345-6555
(304) 342-1110 (fax)
jbarrett@baileyglasser.com

Matthew P. McCue
**The Law Office of Matthew P. McCue**
1 South Ave., Third Floor
Natick, MA 01760
Telephone: (508) 655-1415
mmcue@massattorneys.net

Edward A. Broderick
**BRODERICK LAW, P.C.**
176 Federal Street, Fifth Floor
Boston, MA 02110
Telephone: (617) 738-7089
ted@broderick-law.com

Anthony I. Paronich
**PARONICH LAW, P.C.**
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com

*Class Counsel for Plaintiffs*

</div>

19

## CERTIFICATE OF SERVICE

I hereby certify that on June 22, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

By: s/ John W. Barrett
John W. Barrett
**BAILEY & GLASSER LLP**
209 Capitol Street
Charleston, WV  25301
Telephone: (304) 345-6555
jbarrett@baileyglasser.com